1  GIBSON, DUNN & CRUTCHER LLP
   STEPHEN WEISSMAN, *admitted pro hac vice*
2    sweissman@gibsondunn.com
   JAY P. SRINIVASAN, SBN 181471
3    jsrinivasan@gibsondunn.com
   STEVEN PET, *admitted pro hac vice*
4    spet@gibsondunn.com
   THOMAS TYSON, SBN 328684
5    ttyson@gibsondunn.com
   BRIANNA N. BANKS, SBN 345190
6    bbanks@gibsondunn.com
   333 South Grand Avenue
7  Los Angeles, CA  90071-3197
   Telephone:  213.229.7000
8  Facsimile:  213.229.7520

9  *Attorneys for Defendants*
   *PepsiCo, Inc. and Frito-Lay North America, Inc.*
10

            IN THE UNITED STATES DISTRICT COURT
11
           FOR THE CENTRAL DISTRICT OF CALIFORNIA
12

13 | ALQOSH ENTERPRISES, INC., and NMRM, INC., | CASE NO. 2:25-cv-01327-MRA-JDE |
|---|---|
14 | Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT** |
15 | v. | *[(Proposed) Order filed concurrently]* |
16 | PEPSICO, INC. and FRITO-LAY NORTH AMERICA, INC., | **Hearing**: |
17 | Defendants. | Date:     May 19, 2025 |
18 | | Time:     1:30 p.m. |
19 | | Place:    Courtroom 10B |
   | | Judge:    Hon. Mónica Ramírez Almadani |

20

21

22

23

24

25

26

27

28

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

2        **PLEASE TAKE NOTICE THAT** on May 19, 2025, at 1:30 p.m., or as soon

3    thereafter as the matter may be heard before the Honorable Mónica Ramírez Almadani

4    of the United States District Court for the Central District of California in the First Street

5    Courthouse, 350 W. First Street, Courtroom 10B, Los Angeles, California 90012,

6    Defendants PepsiCo, Inc. and Frito-Lay North America, Inc., will and do move this

7    Court for an order dismissing the Complaint of Plaintiffs Alqosh Enterprises, Inc., and

8    NMRM, Inc., in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) on the

9    grounds that Plaintiffs have failed to state a claim for relief.

10        The Complaint fails as a matter of law because Plaintiffs fail to sufficiently state

11    a claim under the Robinson-Patman Act (RPA), the California Unfair Practices Act

12    (UPA), and the California Unfair Competition Law (UCL). Plaintiffs' claims under

13    Sections 2(a) and 2(d) of the RPA fail because the Complaint fails to plead facts

14    sufficient to meet the different elements of the claims as required by law. Plaintiffs'

15    California state law claims, which mirror Plaintiffs' RPA theories, add nothing of

16    substance and fail for the same reasons as the RPA claims.

17        This motion is being made following a conference of counsel pursuant to Local

18    Rule 7-3. The parties met and conferred via Zoom on March 31, 2025.

19        This motion is based on this Notice of Motion, the accompanying Memorandum

20    of Points and Authorities, any other matters of which the Court may take judicial notice,

21    other documents on file in this action, and any oral argument of counsel.

22

23

24

25

26

27                                                i

28

1  Dated:  April 7, 2025

2                                    GIBSON, DUNN & CRUTCHER LLP

3

4                                    By:  _____/s/ Jay P. Srinivasan_____
                                                  Jay P. Srinivasan
5
                                     *Attorneys for Defendants PepsiCo, Inc. and*
6                                    *Frito-Lay North America, Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                            ii

28

1

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

LEGAL STANDARD......................................................................................... 3

ARGUMENT ...................................................................................................... 4

    I.      PLAINTIFFS' SECTION 2(a) CLAIM FAILS.............................. 4

            A.    Plaintiffs Fail to Plead Two or More Contemporaneous Sales by Frito-Lay ....................................................................... 4

            B.    The Complaint Fails to Plead that Frito-Lay Sold to Plaintiffs and the Chain Groceries at Different Prices .............................. 7

            C.    Plaintiffs Fail to Allege Competitive Harm................................ 9

            D.    Plaintiffs Fail to Allege that Any Discriminatory Sale Occurred In Interstate Commerce ........................................... 16

    II.     PLAINTIFFS' SECTION 2(d) CLAIM FAILS ........................... 17

            A.    Plaintiffs' Section 2(d) Claim Fails for Many of the Same Reasons Their Section 2(a) Claim Fails .................................. 18

            B.    Plaintiffs Fail to Plead a Specific Promotional Payment for Any Product .......................................................................... 19

            C.    Plaintiffs Fail to Allege Antitrust Injury.................................. 19

    III.    PLAINTIFFS' UNFAIR PRACTICES ACT (UPA) CLAIM FAILS 20

    IV.    PLAINTIFFS' UNFAIR COMPETITION LAW (UCL) CLAIM FAILS................................................................................................ 21

CONCLUSION................................................................................................. 21

iii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABC Distrib., Inc. v. Living Essentials LLC,*
2017 WL 3838443 (N.D. Cal. Sept. 1, 2017)...................................12, 13, 15, 17, 18

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,*
836 F.3d 1171 (9th Cir. 2016) ......................................................................... 11, 12

*Aguilar v. Atl. Richfield Co.,*
25 Cal. 4th 826 (Cal. 2001) ....................................................................................21

*Airweld, Inc. v. Airco, Inc.,*
742 F.2d 1184 (9th Cir. 1984) ..................................................................................4

*Apple, Inc. v. Psystar Corp.,*
586 F. Supp. 2d 1190 (N.D. Cal. 2008)..................................................................21

*Atalanta Trading Corp. v. FTC,*
258 F.2d 365 (2d Cir. 1958)......................................................................... 7, 18, 19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................3

*Bellboy Corp. v. Allied Domecq Spirits & Wine USA, Inc.,*
2005 WL 681300 (D. Minn. Mar. 21, 2005) ..........................................................19

*Bendfeldt v. Window World,*
2017 WL 4274191 (W.D.N.C. Sept. 26, 2017) ......................................................14

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,*
509 U.S. 209 (1993)..................................................................................................9

*Card v. Ralph Lauren Corp.,*
2018 WL 4108082 (N.D. Cal. Aug. 29, 2018) ...........................................3, 5, 6, 7

*Card v. Ralph Lauren Corp.,*
2020 WL 353464 (N.D. Cal. Jan. 21, 2020)............................................................7

*Card v. Ralph Lauren Corp.,*
2022 WL 14936344 (9th Cir. Oct. 26, 2022) ...................................................6, 13

*Cash & Henderson Drugs, Inc. v. Johnson & Johnson,*
799 F.3d 202 (2d Cir. 2015) ...................................................................................15

*Chawla v. Shell Oil Co.,*
75 F. Supp. 2d 626 (S.D. Tex. 1999)......................................................................16

*Coal. for a Level Playing Field, LLC v. AutoZone, Inc.,*
737 F. Supp. 2d 194 (S.D.N.Y. 2010) ..............................................................10, 11

Gibson, Dunn & Crutcher LLP

*Design & Off. Concepts, Inc. v. Haworth, Inc.*,
1996 WL 617308 (N.D. Cal. Oct. 15, 1996) .......................................... 20

*Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc.*,
16 Cal. App. 4th 202 (1993) .................................................................. 20

*Dooley v. Crab Boat Owners Ass'n*,
271 F. Supp. 2d 1207 (N.D. Cal. 2003) .................................................. 8

*Elite Sub-Zero Repair v. Great Plains Appliance Parts, Inc.*,
2023 WL 11916709 (W.D. Tex. Oct. 31, 2023) ...................................... 6

*England v. Chrysler Corp.*,
493 F.2d 269 (9th Cir. 1974) ............................................................ 7, 18

*Fresh N' Pure Distribs., Inc. v. Foremost Farms USA*,
2011 WL 5921450 (E.D. Wis. Nov. 28, 2011) ........................................ 8

*FTC v. Kroger Co.*,
2024 WL 5053016 (D. Or. Dec. 10, 2024) ............................................ 13

*Goodloe v. Nat'l Wholesale Co.*,
2004 WL 1631728 (N.D. Ill. July 19, 2004) ............................................ 7

*Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*,
723 F.3d 1019 (9th Cir. 2013) .............................................................. 11

*Interstate Cigar Co. v. Sterling Drug Inc.*,
1980 WL 1862 (S.D.N.Y. July 3, 1980), *aff'd sub nom. Interstate Cigar Co. v. Sterling Drug Inc.*, 655 F.2d 29 (2d Cir. 1981) ................ 5, 7, 8

*Izumi v. Shell Oil Co.*,
1972 WL 650 (N.D. Cal. Oct. 18, 1972) ................................................ 16

*Lucky Breweries, Inc. v. Theodore Hamm Co.*,
1973 WL 829 (N.D. Cal. Mar. 8, 1973) ................................................. 17

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
650 F.3d 1046 (6th Cir. 2011) ................................................................ 8

*Nicolosi Distrib., Inc. v. FinishMaster, Inc.*,
2019 WL 8883851 (N.D. Cal. Aug. 26, 2019) ........................ 5, 6, 7, 12, 20

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
225 F. Supp. 3d 1178 (S.D. Cal. 2016) ................................................... 9

*Rutledge v. Elec. Hose & Rubber Co.*,
327 F. Supp. 1267 (C.D. Cal. 1971), *aff'd*, 511 F.2d 668 (9th Cir. 1975) ...................................................................................................... 5

*Rutledge v. Elec. Hose & Rubber Co.*,
511 F.2d 668 (9th Cir. 1975) ............................................................. 4, 19

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ..................................................... 17, 19, 20

Gibson, Dunn & Crutcher LLP

v

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ..................................................................... 3

*Sw. Paper Co., LLC v. Hansol Paper*,
    2013 WL 11238487 (C.D. Cal. Apr. 15, 2013) ............................... 9, 10, 11

*Sw. Paper Co., LLC v. Paper*,
    2013 WL 12138669 (C.D. Cal. Jan. 28, 2013) ........................................... 8

*Texaco Inc. v. Hasbrouck*,
    496 U.S. 543 (1990) .................................................................................. 10

*Two Bros. Distrib. Inc. v. Valero Mktg. & Supply Co.*,
    769 F. App'x 408 (9th Cir. 2019) ............................................................. 12

*U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*,
    89 F.4th 1126 (9th Cir. 2023) ................................................. 6, 11, 17, 18

*Valley Plymouth v. Studebaker-Packard Corp.*,
    219 F. Supp. 608 (S.D. Cal. 1963) ..................................................... 5, 18

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
    546 U.S. 164 (2006) ..................................................................... 1, 3, 9, 15

*Zoslaw v. MCA Distrib. Corp.*,
    693 F.2d 870 (9th Cir. 1982) ................................................... 16, 17, 18

**Statutes**

15 U.S.C. § 13(a) ............................................................................................ 4

Cal. Bus. & Prof. Code § 17045 ................................................................... 20

Cal. Bus. & Prof. Code § 17200 ................................................................... 21

Gibson, Dunn & Crutcher LLP

DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 2:25-CV-01327-MRA-JDE

1

## **INTRODUCTION**

2  The Robinson-Patman Act (RPA) is a narrow statute that prohibits specific forms
3  of pricing conduct by sellers under well-defined circumstances. Plaintiffs' Complaint
4  ignores the statute's express limits and substitutes conclusory allegations for well-
5  pleaded facts. Plaintiffs' claims under Sections 2(a) and 2(d) of the RPA fail out of the
6  gate, including because the Complaint does not allege even a single pair of completed
7  sales—much less discriminatory sales—by defendants PepsiCo and Frito-Lay (together,
8  "Frito-Lay") as required by law.

9  Section 2(a) requires, at a minimum, two contemporaneous sales of the same
10 product at different prices, occurring in interstate commerce, with a resulting injury to
11 the plaintiff specifically and competition generally. Yet Plaintiffs do not identify a sale
12 from Frito-Lay to any of the allegedly favored "Chain Groceries," let alone plead facts
13 establishing when such sale occurred, at what price and terms, or whether the sale
14 crossed state lines. Instead, the Complaint relies on vague assertions and legally deficient
15 comparisons between Plaintiffs' ***wholesale*** prices and their alleged competitors' ***retail***
16 prices—an apples-to-orange comparison that does not establish actual,
17 contemporaneous sales by Frito-Lay to competing retailers at different prices.

18 Plaintiffs' Section 2(a) claim also fails because the Complaint fails to plead
19 competitive harm. The RPA does not prohibit differentiated pricing; it "proscribes price
20 discrimination only to the extent that it threatens to injure competition." *Volvo Trucks*
21 *N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006) (cleaned up).
22 Plaintiffs fail to plead facts showing that the alleged price differences do not reflect
23 legitimate "functional discounts" (i.e., discounts for services) or other lawful differences
24 in the terms of sale. Plaintiffs fail to allege facts showing that they ever competed with
25 any of the Chain Groceries, much less which one(s) or where. And they do not
26 adequately allege diverted sales or substantial price discrimination over time, as the law
27 requires. In short, Plaintiffs' allegations do not satisfy a single element of a Section 2(a)
28 claim.

1

Plaintiffs' Section 2(d) claim fares no better. Under that provision, Plaintiffs must allege facts showing that Frito-Lay provided promotional payments to the Chain Groceries without offering proportionally equal benefits to Plaintiffs. Yet they fail to identify a single payment, promotion, or pair of sales—or a timeframe in which any of the alleged paired sales occurred—necessary to substantiate their claim. Nor do Plaintiffs allege facts showing actual competition with any Chain Grocer, as is also required under Section 2(d).

Plaintiffs' California state law claims, which mirror Plaintiffs' RPA theories, add nothing of substance and fail for the same reasons. The Court should dismiss the Complaint.

## **BACKGROUND**

This putative class action alleges that Frito-Lay violated Sections 2(a) and 2(d) of the RPA and state-law analogues. The named Plaintiffs are Whiskey Well and Sunset Market & Liquor ("Sunset"), two California liquor stores located in Hacienda Heights and Chula Vista, respectively. Compl. ¶¶ 20–21.

Plaintiffs allege that, over a four-year period, Frito-Lay "continuously violated the RPA by charging" Plaintiffs "higher net prices" than Frito-Lay charged certain "Chain Groceries"—six identified grocery chains plus unspecified "others"—for nine brands of snack chips. Compl. ¶¶ 5–6. Plaintiffs allege that they (i) are "located in the same geographical area as one or more outlets of the Chain Groceries," (ii) "purchased identical products from Frito-Lay at approximately the same time as the Chain Groceries," and (iii) are "in actual competition with the Chain Groceries." *Id.* ¶ 28.

The Complaint does not identify any specific discriminatory prices or promotions received by the Chain Groceries. Instead, to support these broad allegations, Plaintiffs claim that, on three occasions over a two-month period earlier this year, their ***wholesale*** cost for certain Frito-Lay products was higher than the ***retail*** price at which Albertsons or Ralphs offered the same products. Compl. ¶¶ 29–30. For the first two examples, Plaintiffs allege that, in January 2025, Frito-Lay sold bags of Ruffles and Doritos chips

Gibson, Dunn &
Crutcher LLP

to Sunset, located in Chula Vista, for $4.41 and $4.63, respectively. *Id.* ¶ 29. Meanwhile, an Albertsons in El Cajon allegedly offered the same bags of chips for sale to retail shoppers for $2.49. *Id.* There are two Albertsons in El Cajon, the closest of which is ***over 15 miles*** from Sunset. Plaintiffs allege, however, that 3.4 miles is the "mean distance traveled to the household's primary grocery retailer." *Id.* ¶ 38. For their final example, Plaintiffs allege that, in February 2025, Frito-Lay sold bags of Doritos to Plaintiffs for $4.63 while unspecified Ralphs locations were offering the same bags to retail shoppers for $2.51. *Id.* ¶ 30.

As for the interstate commerce requirement, Plaintiffs concede that at least some of the "chip brands and flavors" at issue "are often manufactured in California," but that these products also can come "from out-of-state plants." *Id.* ¶ 26. While Plaintiffs affirmatively allege that the "product code on each individual bag of Frito-Lay snack chips … shows which plant made the chips," *id.* ¶ 27, they do not allege which Frito-Lay brands/flavors are manufactured in-state versus out-of-state.

## <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint "requires more than labels and conclusions." *Id.* at 555. Its "factual allegations … must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Plaintiff cannot simply recite the elements of a claim, but rather, must provide sufficient factual allegations so that Defendants have fair notice of the claims against them. This is particularly true for a Robinson-Patman Act claim because the Act 'proscribes price discrimination only to the extent that it threatens to injure competition.'" *Card v. Ralph Lauren Corp.*, 2018 WL 4108082, at *7 (N.D. Cal. Aug. 29, 2018) (quoting *Volvo*, 546 U.S. at 176 (cleaned up)).

Gibson, Dunn & Crutcher LLP

3

1

## <u>ARGUMENT</u>

2

### I.   PLAINTIFFS' SECTION 2(a) CLAIM FAILS

3
   Section 2(a) provides, in pertinent part, that:

4
   [i]t shall be unlawful for any person engaged in commerce, in the course of
5
   such commerce, either directly or indirectly, to discriminate in price
   between different purchasers of commodities of like grade and quality,
6
   where either or any of the purchases involved in such discrimination are in
7
   commerce, … and where the effect of such discrimination may be
   substantially to lessen competition or tend to create a monopoly in any line
8
   of commerce, or to injure, destroy, or prevent competition….

9
15 U.S.C. § 13(a). In addition to price differentials that do not meet the section's express

10
requirements, Section 2(a) excludes from liability certain other pricing practices,

11
including price differentials arising from "differences in the cost of manufacture, sale,

12
or delivery resulting from the differing methods or quantities in which such commodities

13
are to such purchasers sold or delivered." *Id.*

14
   "To plausibly plead [a] claim," a plaintiff "must allege: (1) Two or more

15
contemporaneous sales by the same seller. (2) At different prices. (3) Of commodities

16
of like grade and quality. (4) Where at least one of the sales was made in interstate

17
commerce. (5) The discrimination had the requisite effect upon competition generally.

18
(6) The discrimination caused injury to the plaintiff." *Rutledge v. Elec. Hose & Rubber*

19
*Co.*, 511 F.2d 668, 677 (9th Cir. 1975) (cleaned up).

20
   Plaintiffs fail to plead these elements.

21
### A.   Plaintiffs Fail to Plead Two or More Contemporaneous Sales by Frito-Lay

22
   Plaintiffs' Section 2(a) claim fails because it does not identify any allegedly

23
discriminatory sale between Frito-Lay and any Chain Grocer, let alone a discriminatory

24
sale that is ***contemporaneous*** with a sale between Frito-Lay and either Plaintiff.

25
   "A key requirement for a Robinson-Patman section 2(a) claim is a showing that

26
there have been at least two completed, substantially contemporaneous sales by the same

27
seller." *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1191 (9th Cir. 1984). The

28
"requirement that there shall have been contemporaneous sales to different purchasers

is a real one and can not be supplied by inference." *Interstate Cigar Co. v. Sterling Drug Inc.*, 1980 WL 1862, at *2 (S.D.N.Y. July 3, 1980), *aff'd sub nom*. *Interstate Cigar Co. v. Sterling Drug Inc.*, 655 F.2d 29 (2d Cir. 1981) (cleaned up). "Section 2(a) can be tested only against specific sales and not by a showing of a general pricing system." *Rutledge v. Elec. Hose & Rubber Co.*, 327 F. Supp. 1267, 1275 (C.D. Cal. 1971), *aff'd*, 511 F.2d 668 (9th Cir. 1975).

The compared sales must be ***actual*** because, "[w]ithout details of any specific purchase … the Court cannot compare the prices/terms [the supplier] offered to [the favored customer] with prices/terms it offered to [plaintiff]." *Nicolosi Distrib., Inc. v. FinishMaster, Inc.*, 2019 WL 8883851, at *4 (N.D. Cal. Aug. 26, 2019). And the sales must be ***contemporaneous*** "to eliminate the possibility that their differences are caused by market fluctuations ordinarily happening during an extended time interval between sales." *Rutledge*, 327 F. Supp. at 1275, *aff'd*, 511 F.2d 668. The "time interval" between the sale to the allegedly favored and disfavored customers is "a determining factor." *Valley Plymouth v. Studebaker-Packard Corp.*, 219 F. Supp. 608, 611 (S.D. Cal. 1963) (cleaned up).

Plaintiffs' allegations on this key requirement are deficient on their face: they recite the legal standard with no supporting factual allegations. *Compare* Compl. ¶ 28 ("Plaintiffs … have purchased identical products from Frito-Lay at approximately the same time as the Chain Groceries purchased those products."), *and id.* ¶ 52 ("Frito-Lay has made numerous sales of snack chips to Plaintiffs … that are reasonably contemporaneous to sales that it has made to the Chain Groceries throughout the [last] four years…."), *with Card*, 2018 WL 4108082, at *7 ("Plaintiff cannot simply recite the elements of a claim, but rather, must provide sufficient factual allegations so that Defendants have fair notice of the claims against them. This is particularly true for a Robinson-Patman Act claim ….") (cleaned up).

Plaintiffs attempt to plead contemporaneous sales by alleging that the Chain Groceries and Plaintiffs offered the same chips for sale ***at retail*** (i.e., to consumers)

contemporaneously. *See* Compl. ¶¶ 29–30. This effort fails. Courts assess the contemporaneous sales element based on the timing of the ***wholesale*** transactions from the supplier to the allegedly favored and disfavored retailers (here, Frito-Lay's sales to Plaintiffs versus the Chain Groceries). *See Card v. Ralph Lauren Corp.*, 2022 WL 14936344, at *1 (9th Cir. Oct. 26, 2022) (affirming dismissal of claim where plaintiff-retailer "presented no evidence that Defendants sold their products to another retailer at lower prices than Defendants sold the products to her during the same time period"). Indeed, two retailers may ***resell*** a product around the same time even if they ***purchased*** it months or years apart under different market conditions. *See U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1138 (9th Cir. 2023) ("The timing of the disputed sales is unclear, so it could be that [plaintiffs] bought the product during periods of higher market pricing that [its competitor] avoided.").

Because Plaintiffs have not alleged the timing of any Frito-Lay sale to a Chain Grocer, it is impossible to determine whether there were any contemporaneous sales from Frito-Lay to Plaintiffs (and if so, which ones). Courts routinely dismiss RPA claims at the pleading stage for this reason. *See Nicolosi*, 2019 WL 8883851, at *2, 4 (plaintiff did not "plausibly allege two contemporaneous sales" where it failed to "include any allegations whatsoever about a single sale between" the manufacturer and plaintiff, finding the allegation that plaintiff "continuously purchase[d] paint" from the manufacturer insufficient); *Card*, 2018 WL 4108082, at *7 (amendment to complaint would be futile because "Plaintiff ha[d] not identified the discounts" or "that they were contemporaneous").

The Court also should reject Plaintiffs' conclusory allegation that, at some unspecified point over the last ***four years***, Frito-Lay contemporaneously sold the same unspecified "snack chips" to an unspecified Plaintiff and an unspecified Chain Grocer. *See* Compl. ¶¶ 29, 52. As one court recently held, an allegation that the challenged transaction occurred sometime over a four-year period "fails to specify a time frame in which the discriminatory sale … allegedly occurred." *Elite Sub-Zero Repair v. Great*

*Plains Appliance Parts, Inc.*, 2023 WL 11916709, at *5 (W.D. Tex. Oct. 31, 2023).
Courts regularly find time intervals far shorter than four years to be inadequate. *See
England v. Chrysler Corp.*, 493 F.2d 269, 272 (9th Cir. 1974) (16 months between
promotional allowances was not contemporaneous); *Atalanta Trading Corp. v. FTC*, 258
F.2d 365, 371 (2d Cir. 1958) (sales "six or eight months" apart "did not occur even
closely within the same time periods").

Plaintiffs' Section 2(a) claim should be dismissed on this basis alone.

### B. The Complaint Fails to Plead that Frito-Lay Sold to Plaintiffs and the Chain Groceries at Different Prices

Section 2(a) requires a plaintiff to plausibly allege that the challenged sales were
made at different prices and involved commodities of like grade and quality. *Card v.
Ralph Lauren Corp.*, 2020 WL 353464, at *4 (N.D. Cal. Jan. 21, 2020). The allegations
must include "details" of "specific purchase[s]" so the Court may "compare the
prices/terms [the supplier] offered to [the favored customer] with prices/terms it offered
to [the disfavored customer.]" *Nicolosi*, 2019 WL 8883851, at *4. "[P]laintiffs may not
rely on mere inference to establish that the[] products [at issue] were indeed sold at
different prices." *Interstate Cigar*, 1980 WL 1862, at *2, *aff'd sub nom.*, 655 F.2d 29.

Though the Complaint alleges in conclusory terms that Frito-Lay charges
Plaintiffs "far higher net prices" than it charges the Chain Groceries, Compl. ¶ 5, it
identifies no "specific purchase[s]" from Frito-Lay by any Chain Grocer, let alone any
"details" of those purchases. As in *Nicolosi*, without identifying specific sales to both a
Plaintiff and a Chain Grocer, the Court cannot "compare the prices/terms [Frito-Lay]
offered to [the Chain Grocers] with prices/terms it offered to [Plaintiffs]."

Courts regularly dismiss Section 2(a) claims at the pleading stage where, as here,
plaintiffs fail to allege the actual prices at which the supplier sold the products at issue
to the favored and disfavored customers. *See Card*, 2018 WL 4108082, at *7 (plaintiff
made only a "vague allegation that Defendants gave unfair discounts to her
competitors," and had not "identified the discounts"); *Goodloe v. Nat'l Wholesale Co.*,

2004 WL 1631728, at *9 (N.D. Ill. July 19, 2004) (plaintiff "allege[d] no facts about … the favorable prices and terms actually granted to his competitors").

Plaintiffs do not overcome this deficiency by alleging that their **wholesale** cost on certain Frito-Lay products was higher than the **retail** price at which certain Chain Groceries offered the same products to shoppers. *See* Compl. ¶¶ 29–30. These allegations do not compare the relevant sales from the supplier to the allegedly favored and disfavored customers, which is fatal to the claim. *See Sw. Paper Co. v. Paper*, 2013 WL 12138669, at *3 (C.D. Cal. Jan. 28, 2013) (*Sw. Paper I*) (complaint improperly "infer[red] price discrimination based solely on allegations" that the allegedly favored customer resold paper at a price equal to plaintiff's acquisition cost from a mutual supplier); *Interstate Cigar*, 1980 WL 1862, at *2, *aff'd sub nom.*, 655 F.2d 29; *Fresh N' Pure Distribs., Inc. v. Foremost Farms USA*, 2011 WL 5921450, at *5 (E.D. Wis. Nov. 28, 2011) (dismissing claim where plaintiff alleged that competing distributor "was able to sell milk to its retail customer for less than what [plaintiff] would have paid" at wholesale, because "[i]t should go without saying that there are innumerable reasons why a competitor might offer a lower price, even to the extent of offering promotions that result in its selling a product at a loss….").[1]

Neither do Plaintiffs have a lesser pleading burden because they allege that the requisite wholesale pricing information is "kept secret" from them. Compl. ¶¶ 40, 61. Following *Twombly* and *Iqbal*, courts have consistently rejected this argument, holding that a "plaintiff must allege specific facts of price discrimination even if those facts are only within the head or hands of the defendants." *New Albany Tractor, Inc. v. Louisville*

---

[1] Plaintiffs allege that the "difference between Plaintiffs' acquisition cost and the Chain Groceries' selling price is not explained by the Chain Groceries selling at a loss," because "it would be illegal for them to do so, under California's Unfair Practices Act, Bus. and Prof. Code Sec. 17043." Compl. ¶ 31. Plaintiffs misstate the law. The statute prohibits below-cost pricing only where it is done "for the purpose of injuring competitors or destroying competition"—hardly a categorical prohibition—and courts have expressly acknowledged circumstances where below-cost sales are lawful. *See, e.g., Dooley v. Crab Boat Owners Ass'n*, 271 F. Supp. 2d 1207, 2015 (N.D. Cal. 2003).

Gibson, Dunn & Crutcher LLP

8

1    *Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011); *accord Persian Gulf Inc. v. BP W.*

2    *Coast Prods. LLC*, 225 F. Supp. 3d 1178, 1180 (S.D. Cal. 2016) ("Plaintiff may not use

3    the discovery process to obtain these facts of price discrimination after filing suit. The

4    language of *Iqbal*, 'not entitled to discovery'[,] is binding on the lower federal courts.")

5    (cleaned up).

6         Plaintiffs' Section 2(a) claim therefore fails.

7    **C.  Plaintiffs Fail to Allege Competitive Harm**

8         "Due to the requirement of harm to competition, a buyer cannot establish that a

9    seller has violated the Robinson–Patman Act merely by showing that the seller has

10   charged different prices for the same type of goods." *Sw. Paper Co. v. Hansol Paper*,

11   2013 WL 11238487, at *3 (C.D. Cal. Apr. 15, 2013) (*Sw. Paper II*). The RPA

12   "proscribes price discrimination only to the extent that it threatens to injure

13   competition." *Volvo*, 546 U.S. at 176 (cleaned up).

14        The Complaint fails to allege competitive harm for three independent reasons.

15   ***First***, it fails to plausibly plead facts showing that the alleged price differences are not

16   attributable to legitimate functional discounts or lawful differences in the terms of sale.

17   ***Second***, it does not allege facts showing that Plaintiffs and the Chain Groceries actually

18   competed at any point. ***Third***, it fails to plead facts showing diverted sales or that the

19   conditions for the so-called "*Morton Salt* inference" of competitive harm are met.

20        **1.  Plaintiffs Fail to Plead that the Alleged Price Differences Do Not Reflect
21            Legitimate Functional Discounts or Lawful Differences in the Terms of
22            Sale**

23        Certain price differentials are not only "lawful" but actually "reflect pro-

24   competitive forces." *Sw. Paper II*, 2013 WL 12138669, at *3 (quoting *Brooke Group*

25   *Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993)). Among the

26   "several lawful reasons for price discrimination," two are particularly relevant here: (i)

27   functional discounts and (ii) differences in the terms and conditions of sale. *Id.*

28        ***Functional Discounts***. "[B]ecause the plaintiff has the burden of pleading and

proving competitive harm, the plaintiff bears the burden of pleading and proving that any price differences identified in its complaint do not reflect legitimate functional discounts." *Sw. Paper II*, 2013 WL 11238487, at *4 (cleaned up). A functional discount "is a discount 'given to a purchaser based on its role in the supplier's distributive system, reflecting, at least in a generalized sense, the services performed by the purchaser for the supplier.'" *Id.* at *3 (quoting *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 554 n.11 (1990)). Because "a functional discount 'merely accords due recognition and reimbursement for actual marketing functions' performed by a purchaser, functional discounts are 'legitimate discounts which do not cause harm to competition.'" *Id.* (quoting *Hasbrouck*, 496 U.S. at 562, 571). A functional discount is lawful unless it is "completely untethered to either the supplier's savings or the wholesaler's costs," or "granted with the purpose or intent of conferring a price advantage upon a favored purchaser." *Id.* at *4 (cleaned up). Courts regularly grant motions to dismiss where plaintiffs fail to plead facts showing that the alleged price differences are not functional discounts. *See id.* at *5; *Coal. for a Level Playing Field, LLC v. AutoZone, Inc.*, 737 F. Supp. 2d 194, 216 (S.D.N.Y. 2010).

Here, Plaintiffs plead no facts ruling out that the alleged price differences are attributable to lawful functional discounts. Their allegations are entirely conclusory. *Compare* Compl. ¶ 50 ("The favorable prices offered to the Chain Groceries are not functional discounts, because … the dollar value of the favoritism far exceeds both the cost of any functions … perform[ed] … and exceeds the cost savings to Frito-Lay."), *with Sw. Paper II*, 2013 WL 11238487, at *5 ("Plaintiff provides no allegations explaining why the [an $11.50] discount is not commercially reasonable in light" of logistics and payments services performed by plaintiff's competitor but not plaintiff), *and AutoZone*, 737 F. Supp. 2d at 199 ("Plaintiffs believe that these deductions do not represent bona fide discounts for the value of services provided by defendants. But aside from formulaic accusations of illegality, plaintiffs provide scant factual material to support this view.").

Plaintiffs' allegations actually raise substantial reason to believe that any price

differences **are** the result of functional discounts, making dismissal all the more appropriate. Plaintiffs allege that Frito-Lay makes "payments" to the Chain Groceries—but not Plaintiffs—in exchange for certain services, including "advantageous product placement, such as endcaps, and … stocking new Frito-Lay items." Compl. ¶¶ 33–34. These are precisely the types of services for which functional discounts are commonly given. *See Innovation Ventures*, 89 F.4th at 1140 (crediting "evidence that Costco performed several marketing and other functions," including "giving the product prime placement in aisle endcaps," that "could have been compensated for by a functional discount"); *Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1022 (9th Cir. 2013) (finding that "superior prices and discounts" to plaintiff's competitor were lawful where the competitor, unlike plaintiff, made the supplier "its flagship brand," purchased "in much higher volumes," and "provided promotional services"). Plaintiffs deny that the marketing services expressly alleged in the Complaint are performed in exchange for functional discounts, but they plead no facts to support that view. Compl. ¶ 50. This glaring deficiency requires dismissal.

**<u>Differences in the Terms and Conditions of Sale</u>**. "Quite sensibly, courts have held that a seller is not obligated to charge the same prices for a commodity if its sales contracts with different buyers contain materially different terms." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1188 (9th Cir. 2016) (cleaned up). As a result, an RPA "plaintiff must plead facts giving rise to a plausible inference that any alleged price differentials are not the result" of "material differences in the terms and conditions of sale." *Sw. Paper II*, 2013 WL 11238487, at *5; *accord AutoZone*, 737 F. Supp. 2d at 215 (plaintiff must plead facts that "refute the inference that [the products] are not sold subject to materially different contract terms").

Plaintiffs here make no allegations—conclusory or otherwise—to satisfy this requirement. In fact, as with functional discounts, Plaintiffs affirmatively plead facts suggesting that the alleged price differences **are** the result of differences in the terms of sale. *See* Compl. ¶¶ 32–35. Specifically, Plaintiffs allege that Frito-Lay and the Chain

11

Gibson, Dunn & Crutcher LLP

Groceries enter into "Customer Development Agreements and Customer Marketing Agreements," under which the Chain Groceries "receive a variety of promotional payments … for advantageous product placement, such as endcaps, and for stocking new Frito-Lay items." *Id.* ¶ 33. Plaintiffs also allege that the Chain Groceries individually "negotiate price … that are a discount to the list prices." *Id.* ¶ 32. By contrast, the Complaint alleges that Plaintiffs and Frito-Lay enter into different contracts—"UDS Customer Development Agreements"—with entirely different terms, including various "allowances," "quarterly payments," and "rebate[s]" that are available to Plaintiffs for meeting certain goals. *Id.* ¶ 34.

These materially different contract terms, as expressly alleged in the Complaint, are exactly the type that courts in this circuit say warrant dismissal of RPA claims. *See Aerotec*, 836 F.3d at 1188–89 (affirming dismissal where plaintiffs "provided no examples of any" sales "that could be fairly compared to the terms and prices that were individually negotiated in agreements between [defendant] and its affiliates"); *Two Bros. Distrib. Inc. v. Valero Mktg. & Supply Co.*, 769 F. App'x 408, 411–12 (9th Cir. 2019) (affirming dismissal where competing retailer's contracts had "a duration five times longer" than plaintiffs' contracts, required much larger purchases, and "involve[d] markets nationwide—far beyond [plaintiffs'] operation"); *Nicolosi*, 2019 WL 8883851, at *5 ("As alleged, it is differences between [plaintiff's] and [defendant's] business characteristics (namely, their ability to purchase enough product) that leads to the allegedly discriminatory pricing.").

Plaintiffs' Section 2(a) claim should also be dismissed on this basis.

### 2. Plaintiffs Do Not Plead "Actual Competition"

"As a threshold issue, there must be evidence that a favored and disfavored purchaser actually competed with each other during the period of alleged price discrimination, otherwise there is no competition to injur[e]." *ABC Distrib., Inc. v. Living Essentials LLC*, 2017 WL 3838443, at *6 (N.D. Cal. Sept. 1, 2017). Plaintiffs claim that they are "in actual competition with the Chain Groceries" simply because they

12

(i) "are located in the same geographical area as one or more outlets of the Chain Groceries," and (ii) "purchased identical products from Frito-Lay at approximately the same time as the Chain Groceries purchased those products." Compl. ¶ 28.

But these allegations do not plausibly allege competitive injury. *See Living Essentials*, 2017 WL 3838443, at *8 ("The Supreme Court's decision in *Volvo* … confirms that a common position in the supply chain in a shared geographical market is insufficient to show actual competition."). Instead, to be in "actual competition," the allegedly favored and disfavored customers must be "directly after the same dollar." *Id.* (cleaned up). In *Card*, for example, the Ninth Circuit concluded that two retailers reselling the same product were not in "actual competition" because they had "different business models and serve[d] distinct markets." 2022 WL 14936344, at *1. The court explained that, because the favored customer was "a large retailer that deal[t] in a higher volume of Defendants' products" than the disfavored customer, the Defendants' transactions with the two customers "would not be reasonably comparable … such that price discrimination between the retailers would have an anticompetitive effect." *Id.* (cleaned up).

*Card* is instructive here. The allegedly favored customers are national grocery chains like Walmart and Target, while the allegedly disfavored customers are single-location liquor stores. Compl. ¶¶ 5, 20–21. From these allegations alone, it is clear that Plaintiffs and the Chain Groceries operate at entirely different scales and employ fundamentally different business models "such that price discrimination between [them] would [not] have an anticompetitive effect." To be sure, the Complaint alleges that Plaintiffs compete with the Chain Groceries "for sales of identical bags of Frito-Lay snack chips to an overlapping pool of end consumers." Compl. ¶ 37. But these allegations are entirely conclusory and unsupported. *See* Section I.C.3, *supra*. And a recent decision in this circuit makes clear that consumers who shop in large chain stores do not view smaller retailers, much less liquor stores, as competing outlets. *See FTC v. Kroger Co.*, 2024 WL 5053016, at *11 (D. Or. Dec. 10, 2024) (concluding that the

13

"supermarkets market, consisting of traditional supermarkets and supercenters, is a relevant product market for antitrust purposes" that is "distinct from other grocery retailers").

Even if geographic proximity were alone sufficient to infer actual competition (it is not), the Complaint would still fail on this element. Plaintiffs purport to identify three examples in which a Chain Grocer and a Plaintiff competed for the resale of Frito-Lay products. Compl. ¶¶ 29–30. But none of these examples plead facts showing that the allegedly competing Chain Grocer is located anywhere near either Plaintiff. In two examples, the Complaint compares Sunset's wholesale cost for a Frito-Lay product to the product's retail price at an Albertsons in El Cajon. *Id.* ¶ 29. There are two Albertsons in El Cajon, and the closest of them is located more than 15 miles from the allegedly "nearby" Sunset. Plaintiffs' ***own allegations*** establish that these Albertsons stores are located too far away to plausibly compete with Sunset. *Id.* ¶ 38 (alleging that 3.4 miles is "the mean distance traveled to the household's primary grocery retailer"). Plaintiffs' last example fares no better—it does not allege facts sufficient to even determine the distance between Plaintiffs and the Chain Grocer (Ralphs) with which they allegedly competed. *See id.* ¶ 30 (comparing Plaintiffs' wholesale cost to the retail price at unspecified "outlets of the Ralphs chain").

These muddled pleadings do not plausibly allege that either Plaintiff has competed with any Chain Grocer for the resale of Frito-Lay products. Dismissal is therefore warranted. *See, e.g.*, *Bendfeldt v. Window World*, 2017 WL 4274191, at *2 (W.D.N.C. Sept. 26, 2017).

### 3. Plaintiffs Fail to Allege Diverted Sales or that the Conditions for the *Morton Salt* Inference are Met

"Once actual competition is established, competitive injury may be shown in either of two ways": (i) by "direct evidence of diverted sales or profits from a disfavored purchaser to a favored purchaser—the 'hallmark of the requisite competitive injury,'" or (ii) the "*Morton Salt* inference," which is a rebuttable presumption of competitive

14

harm that arises when a plaintiff presents proof that "a favored competitor received 'a significant price reduction over a substantial period of time.'" *Living Essentials*, 2017 WL 3838443, at *6 (quoting *Volvo*, 546 U.S. at 177). Plaintiffs' Complaint alleges neither route here.

***Diverted Sales or Profits***. Plaintiffs do not plead facts to support their conclusory allegations that the claimed discrimination caused them to lose sales and profits to the Chain Groceries. *See* Compl. ¶¶ 35, 56, 59, 63. Plaintiffs come closest to pleading a supporting fact when they allege that, on one occasion, a Sunset customer who had earlier purchased Frito-Lay chips for $3.00 at Walmart requested that Sunset match Walmart's price. Sunset allegedly declined because its wholesale cost for the same chips was over $3.00. *Id.* ¶ 36. But this example does not show diversion—it does not allege, for example, that once Sunset refused to match Walmart's price, the customer declined to purchase the product. Even if it did, the Complaint makes clear that the customer purchased the chips from Walmart ***before*** arriving at Sunset, *id.*, meaning that the alleged discrimination could not have diverted sales or profits from Sunset to Walmart. But even assuming, *arguendo*, that this singular example supports Plaintiffs' allegation, it shows, at most, *de minimis* diversion, which is insufficient to plead competitive injury. *See Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 211 (2d Cir. 2015) ("Our conclusion that *de minimis* evidence of lost sales is insufficient to establish competitive injury is consistent not only with *Volvo*, but also with the approach of other circuits.") (collecting cases); *Volvo*, 546 U.S. at 179–80 (loss of $30,000 in profits from one sale of 12 trucks was "not of such magnitude as to affect substantially competition" between truck dealers).

***Morton Salt Inference***. Plaintiffs also do not plead facts sufficient to trigger the *Morton Salt* inference, which comes about only where a plaintiff can show that "a favored competitor received 'a significant price reduction over a substantial period of time.'" *Living Essentials*, 2017 WL 3838443, at *6 (quoting *Volvo*, 546 U.S. at 177). Plaintiffs cannot allege a ***significant*** price difference because they fail to plead any price

Gibson, Dunn & Crutcher LLP

difference at all. *See* Section I.B, *supra*. And while Plaintiffs allege that the discrimination occurred over a four-year period, they plead no facts to support that timeframe. Indeed, they allege only three examples purporting to show price discrimination, and all of them are confined to a two-month period (January–February 2025). Compl. ¶¶ 29–30.

Plaintiffs' failure to allege competitive injury warrants dismissal of their Section 2(a) claim.

### D. Plaintiffs Fail to Allege that Any Discriminatory Sale Occurred In Interstate Commerce

Section 2(a) includes a "stringent interstate commerce requirement." *Chawla v. Shell Oil Co.*, 75 F. Supp. 2d 626, 645 (S.D. Tex. 1999). A plaintiff must plead facts showing "(1) that the defendant is engaged in interstate commerce; (2) that the price discrimination occurred in the course of such commerce; and (3) that either or any of the purchases involved in such discrimination are in commerce." *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 877 (9th Cir. 1982) (cleaned up). A plaintiff must allege that "at least one of the two transactions … when compared[,] generate a discrimination [that] crosses a state line." *Id.* (cleaned up). Importantly, "either the favored or disfavored sales *themselves* must occur in interstate commerce." *Izumi v. Shell Oil Co.*, 1972 WL 650, at *4 (N.D. Cal. Oct. 18, 1972) (emphasis in original) (cleaned up).

Plaintiffs cannot satisfy this element because they do not identify any two qualifying transactions for the Court to "compare." Though Plaintiffs claim that "many" Frito-Lay products "in every brand and flavor" are "manufactured outside of California and have crossed state lines in the course of their sale," Compl. ¶ 26, they do not make this allegation with respect to any specific transaction, let alone a transaction alleged to be discriminatory. Further, Plaintiffs expressly allege that certain "chip brands and flavors … are often manufactured in California." *Id.* Two intrastate sales, even if discriminatory, would not satisfy this element. Yet Plaintiffs do not identify within this alleged mix of intrastate and interstate sales which, if any, of the "favored or disfavored

1  sales *themselves* … occur[ed] in interstate commerce." Plaintiffs omit these critical

2  details despite alleging that the information is readily available to them. *See id.* ¶ 27

3  ("The product code on each individual bag of Frito-Lay snack chips … shows which

4  plant made the chips.").

5      Plaintiffs' failure to "allege that any single transaction … occurred in interstate

6  commerce" is another "fatal defect" that warrants dismissal of their claim. *Lucky*

7  *Breweries, Inc. v. Theodore Hamm Co.*, 1973 WL 829, at *1 (N.D. Cal. Mar. 8, 1973).

8  **II.  PLAINTIFFS' SECTION 2(d) CLAIM FAILS**

9      To state a claim under Section 2(d), Plaintiffs must plausibly allege:

10  - **Actual Competition**—that the Chain Groceries and Plaintiffs "compete with

11     each other in the distribution" of the same Frito-Lay product. *Living Essentials*,

12     2017 WL 3838443, at *13.

13  - **A Promotional Payment**—that Frito-Lay "paid or provided a benefit to" the

14     Chain Groceries "as compensation for promotional services in selling" the Frito-

15     Lay product. *Id.*

16  - **Proportional Inequality**—that Frito-Lay "failed to offer the promotional

17     benefit to Plaintiffs on proportionally equal terms." *Id.*

18  - **Contemporaneous Sales**—that Plaintiffs and the Chain Groceries purchased

19     the Frito-Lay product subject to the discriminatory promotion "within

20     approximately the same period of time." *Innovation Ventures*, 89 F.4th at 1142

21     (cleaned up).

22  - **Antitrust Injury**—that Plaintiffs suffered an "actual injury attributable to

23     something the antitrust laws were designed to prevent." *Rutman Wine Co. v. E.*

24     *& J. Gallo Winery*, 829 F.2d 729, 737 (9th Cir. 1987).

25  - **Interstate Commerce**—that Frito-Lay was "engaged in commerce and that the

26     payment or benefit [was] in the course of such commerce." *Zoslaw*, 693 F.2d at

27     881 (cleaned up).

28  Plaintiffs fail to plead these elements.

Gibson, Dunn &
Crutcher LLP

17

### A. Plaintiffs' Section 2(d) Claim Fails for Many of the Same Reasons Their Section 2(a) Claim Fails

Plaintiffs fail to allege several of the elements that are common to Sections 2(a) and 2(d) claims.

***Contemporaneous Sales***. To state a claim under Section 2(d), a plaintiff must plead facts showing that, around the same time, "the same two products on which" the favored customer "received allowances were sold to" the disfavored customer "with no offers of allowances." *Atalanta*, 258 F.2d at 371; *accord England*, 493 F.2d at 272. The "time interval" between a "promotion[al] allowance" to a favored customer and the "subsequent sale" of the same product to a disfavored customer "is a determining factor." *Valley Plymouth*, 219 F. Supp at 611 (cleaned up). Plaintiffs do not plead this element. Because they fail to identify ***any*** sales between Frito-Lay and the Chain Groceries (*see* Section I.B, *supra*), they necessarily fail to allege that Frito-Lay made ***contemporaneous*** sales to Plaintiffs and the Chain Groceries of a product for which the Chain Groceries ***received a promotional allowance***.

***Actual Competition***. Under Section 2(d), a plaintiff must plead that it actually competed with the allegedly favored customer. In the Ninth Circuit, the "actual competition" standard is somewhat more relaxed under Section 2(d) than it is under Section 2(a). *See Innovation Ventures*, 89 F.4th at 1142. For a Section 2(d) claim only, it may be "appropriate to assume that customers who are in functional competition in the same geographic area are in actual competition with one another." *Living Essentials*, 2017 WL 3838443, at *7 (cleaned up). But Plaintiffs cannot meet even this looser standard, because their examples purportedly showing actual competition do not show that the allegedly competing Chain Grocer is located anywhere near either Plaintiff. *See* Section I.C.2, *supra*.

***Interstate Commerce***. Section 2(d) contains the same interstate commerce requirement as Section 2(a). *Zoslaw*, 693 F.2d at 882. Plaintiffs fail to plead this element under Section 2(d) for the reasons discussed in Section I.D, *supra*.

1    Plaintiffs' Section 2(d) claim should therefore be dismissed.

2    **B.  Plaintiffs Fail to Plead a Specific Promotional Payment for Any Product**

3    A plaintiff asserting a Section 2(d) claim must identify the specific product for

4    which the seller allegedly paid a discriminatory promotional allowance, for "[t]he very

5    term, promotional allowance, implies a product to be promoted." *Atalanta*, 258 F.2d at

6    370.

7    The Complaint's allegations on this score are vague, conclusory, and repetitive.

8    *See* Compl. ¶¶ 33–34, 58–59. Plaintiffs say that the alleged payments were "for

9    advantageous product placement, such as endcaps, and for stocking new Frito-Lay

10   items." *Id.* ¶ 33. But the Complaint contains no allegations regarding the timing, amount,

11   or recipient of ***any*** payment, nor does it identify any Frito-Lay product for which a

12   promotional payment, discriminatory or otherwise, was given.

13   Plaintiffs must plead ***facts*** to sustain their claim. Because they fail to do so, their

14   claim fails. *See Rutledge*, 511 F.2d at 678 (affirming dismissal of claim where there was

15   no "evidence of payment or lower price allowance … to any [customer] of any sum in

16   connection with any of the services with which Section 2(d) concerns itself"); *Bellboy*

17   *Corp. v. Allied Domecq Spirits & Wine USA, Inc.*, 2005 WL 681300, at *4 (D. Minn.

18   Mar. 21, 2005) (dismissing claim where plaintiff made no "mention of what

19   [promotional payment], specifically, was distributed," and "was unable to point to even

20   one specific example of the [payment] distributed, the [product] to which the [payment]

21   related, or the dates on which the [payment] was distributed").

22   **C.  Plaintiffs Fail to Allege Antitrust Injury**

23   Without alleging any discriminatory promotional payments (or the timing,

24   circumstances, or recipients of same), Plaintiffs cannot allege an "actual injury

25   attributable to something the antitrust laws were designed to prevent." *Rutman*, 829 F.2d

26   at 737. Plaintiffs allege injury from the "discriminatory promotional offers and

27   payments" in only the vaguest terms. *See* Compl. ¶ 59 ("Plaintiffs have been and

28   continue to be harmed" by the payments, which "divert additional customers and sales"

and decrease profitability). They plead no facts to support these conclusions. Their allegations do not "***show*** that the allowance enabled favored competitors to lower their prices and divert sales, or that plaintiff was required to lower its prices to an unprofitable level in response to such low prices." *Rutman*, 829 F.2d at 737 (emphasis added).

Plaintiffs' Section 2(d) claim should be dismissed for this reason as well.

## III. PLAINTIFFS' UNFAIR PRACTICES ACT (UPA) CLAIM FAILS

The UPA "closely parallels" the RPA. *Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc.*, 16 Cal. App. 4th 202, 212 (1993). A claim under Cal. Bus. & Prof. Code § 17045 "has three elements: (1) there must be a secret allowance of an unearned discount; (2) there must be injury to a competitor; and (3) the allowance must tend to destroy competition." *Nicolosi*, 2019 WL 8883851 at *6 (cleaned up).

Plaintiffs' claim fails for multiple reasons. ***First***, Plaintiffs do not allege that the discounts were "unearned." In fact, they allege the opposite—that the alleged discounts were offered "for advantageous product placement, such as endcaps, and for stocking new Frito-Lay items." Compl. ¶ 33. These alleged discounts are properly viewed as lawful functional discounts. *See* Section I.C.1, *supra*. Because Plaintiffs have "not successfully alleged that there is no legal basis for these discounts," their claim fails. *Nicolosi*, 2019 WL 8883851, at *7 (dismissing claim where plaintiff's "conclusory allegations" that discounts were "unearned" contradicted other allegations suggesting discount was "earned").

***Second***, the Complaint fails to plead that the alleged "secret allowances" injured Plaintiffs or tended to "destroy" competition generally. As discussed in Section I.C, *supra*, Plaintiffs fail to allege that they actually competed with any Chain Grocer or lost sales or profits to them. They therefore cannot plead injury to themselves, much less the destruction of competition generally. *See Design & Off. Concepts, Inc. v. Haworth, Inc.*, 1996 WL 617308, at *4 (N.D. Cal. Oct. 15, 1996) (plaintiff cannot "establish that defendant's actions tended to destroy competition" under Section 17045 where plaintiff fails to show competitive injury under the RPA). This claim should be dismissed.

Gibson, Dunn & Crutcher LLP

20

## IV. PLAINTIFFS' UNFAIR COMPETITION LAW (UCL) CLAIM FAILS

Plaintiffs allege that Frito-Lay's conduct constitutes "unlawful" practice and "unfair" practice under the UCL, Cal. Bus. & Prof. Code § 17200. Compl. ¶ 66. Plaintiffs' "unlawful" claim fails because their predicate RPA claims fail. *See Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 866-67 (Cal. 2001); Sections I–II, *supra*. Plaintiffs' "unfair" claim fails because where, as here, "the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' towards consumers." *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1204 (N.D. Cal. 2008) (cleaned up). Plaintiffs' UCL claim thus falls alongside their RPA and UPA claims.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint.

DATED: April 7, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Jay P. Srinivasan*
Jay P. Srinivasan
Stephen Weissman
Steven Pet
Thomas Tyson
Brianna N. Banks

*Attorneys for Defendants PepsiCo, Inc. and Frito-Lay North America, Inc.*

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2          The undersigned, counsel of record for Defendants PepsiCo, Inc. and Frito-Lay

3    North America, Inc., certifies that this motion contains 6,999 words, excluding the

4    portions exempted by and complying with Local Rule 11-6.1.

5

6    Dated: April 7, 2025

7

8

9                                         By:    _____/s/  *Jay P. Srinivasan*_____
                                                          Jay P. Srinivasan
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 2:25-CV-01327-MRA-JDE