GIBSON, DUNN & CRUTCHER LLP
STEPHEN WEISSMAN, *admitted pro hac vice*
 sweissman@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
 jsrinivasan@gibsondunn.com
STEVEN PET, *admitted pro hac vice*
 spet@gibsondunn.com
THOMAS TYSON, SBN 328684
 ttyson@gibsondunn.com
BRIANNA N. BANKS, SBN 345190
 bbanks@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

*Counsel for Defendants*
*PepsiCo, Inc & Frito-Lay North America, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALQOSH ENTERPRISES, INC., and NMRM, INC.;<br><br>                              Plaintiffs,<br><br>      v.<br><br>PEPSICO, INC. and FRITO-LAY NORTH AMERICA, INC.,<br><br>                              Defendants. | CASE NO. 2:25-cv-01327-MRA-JDE<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE CLASS ALLEGATIONS**<br>*[(Proposed) Order Filed Concurrently]*<br><br>**Hearing**:<br>Date:        June 30, 2025<br>Time:        1:30 p.m.<br>Place:       Courtroom 10B<br>Judge:      Hon. Mónica Ramírez Almadani |

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

 **PLEASE TAKE NOTICE THAT** on June 30, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Mónica Ramírez Almadani of the United States District Court for the Central District of California in the First Street Courthouse, 350 W. First Street, Courtroom 10B, Los Angeles, California 90012, Defendants PepsiCo, Inc. and Frito-Lay North America, Inc., will and do move this Court for an order striking Plaintiffs' class allegations from the Amended Complaint of Plaintiffs Alqosh Enterprises, Inc., and NMRM, Inc., pursuant to Federal Rules of Civil Procedure 12(f) and 23 on the grounds that Plaintiffs have alleged a class that cannot be certified.

 This motion is being made following a conference of counsel pursuant to Local Rule 7-3. The parties met and conferred via Zoom on April 28, 2025.

 This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Gibson, Dunn & Crutcher LLP

Dated:       May 5, 2025

GIBSON, DUNN & CRUTCHER LLP

By:        /s/  Jay P. Srinivasan
                Jay P. Srinivasan

*Attorneys for Defendants PepsiCo, Inc. and Frito-Lay North America, Inc.*

# TABLE OF CONTENTS

<u>Page</u>

**INTRODUCTION** ................................................................................................................ **1**

**LEGAL STANDARD** ........................................................................................................... **3**

**ARGUMENT** ........................................................................................................................ **4**

    I.      Plaintiffs' Claims Cannot be Established on a Class-Wide Basis ............................... 4

    II.     Plaintiffs' Proposed Class Fails Because it is a Failsafe Class ................................... 12

    III.   Plaintiffs' State Law Claims are Similarly Unworkable on a Class-Wide Basis........ 13

    IV.   Permitting Plaintiffs' Class Claims to Proceed Will Unnecessarily Waste Resources ................................................................................................................ 14

**CONCLUSION**.................................................................................................................... **15**

DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS
CASE NO. 2:25-CV-01327-MRA-JDE

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABC Distrib., Inc. v. Living Essentials LLC*,
2017 WL 11672904 (N.D. Cal. July 13, 2017) ...............................................................6, 10

*ABC Distrib., Inc. v. Living Essentials LLC*,
2017 WL 2603311 (N.D. Cal. Apr. 7, 2017) ...................................................2, 7, 9, 10, 13

*ABC Distrib., Inc. v. Living Essentials LLC*,
2017 WL 3838443 (N.D. Cal. Sept. 1, 2017) ...............................................................5, 6, 7

*Abernathy v. Bausch & Lomb Inc.*,
97 F.R.D. 470 (N.D. Tex. 1983) ...............................................................................10, 11

*Apple, Inc. v. Psystar Corp.*,
586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...........................................................................13

*Bel Air Markets v. Foremost Dairies, Inc.*,
55 F.R.D. 538 (N.D. Cal. 1972) ...............................................................................6, 7, 10

*Boro Hall v. Metro. Tobacco Co.*,
74 F.R.D. 142 (E.D.N.Y. 1977) ...............................................................................9, 10, 11

*Brazil v. Dell Inc.*,
585 F. Supp. 2d 1158 (N.D. Cal. 2008) ...........................................................................12

*Cash & Henderson Drugs, Inc. v. Johnson & Johnson*,
799 F.3d 202 (2d Cir. 2015)...............................................................................................8

*Chicken Delight, Inc. v. Harris*,
412 F.2d 830 (9th Cir. 1969)........................................................................................8, 10

*Clark v. H.P. Hood Inc.*,
1985 WL 6263 (D. Mass. Sept. 5, 1985) ......................................................................9, 10

*Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc.*,
16 Cal. App. 4th 202 (1993)..............................................................................................13

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*,
2015 WL 12912337 (C.D. Cal. Mar. 16, 2015) ...............................................................14

*Garcia v. Williams Scotsman, Inc.*,
2024 WL 3811267 (C.D. Cal. Aug. 13, 2024) ...................................................................3

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)................................................................................................1, 3, 4

*Genesee Vending, Inc. v. Lorillard Tobacco Co.*,
2004 WL 3168777 (E.D. Mich. Nov. 2, 2004) ................................................................10

iv

Gibson, Dunn &
Crutcher LLP

*Gold Strike Stamp Co. v. Christensen*,
    436 F.2d 791 (10th Cir. 1970)................................................................................10

*Kamar v. RadioShack Corp.*,
    375 F. App'x 734 (9th Cir. Apr. 14, 2010) .............................................................12

*Kamm v. California City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975)....................................................................................3

*Kevari v. Scottrade, Inc.*,
    2018 WL 6136822 (C.D. Cal. Aug. 31, 2018) .......................................................12

*In re Kia Hyundai Vehicle Theft Litig.*,
    2024 WL 2104571 (C.D. Cal. Apr. 22, 2024) ....................................................3, 11

*Lara v. First Nat'l Ins. Co. of Am.*,
    25 F.4th 1134 (9th Cir. 2022)....................................................................................4

*Mad Rhino, Inc. v. Best Buy Co.*,
    2008 WL 8760854 (C.D. Cal. Jan. 14, 2008) .............................3, 4, 6, 8, 9, 10, 11, 13

*Mantolete v. Bolger*,
    767 F.2d 1416 (9th Cir. 1985)..................................................................................14

*Mata v. Citimortgage, Inc.*,
    2012 WL 7985175 (C.D. Cal. July 20, 2012) .........................................................12

*Mekani v. Miller Brewing Co.*,
    93 F.R.D. 506 (E.D. Mich. 1982)...............................................................................9

*O'Connell v. Citrus Bowl, Inc.*,
    99 F.R.D. 117 (E.D.N.Y. 1983) ...........................................................................8, 10

*Pepka v. Kohl's Dep't Stores, Inc.*,
    2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ........................................................12

*Roberts v. Wyndham Int'l, Inc.*,
    2012 WL 6001459 (N.D. Cal. Nov. 30, 2012)...........................................................3

*Rutledge v. Elec. Hose & Rubber Co.*,
    511 F.2d 668 (9th Cir. 1975)............................................................................1, 5, 6

*Stokes v. CitiMortgage, Inc.*,
    2015 WL 709201 (C.D. Cal. Jan. 16, 2015) ...........................................................12

*U.S. Wholesale Outlet & Distribution, Inc. v. Innovation Ventures, LLC*,
    89 F.4th 1126 (9th Cir. 2023)..............................................................................6, 8

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978).....................................................................................................6

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
    546 U.S. 164 (2006)..................................................................................................12

v

Gibson, Dunn &
Crutcher LLP

*Zamora v. Penske Truck Leasing Co., L.P.*,
   2021 WL 809403 (C.D. Cal. Mar. 3, 2021) ................................................................14

**Statutes**

15 U.S.C. § 13(a) ..................................................................................................................5

15 U.S.C. § 13(d) ..................................................................................................................6

**Other Authorities**

William M. Hannay, Corp. Counsel's Guide to Robinson-Patman Act,
   § 1:48 (2020) ......................................................................................................................10

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS
CASE NO. 2:25-CV-01327-MRA-JDE

Pursuant to Federal Rules of Civil Procedure 12(f) and 23, Defendants PepsiCo, Inc. and Frito-Lay North America, Inc. respectfully move to strike the class allegations from Plaintiffs' Amended Complaint.

## INTRODUCTION

Plaintiffs take the unusual step of bringing their Robinson-Patman Act ("RPA") claims and state-law analogues as a putative class action. To succeed, they must establish that each member of their purported class, which is made up of **thousands** of convenience and grocery stores dispersed throughout the State of California, (i) purchased one or more brands of snack chips from Frito-Lay at a net price higher than (ii) the net price of the same snack chip product sold by Frito-Lay to a larger chain grocery store; and that, for *each challenged pair of sales*, (iii) both sales were contemporaneous in time and (iv) at least one was carried out in interstate commerce. *See Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 677 (9th Cir. 1975). In addition, Plaintiffs must establish that each convenience or grocery store class member (v) actually competed with the allegedly favored chain grocery store, *and* that it (vi) lost the sale of that Frito-Lay product (vii) to that chain grocery store as a result of the alleged discriminatory pricing. *Ibid*. Establishing each of these requisite elements is a tall order in an individual RPA action. It is not possible on a class-wide basis here. As set forth below, Ninth Circuit law confirms that RPA claims are not suitable for class treatment, and nothing in Plaintiffs' Amended Complaint compels a different result.

An order striking class allegations is warranted where it is "plain enough from the pleadings" that a plaintiff has alleged a class that cannot be certified and further discovery will not prove otherwise. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Plaintiffs' proposed class meets this test. To achieve the judicial efficiency provided by class treatment, all of the elements of an RPA claim must be established on a class-wide basis. Doing so is impossible here. As a legion of decided cases from this circuit and elsewhere makes clear, Plaintiffs' claims necessarily would require thousands

1

Gibson, Dunn & Crutcher LLP

of individualized inquiries into the unique circumstances of each class member. Permitting this case to proceed as a class action will add only complexity and confusion given the sheer number of individualized fact determinations the Court will need to make with respect to each demanding element of each claim brought by each of the thousands of purported class members.

For example, the "interstate commerce" element requires each class member to show that at least one of the paired sales that constitute the allegedly discriminatory transaction crossed state lines. But Plaintiffs' Amended Complaint concedes that a significant number of the sales at issue took place within California—*i.e.*, were not in interstate commerce—such that the Court cannot conclude that this element is uniformly satisfied for each class member. *See* Am. Compl. ¶ 26. Individual inquiries will be required instead. The obvious need for all of these "singularly individualistic" analyses renders class treatment facially "impractical." *See ABC Distrib., Inc. v. Living Essentials LLC*, 2017 WL 2603311, at *3–4 (N.D. Cal. Apr. 7, 2017).

The same is true for each of the other elements of Plaintiffs' RPA claims. Indeed, whether a small convenience store in downtown San Diego purchased Ruffles potato chips from Frito-Lay at net prices higher than a chain grocery store somewhere else in San Diego and did so contemporaneously; whether that small convenience store is in "actual competition" with that chain grocery store for the resale of Ruffles; and whether that small convenience store lost sales of those same Ruffles chips to the same chain grocery store ***because of*** the alleged price difference are all highly individualized and fact-bound questions that are not susceptible to common proof across the purported class, as Federal Rule 23 requires. And the kinds of proof applicable to the San Diego hypothetical, moreover, cannot be used to resolve the inquiry for convenience stores located in places like Modesto, Santa Cruz, Monterrey, or Dana Point. Instead, each class member's claims will require their own individualized inquiry.

No amount of discovery will alter the reality that "numerous individualized factual issues . . . necessarily [will] arise" from Plaintiffs' expansive state-wide class, thereby making class treatment unworkable. *Mad Rhino, Inc. v. Best Buy Co.*, 2008 WL 8760854, at *5 (C.D. Cal. Jan. 14, 2008). Permitting this case to move forward as a proposed class action will only delay the inevitable and unnecessarily subject Defendants and a wide swath of non-parties to immensely burdensome and expensive discovery. It is for these reasons that courts in this circuit and across the country have "consistently found" that RPA cases such as this "are ill-suited for class actions" and uncertifiable. *See, e.g.*, *id* at *4–5 (citing cases). The Court should follow suit and grant this motion.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Supreme Court precedent supports striking class allegations where it is "plain enough from the pleadings" that a class cannot be certified and further discovery will not prove otherwise. *See Gen. Tel.*, 457 U.S. at 160. As a result, "since 2007, courts in this Circuit have held that a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained." *In re Kia Hyundai Vehicle Theft Litig.*, 2024 WL 2104571, at *9 (C.D. Cal. Apr. 22, 2024) (quotation marks omitted).

"The purpose of Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Roberts v. Wyndham Int'l, Inc.*, 2012 WL 6001459, at *3 (N.D. Cal. Nov. 30, 2012) (cleaned up). Avoiding the burden of unnecessary class discovery constitutes grounds for granting a motion to strike. *See Garcia v. Williams Scotsman, Inc.*, 2024 WL 3811267, at *10 (C.D. Cal. Aug. 13, 2024) (striking class allegations lacking sufficient basis to proceed to discovery). "Whether or not discovery will be permitted in a

[proposed class action] lies within the sound discretion of the trial court." *Kamm v. California City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975).

## ARGUMENT

Under Federal Rule of Civil Procedure 23, Plaintiffs must show, among other things, that there are questions of law or fact common to the class and that those common issues predominate over questions affecting only individual members. *See Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1137–38 (9th Cir. 2022); *see also Mad Rhino*, 2008 WL 8760854, at *2. Class certification requires "rigorous analysis," and a plaintiff must establish that all elements of Rule 23 are met. *Mad Rhino*, 2008 WL 8760854, at *2 (citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158–61 (1982)). Class treatment is not possible where individual issues "permeate" throughout and a plaintiff cannot establish common proofs exist. *Id.* at *5. As court after court has held, this is precisely the case for RPA claims such as here, which require a "singularly individualistic" analysis to adjudicate each alleged violation. Plaintiffs here bring not one but two RPA claims—under both Section 2(a) and Section 2(d) of the statute—neither of which is susceptible to class treatment, let alone both.

## I.     Plaintiffs' Claims Cannot be Established on a Class-Wide Basis

Plaintiffs' proposed class is unworkable on its face. As alleged, Plaintiffs seek to define a class of the following:

> ***All California retail businesses*** that Frito Lay categorizes in its UDS channel that purchased Frito-Lay snack chips for re-sale from Frito-Lay at a discriminatorily higher net price than Frito Lay contemporaneously charged to one or more competing Chain Groceries during the applicable limitations period.

Am. Compl. ¶ 61 (emphasis added). Plaintiffs further define "UDS" customers as all "convenience stores and small grocery stores to whom Frito-Lay makes direct sales," a group that easily runs into the thousands in California. *Id.* ¶ 36.

Certifying Plaintiffs' proposed class would conservatively require **tens of thousands** of individual inquiries in order to establish the exacting elements of Plaintiffs' RPA claims on behalf of all class members. To succeed in the underlying action on just their RPA Section 2(a) claim, 15 U.S.C. § 13(a), Plaintiffs here will need to establish at least the following elements for each and every putative class member:

- o  <u>Contemporaneous Sales</u>:  The Court would need to determine whether each allegedly discriminatory sale of snack chips by Frito-Lay to each class member was contemporaneous with a Frito-Lay sale of the same product to one or more unspecified favored customers (the "Chain Groceries"), *see Rutledge*, 511 F.2d at 677;

- o  <u>Different Prices</u>:  The Court would need to determine, for each identified pair of contemporaneous sales, whether each class member paid a higher price (net of all discounts, allowances, rebates and other individually negotiated price terms) relative to one or more Chain Groceries in competition with it, *see id.*;

- o  <u>Interstate Commerce</u>:  The Court would need to determine, for each pair of sales that satisfy the above requirements, whether at least one of the two sales occurred in interstate commerce (*i.e.*, at least one of the products was manufactured outside California and sold to a customer inside California), *see id.*;[1]

- o  <u>Actual Competition Between Purchasers</u>:   The Court would need to determine, for each pair of sales that satisfy the above requirements, whether each class member—which, again, will include small grocery and convenience stores from every corner of the state—directly competed with one or more unspecified Chain Groceries "for the same dollar", *see ABC Distrib., Inc. v. Living Essentials LLC*, 2017 WL 3838443, at *7–9 (N.D. Cal. Sept. 1, 2017);

- o  <u>Competitive Injury</u>:  The Court would need to determine whether, for each class member, the alleged price difference in favor of the allegedly competing Chain Grocery was significant and sustained over a substantial period of time or caused substantial diversion in sales from the class

---

[1] Plaintiffs expressly allege that at least some "chip brands and flavors" at issue in this litigation "are often manufactured in California." Am. Compl. ¶ 26. Thus, based on Plaintiffs' own allegations, the interstate commerce requirement will not be met for at least some of the allegedly discriminatory transactions.

Gibson, Dunn &
Crutcher LLP

member to the competing Chain Groceries, *see Rutledge*, 511 F.2d at 677; and

  o  <u>Injury to Each Class Member</u>:  The Court would need to determine, for each class member, whether it lost sales to a competing Chain Grocery **because of** the allegedly discriminatory pricing, *see id.*[2]

The Court will likewise need to analyze and rule on at least the following defenses (and potentially others) for each and every putative class member:

  o  <u>Cost Justification</u>:  The Court would need to determine whether each alleged price difference is justified by cost differences or efficiencies associated with serving the allegedly favored retailers versus the disfavored retailers (*i.e.*, whether the price differences arise from "differences in the cost of manufacture, sale, or delivery" to one customer relative to another), *see U.S. Wholesale Outlet & Distribution, Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1139 (9th Cir. 2023); and

  o  <u>Meeting Competition</u>:  The Court would need to determine whether each instance of alleged price discrimination in favor of a Chain Grocer is explained by Frito-Lay's attempt to match a competitor's price, *see United States v. U.S. Gypsum Co.*, 438 U.S. 422, 450–59 (1978) (explaining the detailed analyses necessary to determine whether a pricing action was designed in good faith to meet the prices offered by a competitor).

The Court therefore will need to conduct detailed and individualized assessments for each of these elements and defenses **for each of the thousands of class members**, a process completely at odds with the purpose of class treatment. *See ABC Distrib., Inc. v. Living Essentials LLC* (Living Essentials II), 2017 WL 11672904, at *1 (N.D. Cal. July 13, 2017) (denying reconsideration of denial of class certification "because the inherently individualized nature of the putative class members' claims poisons the class certification analysis at every step"); *Mad Rhino*, 2008 WL 8760854, at *7–10 (finding

---

[2] Plaintiffs' Section 2(d) claim, 15 U.S.C. § 13(d), requires an additional showing that, for each allegedly discriminatory promotion offered to a chain grocery store, Defendants "failed to offer the promotional benefit to Plaintiffs on proportionally equal terms." *ABC Distrib.*, 2017 WL 3838443, at *13. Satisfying this element will require a thorough and individualized analysis of each challenged promotion, whether Defendants made a similar promotion available to the allegedly disfavored class member(s), and whether that similar promotion was "proportionally equal" under applicable law.

Gibson, Dunn & Crutcher LLP

that, by their nature, RPA claims require "singularly individualistic" evidentiary showings that are not suitable for class treatment); *Bel Air Markets v. Foremost Dairies, Inc.*, 55 F.R.D. 538, 541 (N.D. Cal. 1972) (finding it "apparent" that an RPA case was "not suitable for class action treatment" because individual issues related to actual competition, cost justification, and meeting competition would predominate); *see also Living Essentials*, 2017 WL 2603311, at *3–5 (finding class treatment for RPA claims unworkable because of the individualized showings required for each and every class member).

The "actual competition" and "competitive injury" elements illustrate the insurmountable hurdles presented by Plaintiffs' purported class. Plaintiffs allege that, at some point over a four-year period, each of the thousands of purported class members were harmed by Defendants selling some unspecified mix of chip products to some combination of Chain Groceries. Am. Compl. ¶ 6. For each such instance, Plaintiffs will first have to show that each purported class member was in actual competition with the allegedly favored Chain Grocery based on each store's unique location and commercial realities, itself a time-consuming and individualistic process. *See Bel Air*, 55 F.R.D. at 541 (denying plaintiff's class certification motion and finding that the required analysis into whether each class member was in actual competition with a favored purchaser would "take a substantial, if inestimable, amount of court time."); *ABC Distrib.*, 2017 WL 3838443, at *7–9 (describing burden associated with showing actual competition). Plaintiffs then will need to prove—for each putative class member—that the alleged discrimination harmed competition, either (i) by "direct evidence of diverted sales or profits from a disfavored purchaser to a favored purchaser—the hallmark of the requisite competitive injury," or (ii) by the "*Morton Salt* inference," which is a rebuttable presumption of competitive harm that arises when a plaintiff presents proof that "a favored competitor received a significant price reduction over a substantial period of time." *See ABC Distrib.*, 2017 WL 3838443, at *6 (N.D. Cal. Sept. 1, 2017).

Gibson, Dunn & Crutcher LLP

Plaintiffs here cannot establish either element on a class-wide basis. For example, direct proof of competitive harm would require each of the thousands of class members to trace the dollars they allegedly lost to the favored Chain Groceries and ensure those losses stemmed from the allegedly discriminatory pricing, a complex and inherently individualized process. *See Mad Rhino, Inc. v. Best Buy Co.*, 2008 WL 8760854, at *7–10 (C.D. Cal. Jan. 14, 2008) (acknowledging that the "'direct proof of lost sales or profits' method of showing competitive injury is not applicable because it clearly cannot be demonstrated on a classwide basis"). Even reliance on the *Morton Salt* inference presents unworkable issues at the class level, as the Court would have to analyze the price differences for each challenged set of transactions to determine whether those differences were significant in volume and persisted over a substantial period of time. *See id.* *7–10 (recognizing that the *Morton Salt* inference still requires highly individualistic analyses not suitable for class treatment). The Court then would have to determine whether Defendants rebut that inference for each challenged transaction based on the unique commercial facts impacting those particular retailers with "evidence that favored purchasers were diverting only a *de minimis* number of customers." *Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 212 (2d Cir. 2015).

Indeed, the Ninth Circuit has found class treatment unworkable for RPA claims solely on the basis of the competitive harm element, which the circuit said presents too many individualized factual issues to be adjudicated on a class-wide basis. *See Chicken Delight, Inc. v. Harris*, 412 F.2d 830, 831 (9th Cir. 1969) (issuing a writ of mandamus on the viability of an RPA class action, finding that the competitive harm element presented too many factual issues for class treatment). Attempting to establish this and every other element on a class-wide basis will cause this matter to "degenerate into a multitude of mini-trials." *O'Connell v. Citrus Bowl, Inc.*, 99 F.R.D. 117, 124 (E.D.N.Y. 1983).

In their Amended Complaint, Plaintiffs allege without support that the "contemporaneous sales" element of an RPA claim need not be proven for each putative class member; according to Plaintiffs, "one such sale will suffice, so this issue will not present an individual issue." *See* Am. Compl. ¶ 68. This allegation misstates the law. The contemporaneous sales element—like the other elements discussed above—is a necessary element of a prima facie RPA claim. *See, e.g.*, *Innovation Ventures*, 89 F.4th at 1136–37 ("To establish a prima facie case under section 2(a), a plaintiff must show that the discriminating seller made one sale to the disfavored purchaser and one sale to the favored purchaser within approximately the same period of time . . . That requirement ensures that the challenged price discrimination is not the result of a seller's lawful response to a change in economic conditions between the sales to the favored and disfavored purchasers.") (cleaned up). Courts recognize that the contemporaneous sales element must be satisfied with respect to each challenged pair of sales and therefore cannot be resolved on a class-wide basis. *Mad Rhino*, 2008 WL 8760854, at *8–9 (denying class certification and explaining that the timing and differences in each transaction rendered class certification unworkable); *Boro Hall v. Metro. Tobacco Co.*, 74 F.R.D. 142 (E.D.N.Y. 1977) (same). Indeed, Defendants could find no case in any circuit suggesting that a single pair of contemporaneous sales sufficed to meet this element across an entire putative class. Even so, the Court need not resolve this question to strike the class claims alleged here—the individual issues that predominate over the actual competition and competitive injury elements doom Plaintiffs' class claims, as courts in this circuit and throughout the country have routinely held. *See Mad Rhino*, 2008 WL 8760854, at *8–10; *see also supra* at 7–8 (discussing competitive injury requirement).

Not surprisingly, virtually every court that has considered a motion for class certification in the RPA context has denied it. *See, e.g.*, *Living Essentials*, 2017 WL 2603311, at *3 ("[RPA] case is not well suited for class certification because its analysis

is singularly individualistic."); *Clark v. H.P. Hood Inc.*, 1985 WL 6263, at *1 (D. Mass. Sept. 5, 1985) ("The overwhelming weight of authority is that [RPA] price discrimination cases are not suitable for class certification."); *Mekani v. Miller Brewing Co.*, 93 F.R.D. 506, 511–12 (E.D. Mich. 1982) (finding an RPA class action "unmanageable" because it was "clear that individual issues [would] predominate over questions common to the class as a whole").[3] Courts in the Ninth Circuit repeatedly have denied class certification motions in the RPA context, and Defendants are unable to locate a single opinion within the Ninth Circuit in which a court certified a class for an RPA claim. *See, e.g.*, *Chicken Delight*, 412 F.2d at 831 (issuing writ of mandamus to order denial of class certification in RPA case); *Living Essentials II*, 2017 WL 11672904, at *1 (denying reconsideration of denial of class certification "because the inherently individualized nature of the putative class members' claims poisons the class certification analysis at every step"); *Living Essentials*, 2017 WL 2603311, at *4 (denying class certification in RPA case); *Mad Rhino*, 2008 WL 8760854, at *5–10 (same); *Bel Air Markets*, 55 F.R.D. 538, 541–42 (N.D. Cal. 1972) (same).

Defendants found only one published opinion—issued outside of this circuit and more than a half-century ago—granting class certification in the RPA context. *See Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791 (10th Cir. 1970). However, *Gold Strike* has been heavily criticized and cabined to its unique facts. *See Mad Rhino*, 2008 WL 8760854, at *5 n.6, *7 n.8 (recognizing *Gold Strike*'s limited scope and applicability, as discussed *infra*); William M. Hannay, Corp. Counsel's Guide to Robinson-Patman Act, § 1:48 (2020) (noting that "[w]hile never overruled, the *Gold Strike* decision is frequently criticized and appears to be limited to its facts"); *see also Boro Hall*, 74 F.R.D. at 146 (finding that *Gold Strike* is not applicable where plaintiffs do not bring a claim of

---

[3] *See also Genesee Vending, Inc. v. Lorillard Tobacco Co.*, 2004 WL 3168777, at *3 n.5 (E.D. Mich. Nov. 2, 2004) ("Defendant has cited persuasive authority indicating that [RPA] claims . . . are inherently unsuited for class treatment."); *Abernathy v. Bausch & Lomb Inc.*, 97 F.R.D. 470, 475 (N.D. Tex. 1983) ("[C]ourts have consistently found [RPA] claims ill-suited for maintenance as class actions."); *O'Connell*, 99 F.R.D. at 122 (recognizing that RPA claims are "ill-suited to class action treatment"); *Boro Hall*, 74 F.R.D. at 145 (same).

Gibson, Dunn & Crutcher LLP

attempted monopolization); *Clark*, 1985 WL 6263, at *2 (declining to apply *Gold Strike* because of its unique facts involving two uniform price lists, and denying class certification because the defendant considered various factors when determining pricing).

The *Gold Strike* court based its ruling on three factual predicates not present here: (1) plaintiffs there had alleged a pattern of favored pricing as an attempt to monopolize the market, thereby supposedly eliminating the need to establish competitive injury; (2) the market was saturated and consisted of only the favored and disfavored customers, leading the court to infer the existence of competition without individualized inquiry; and (3) the defendants maintained one price list for all of the favored customers and another for all of the disfavored customers that, when compared, was discriminatory on its face such that price discrimination and competitive injury could be shown without individualized inquiry. *See Mad Rhino*, 2008 WL 8760854, at *5 n.6, *7 n.8 (explaining the unique facts underlying the *Gold Strike* opinion); *Boro Hall*, 74 F.R.D. at 146 (finding that *Gold Strike* is not applicable where plaintiffs do not bring a claim of attempted monopolization). Setting aside whether *Gold Strike* is consistent with the law in this circuit, Plaintiffs do not allege remotely analogous facts here: Plaintiffs do not allege that Defendants attempted to monopolize any market; they do not allege that the relevant market is saturated or consists only of favored and disfavored customers; and they do not allege that Defendants maintained one price list for all of the favored customers and another for all of the disfavored customers.[4] And since *Gold Strike*, courts in this circuit and nationwide have consistently denied class certification in RPA cases.

---

[4] Indeed, quite the opposite—Plaintiffs allege that pricing can vary widely within the allegedly favored customer group and within the allegedly disfavored customer group. For example, the Chain Groceries allegedly are able to individually "negotiate prices . . . that are a discount to the list prices," and they may also receive "further discounts and promotional payments" from "the Frito-Lay Key Account Managers responsible for a given chain's account." Am. Compl. ¶¶ 34–35. Likewise, Plaintiffs allegedly are eligible to receive a number of different types the of discounts and rebates from Frito-Lay based on each class member's performance and other individualized factors. *Id.* at ¶ 36. These pricing terms, as alleged, will necessarily be highly varied among customers.

No amount of discovery will overcome the many independent hurdles to class certification in this case. Plaintiffs' proposed class is facially unworkable and should therefore be stricken. *See Abernathy v. Bausch & Lomb Inc.,* 97 F.R.D. 470, 477 (N.D. Tex. 1983) (holding an RPA class failed "solely on the basis of the pleadings and briefs of counsel"); *see also In re Kia Hyundai,* 2024 WL 2104571, at *3 (granting motion to strike class allegations at the pleading stage because individuals issues predominated); *Kevari v. Scottrade, Inc.,* 2018 WL 6136822, at *7–9 (C.D. Cal. Aug. 31, 2018) (granting motion to strike because resolution at a class level of whether discrimination occurred would not help answer "*why was [each member] disfavored*") (emphasis in original); *Stokes v. CitiMortgage, Inc.,* 2015 WL 709201, at *3 (C.D. Cal. Jan. 16, 2015) (striking with prejudice class claims because adjudication would require individual conclusions for each class member based on their facts); *Mata v. Citimortgage, Inc.,* 2012 WL 7985175, at *1–2 (C.D. Cal. July 20, 2012) (striking class claims requiring inquiry into the individual reasons why the alleged unlawful conduct occurred).

## II.    Plaintiffs' Proposed Class Fails Because it is a Failsafe Class

The Court should strike Plaintiffs' class allegations for the independent reason that Plaintiffs allege a failsafe class, which requires "the Court to engage in an improper merits evaluation to determine who is in the class." *Pepka v. Kohl's Dep't Stores, Inc.,* 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016). Plaintiffs' proposed class definition—which alleges that, in order to qualify, members must have been sold goods at "***discriminatorily*** higher net price[s]," Am. Compl. ¶ 61 (emphasis added)—meets that standard because the determination of whether prices are "discriminatory," as opposed to merely different, requires the Court to make a substantive merits determination. *See Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.,* 546 U.S. 164, 176–77 (2006) (explaining the legal analysis necessary to determine whether price differences are actually discriminatory versus merely different under the RPA, noting that only price differences that "threaten[] to injure competition" are unlawful). Courts

Gibson, Dunn &
Crutcher LLP

in this circuit routinely strike failsafe classes. *See Pepka*, 2016 WL 8919460, at \*4–5 (striking failsafe class); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (striking failsafe class allegations); *see also Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. Apr. 14, 2010) (noting that failsafe classes are "palpably unfair to the defendant" as well as "unmanageable—for example, to whom should the class notice be sent?"). The Court should do the same here.

### III.    Plaintiffs' State Law Claims are Similarly Unworkable on a Class-Wide Basis

Plaintiffs' state law claims "closely parallel[]" the RPA and require much of the same proof of evidence. *Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc.*, 16 Cal. App. 4th 202, 212 (1993) (recognizing that the California Unfair Practices Act, Cal. Bus. & Prof. Code § 17045, closely parallels the RPA, and similarly includes a harm to competition requirement); *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1204 (N.D. Cal. 2008) (recognizing that where, as here, a California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, claim is based on allegations centered on federal claims, the determination of liability for the UCL claim will rise or fall with the proof offered for the federal claims). The Court therefore will need to conduct the same individualistic analyses for Plaintiffs' state law claims that render class treatment for their RPA claims unworkable.[5] Courts in this circuit have found in similar circumstances that the issues precluding class treatment for an RPA claim apply with equal force to the state law claims alleged here. *See Mad Rhino*, 2008 WL 8760854, at \*10 (denying class certification for UPA claims based on price discrimination for the same reason that RPA class claims were rejected); *Living Essentials*, 2017 WL 2603311, at \*4 (denying class

---

[5] Even the UPA elements that are distinct from those required by the RPA will require individualized proof ill-suited for class treatment. In addition to requiring a showing of harm to a competitor and competition, a plaintiff pursuing a UPA claim must show that the discounts at issue were "secret" and "unearned." *Diesel Elec. Sales*, 16 Cal. 4th at 212. That is, for each of the thousands of purported class members, the Court will need to make unique findings on whether a particular discount at some point in time was secret and that the particular favored grocery store did not "earn" the discount.

Gibson, Dunn & Crutcher LLP

certification for UCL claim, which was based on the same alleged conduct as Plaintiffs' RPA claim).

### IV.    Permitting Plaintiffs' Class Claims to Proceed Will Unnecessarily Waste Resources

Permitting this case to move forward as a class action will unnecessarily burden third parties, waste judicial resources, and unduly burden and prejudice Defendants. Stripped of its conclusory statements, Plaintiffs' Amended Complaint focuses on two liquor stores in Southern California (Sunset Market & Liquor and Whiskey Well). Plaintiffs plead no facts regarding any of the thousands of purported class members and strikingly few regarding the dozens of Chain Groceries that Defendants allegedly favor over those class members. Discovery into the facts necessary to adjudicate Plaintiffs' claims involving the named Plaintiffs, while burdensome and unnecessary, pales in comparison to the burden of class discovery involving thousands of mystery California retailers. S*ee Zamora v. Penske Truck Leasing Co., L.P.*, 2021 WL 809403, at *3 (C.D. Cal. Mar. 3, 2021) (dismissing class claims at the pleading stage and refusing to allow expansive class discovery, noting that "Plaintiffs cannot point to a fish in the surf to force Defendant on a deep-sea charter"). Dozens of non-parties, including businesses of all sizes, will be forced to produce thousands of confidential business documents and potentially sit for deposition. This discovery will cost both non-parties and Defendants, together, millions of dollars and hundreds of hours of work—all based on class allegations that are entirely improper in an RPA case. This level of burden and cost should not be borne for a class action that cannot be certified. *See Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 2015 WL 12912337, at *4 (C.D. Cal. Mar. 16, 2015) (refusing to allow deficient class claims to proceed past the pleading stage "based merely on the need for class discovery," as doing so would set a standard of "permit[ting] fishing expedition(s) during discovery"); *see also Mantolete v. Bolger*, 767 F.2d 1416, 1424–25

Gibson, Dunn & Crutcher LLP

(9th Cir. 1985) (affirming district court's refusal to allow class discovery for failing to substantiate that discovery would support class treatment).

In addition, the Parties will also need to engage experts to weigh in on class-specific issues prior to extensive briefing on a class certification motion destined to fail. These class-specific requirements, not to mention any disputes that may arise during class discovery, will unnecessarily burden not just Defendants but the Court as well.

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask that the Court exercise its sound discretion and strike Plaintiffs' class allegations and any references to a putative class or class-wide relief.

DATED: May 5, 2025                    Respectfully submitted,

                                      GIBSON, DUNN & CRUTCHER LLP

                                      By: */s/ Jay P. Srinivasan*
                                           Jay P. Srinivasan
                                           Stephen Weissman
                                           Steven Pet
                                           Thomas Tyson
                                           Brianna N. Banks

                                      *Attorneys for Defendants PepsiCo, Inc.*
                                      *and Frito-Lay North America, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel for record for Defendants PepsiCo, Inc. and Frito-Lay North America, Inc., certifies that this motion contains 5,557 words, excluding the portions exempted by and complying with Local Rule 11-6.1.

Dated: May 5, 2025

By: _____*/s/ Jay P. Srinivasan*_____
Jay P. Srinivasan

DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS
CASE NO. 2:25-CV-01327-MRA-JDE