MARK POE (S.B. #223714)
mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
vmeng@gawpoe.com
FLORA VIGO (S.B. #239643)
fvigo@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ALQOSH ENTERPRISES, INC., and NMRM, INC.;

Plaintiffs,

v.

PEPSICO, INC. and FRITO-LAY NORTH AMERICA, INC.

Defendants.

Case No. 2:25-cv-1327-MRA-JDE

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

Date: June 30, 2025
Time: 1:30 p.m.
Place: Courtroom 10B
Judge: Hon. Mónica Ramírez Almadani

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

LEGAL AND FACTUAL BACKGROUND ........ 1

LEGAL STANDARD ........ 3

ARGUMENT ........ 4

I. FRITO-LAY FALSELY ASSERTS THAT A CLASS ACTION CAN ONLY BE CERTIFIED WHERE COMMON ISSUES PREDOMINATE. ........ 4

II. INDIVIDUAL ISSUES WOULD NOT PREDOMINATE IN TRYING PLAINTIFFS' CLAIMS AS A CLASS. ........ 7

A. Frito-Lay Mischaracterizes *Every* RPA Principle That It Claims Will Require Individualized Inquiry. ........ 7

1. All sales to class members are reasonably contemporaneous to all sales to the Chain Groceries. ........ 7

2. All class members are alleged to have paid higher net prices than the Chain Groceries. ........ 8

3. The interstate commerce requirement is readily resolved on a class basis. . 9

4. Competition can be proven on a classwide basis. ........ 10

5. Competitive injury can be proven on a classwide basis. ........ 12

6. Injury can likewise be proven on a classwide basis. ........ 13

7. Frito-Lay's hypothesized defenses are unpled, but are likewise susceptible to classwide proof. ........ 14

B. The Existence of *Some* Individualized Issues Does Not Bar Certification of a (b)(3) Class. ........ 14

C. *Every One* of Frito-Lay's Cases Denying Class Certification Is Easily Distinguishable. ........ 15

III. THE CLASS ALLEGED IN THE COMPLAINT IS NOT "FAILSAFE." ........ 19

IV. THE STATE-LAW CLAIMS ARE JUST AS CERTIFIABLE AS THE RPA CLAIMS....................19

V. REMEDYING FRITO-LAY'S LONGSTANDING AND WIDESPREAD ANTITRUST VIOLATIONS IS NOT A "WASTE" OF RESOURCES..........21

CONCLUSION ....................23

CERTIFICATE OF COMPLIANCE.................... 1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Distrib., Inc. v. Living Essentials LLC*,
2017 WL 3838443 (N.D. Cal. Sept. 1, 2017) ....................................10, 16

*Abernathy v. Bausch & Lomb Inc.*,
97 F.R.D. 470 (N.D. Tex. 1983)....................................................18

*Bel Air Markets v. Foremost Dairies, Inc.*,
55 F.R.D. 538 (N.D. Cal.1972) ....................................................10, 17, 18

*Boro Hall v. Metro. Tobacco Co.*,
74 F.R.D. 142 (E.D.N.Y. 1977) ....................................................17

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004).......................................................21

*Cheatham v. ADT Corp.*,
161 F. Supp. 3d 815 (D. Ariz. 2016) ..............................................3

*Chicken Delight, Inc. v. Harris*,
412 F.2d 830 (9th Cir. 1969).......................................................16

*Clark v. H.P. Hood Inc.*,
1985 WL 6263 (D. Mass. Sept. 5, 1985) ........................................15, 17

*Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc.*,
16 Cal. App. 4th 202 (1993)........................................................20, 21

*DJ Reserve v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024)......................................................4, 5, 13, 15

*Exxon Corp. v. Governor of Maryland*,
437 U.S. 117 (1978).....................................................................2

*FTC v. Morton Salt Co.*,
334 U.S. 37 (1948).......................................................................12, 13, 17, 18

*FTC v. Sun Oil Co.*,
371 U.S. 505 (1963).....................................................................1, 2, 14

*Garcia v. Williams Scotsman, Inc.*,
No. 24-CV-02977-PSG-MRWX, 2024 WL 3811267 (C.D. Cal. Aug. 13, 2024) .......... 1, 8

*Genesee Vending, Inc. v. Lorillard Tobacco Co.*,
2004 WL 3168777 (E.D. Mich. Nov. 2, 2004) .......... 18, 19

*Gold v. Lumber Liquidators Inc.*,
2017 WL 2688077 (N.D. Cal. June 22, 2017) .......... 11

*Gregory Rowe v. Univ. of S. California, et al.*,
No. 24-CV-05022-AB-JC, 2024 WL 5467459 (C.D. Cal. Dec. 23, 2024) .......... 1, 3

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) .......... 21

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
451 U.S. 557 (1981) .......... 18

*In re Kia Hyundai Vehicle Theft Litig.*,
2024 WL 2104571 (C.D. Cal. Apr. 22, 2024) .......... 21

*L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*,
No. 18-6809-MWF-MRWX, 2024 WL 2272384 (C.D. Cal. May 20, 2024) .......... 12

*Lipeles v. United Airlines, Inc.*,
No. 23-CV-7143-KK-MAAX, 2024 WL 1946660 (C.D. Cal. Apr. 11, 2024) .......... 3

*Lyons v. Coxcom, Inc.*,
718 F. Supp. 2d 1232 (S.D. Cal. 2009) .......... 4

*Mad Rhino, Inc. v. Best Buy Co.*,
2008 WL 8760854 (C.D. Cal. Jan. 14, 2008) .......... 16, 17

*Mathew Enter., Inc. v. Chrysler Grp., LLC*,
738 F. App'x 569 (9th Cir. 2018) .......... 7

*Mekani v. Miller Brewing Co.*,
93 F.R.D. 506 (E.D. Mich. 1982) .......... 18

*O'Connell v. Citrus Bowl, Inc.*,
99 F.R.D. 117 (E.D.N.Y. 1983) ....................18

*Olean Wholesale Grocery Coop. v. Bumble Bee Foods*,
31 F.4th 651 (9th Cir. 2022) (*en banc*)....................5, 9, 12, 18

*Ridgeway v. Walmart Inc.*,
946 F.3d 1066 (9th Cir. 2020)....................8

*Roper v. Consurve, Inc.*,
578 F.2d 1106 (5th Cir. 1978)....................22

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016)....................5

*Scott v. Dart*,
99 F.4th 1076 (7th Cir. 2024)....................8

*Senne v. Kan. City Royals Baseball Corp.*,
934 F.3d 918 (9th Cir. 2019)....................5

*Texaco Inc. v. Hasbrouck*,
496 U.S. 543 (1990) (Scalia, J., concurring) ....................13, 19

*Tri-Valley Packing Association v. FTC*,
329 F.2d 694 (9th Cir. 1964)....................7, 11

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)....................11, 15

*U.S. Wholesale Outlet & Distribution, Inc. v. Innovation Ventures, LLC*,
89 F.4th 1126 (9th Cir. 2023)....................*passim*

*United States v. Collazo*,
984 F.3d 1308 (9th Cir. 2020)....................9

*Volvo Trucks North America, Inc. v. Reeder-Simco GMC, Inc.*,
546 U.S. 164 (2006)....................12, 16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................15

*Wallster, Inc. v. Redbubble, Inc.*,
No. 22-CV-02958-SPG-MAR, 2022 WL 17371051 (C.D. Cal. Oct. 21, 2022) .......... 3, 4

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*,
668 F.2d 1014 (9th Cir. 1981) .......... 10

**Statutes**

15 U.S.C. § 13(a) .......... 9, 10

Cal. Bus. & Prof. Code § 17045 .......... *passim*

## INTRODUCTION

PepsiCo, Inc. and Frito-Lay North America, Inc.'s (together, "Frito-Lay's") motion to strike is based on multiple mischaracterizations both as to the substance of the Robinson-Patman Act, and as to what must be shown to obtain class certification. Equally important at this early stage of the proceedings, Frito-Lay's brief wholly ignores the admonitions that are repeated in virtually every opinion concerning this issue:

(1) "'motions to strike class allegations are generally disfavored because a motion for class certification is a more appropriate vehicle,'" *Gregory Rowe v. Univ. of S. California, et al.*, No. 24-CV-05022-AB-JC, 2024 WL 5467459, at *2 (C.D. Cal. Dec. 23, 2024) (citation omitted);

(2) "'when ruling on a motion to strike, the Court takes the plaintiffs' allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff.'" *Garcia v. Williams Scotsman, Inc.*, No. 24-CV-02977-PSG-MRWX, 2024 WL 3811267, at *3 (C.D. Cal. Aug. 13, 2024) (citation omitted).

As explained herein, once Frito-Lay's various legal misunderstandings and mischaracterizations are corrected, it becomes apparent not only that the motion is ill-founded, but that Plaintiffs' claims are keenly amenable to class certification.

## LEGAL AND FACTUAL BACKGROUND

Because Robinson-Patman Act ("RPA") cases are uncommon, it is necessary to set the table before jumping into the facts. In enacting the RPA, "Congress intended to assure, to the extent reasonably practicable, that businessmen at the same functional level would start on equal competitive footing so far as price is concerned." *FTC v. Sun Oil Co.*, 371 U.S. 505, 520 (1963). It was enacted out of the "perceived need to protect independent retail stores from 'chain stores,'" and thus evinces "a policy choice favoring the interest in equal treatment of all customers over the interest in allowing sellers freedom to make selective

competitive decisions." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 132-33 & n.25 (1978). In essence, the RPA requires that suppliers like Frito-Lay provide a level playing field to their various customers, regardless of that customer's size or purchasing power.

In setting prices for its snack chips, however, Frito-Lay refuses to put independent retail stores "on equal competitive footing so far as price is concerned." *Sun Oil*, 371 U.S. at 520. Rather, it charges Plaintiffs and all members of the class "higher net prices for identical bags of snack chips compared to what Frito-Lay charges to the Chain Groceries." FAC ¶ 29 (ECF No. 26). The fact that Frito-Lay discriminates against these independent businesses is obvious. As one of many examples alleged in the FAC, Frito-Lay charges Plaintiffs and members of the class $4.63 for 9.25 ounce bags of Doritos, while selling identical bags to Albertsons at a price that permits Albertsons to turn around and sell those bags for just $2.49. FAC ¶ 30.

Frito-Lay overtly classifies its customers into favored and disfavored groups. It categorizes Plaintiffs and all members of the proposed class into its "UDS channel," while providing the Chain Groceries with discriminatorily advantageous terms via entering "chain-level agreements" with those favored purchasers. *Id.* ¶¶ 61, 37. Given that Plaintiffs and the class pay a net price for snack chips that is far higher than the net price paid by the Chain Groceries, Plaintiffs and the class lose a tremendous volume of sales and profits to the Chain Groceries. *Id.* ¶¶ 37, 80.

Frito-Lay's discriminatory pricing violates three laws. First, it violates section 2(a) of the RPA by charging Plaintiffs and the class illegally high prices compared to the prices Frito-Lay charges to the Chain Groceries. *Id.* ¶¶ 72-81. Second, Frito-Lay makes "promotional payments" to the Chain Groceries for things like advantageous product placement, while denying proportionally equal promotional payments to Plaintiffs and the class, in violation of section 2(d) of the RPA. *Id.* ¶¶ 57-60, 83-84. Third, Frito-Lay's conduct violates section 17045 of the

California Unfair Practices Act, Cal. Bus. & Prof. Code § 17045. *Id.* ¶¶ 86-90. Section 17045 generally embodies the same prohibitions as section 2(a) and (d) of the RPA, with the additional element that the supplier kept the favorable terms it gave to one purchaser "secret," which Frito-Lay does here. *Id.* ¶ 86.

It is notable in the context of the instant motion that Frito-Lay essentially concedes that the FAC's allegations suffice to state a claim under all three statutory provisions: Frito-Lay had moved to dismiss the original complaint under Rule 12(b)(6), ECF No. 23, but did not renew that motion in response to the amended allegations.

## LEGAL STANDARD

"'Courts disfavor motions to strike classwide allegations filed at the pleading stage or before the plaintiff has had the opportunity to file a motion for class certification.'" *Lipeles v. United Airlines, Inc.*, No. 23-CV-7143-KK-MAAX, 2024 WL 1946660, at *6 (C.D. Cal. Apr. 11, 2024) (quoting *Hartranft v. Encore Capital Grp., Inc.*, 543 F. Supp. 3d 893, 926 (S.D. Cal. 2021)). "Indeed, to strike class allegations at this juncture would be inconsistent with the type of 'rigorous analysis' that this Court would endeavor to undertake in deciding whether to ultimately certify a class." *Rowe v. Univ. of S. California*, No. 2:24-CV-05022-AB-JC, 2024 WL 5467459, at *2 (C.D. Cal. Dec. 23, 2024) (citations omitted). And as Frito-Lay itself recognizes, such motions can be granted only where "'it is clear from the complaint that the class claims cannot be maintained.'" Mot. at 3 (quoting *In re Kia Hyundai Vehicle Theft Litig.*, 2024 WL 2104571, at *9 (C.D. Cal. Apr. 22, 2024)).

"Motions to strike class allegations are particularly disfavored because it is rarely easy to determine before discovery whether the allegations are meritorious." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 834 (D. Ariz. 2016). While "some courts have granted motions to strike class allegations under Rule 12(f), 'it is in fact rare to do so in advance of a motion for class certification.'" *Wallster, Inc. v. Redbubble, Inc.*, No. 22-CV-02958-SPG-MAR, 2022 WL 17371051, at *6 (C.D.

Cal. Oct. 21, 2022) (citations omitted). This is because "[a] fully briefed record and at least some discovery are necessary for the Court to make a fully informed decision, as class determination 'generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1236 (S.D. Cal. 2009) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

"Thus, 'before granting such a motion, the court must be satisfied that there are no questions of fact, that the claim or defense is insufficient as a matter of law, and that under no circumstance could it succeed.'" *Wallster*, 2022 WL 17371051, at *6 (citation omitted).

## <u>ARGUMENT</u>

Frito-Lay can only make its motion sound plausible by mischaracterizing the standards for class certification, and the legal rules that govern the RPA. Once those mischaracterizations are corrected, it becomes plain not only that Frito-Lay's motion must fail, but that class certification is almost certainly warranted here.

### I. FRITO-LAY FALSELY ASSERTS THAT A CLASS ACTION CAN ONLY BE CERTIFIED WHERE COMMON ISSUES PREDOMINATE.

Frito-Lay's brief proceeds from the premise that to obtain any manner of class certification "Plaintiffs must show, among other things, that there are questions of law or fact common to the class <u>and that those common issues predominate over questions affecting only individual members</u>." Mot. at 4 (emphasis added). But the underlined part of that sentence applies to only *one* form of class certification.

Starting from first principles, to obtain class certification, a class plaintiff must "ma[k]e two showings, one under Rule 23(a) and one under Rule 23(b)." *DJ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1232 (9th Cir. 2024). The showing under 23(a) requires: (1) numerous plaintiffs, (2) at least one question of law or fact that is common to the class, (3) that the named-plaintiffs' claims are "typical" of

those of the absent class members, and (4) that the named plaintiffs will adequately protect the class's interests. *Olean Wholesale Grocery Coop. v. Bumble Bee Foods*, 31 F.4th 651, 663 (9th Cir. 2022) (*en banc*); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) ("To satisfy Rule 23(a)(2) commonality, 'even a single common question will do.'") (cleaned up). As *DJ Reserve* explains, "[t]he district court must perform a 'rigorous analysis' of these prerequisites, which frequently 'will entail some overlap with the merits of the plaintiff's underlying claim.'" 96 F.4th at 1232 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

Once the Rule 23(a) factors are fulfilled, the plaintiff must then satisfy "at least one of three categories outlined in Rule 23(b)." *Id.* Plaintiffs here seek certification under two of those categories, (b)(2) and (b)(3). FAC ¶¶ 66, 70. To obtain (b)(2) certification for injunctive relief, Plaintiffs need only show that Frito-Lay "'has acted or refused to act on grounds that apply generally to the class.'" *DJ Reserve*, 96 F.4th at 1232 (quoting Rule). Only subsection *(b)(3)* requires the showing that Frito-Lay contends applies to all forms of class certification—that "common issues predominate over questions affecting only individual members." Mot. at 4; *see DJ Reserve* 96 F.4th at 1232.

Indeed, the Ninth Circuit just recently emphasized that predominance is *not* required for (b)(2) certification: "Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)." *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 938 (9th Cir. 2019) (citation omitted). Frito-Lay's experienced counsel knows this, so it they should not have told the Court that predominance is required for all forms of class certification.

Under an accurate portrayal of class certification principles, it is all but certain that (b)(2) certification is appropriate here. For the 23(a) factors: (1) there

are at least "hundreds" of class members, FAC ¶ 64;[1] (2) a central common question is whether Frito-Lay charges customers in its UDS channel higher net prices than it charges customers in the Chain Grocery channel; (3) the two Plaintiffs are typical of UDS class members; and (4) they and their counsel have the experience and ability to adequately represent the class.

With specific regard to subsection (b)(2) certification, Frito-Lay nowhere disputes that its pricing structure to Plaintiffs "appl[ies] generally to the [proposed UDS] class." Fed. R. Civ. P. 23(b)(2). Likewise, certification of an injunctive class on Plaintiffs' RPA section 2(d) claim will be appropriate once Plaintiffs have proven, for example, that "Frito Lay offers payments to Chain Groceries for favorable product placement (such as aisle "endcaps"), and for stocking new flavors and brands of snack chips, while failing to offer such payments to Plaintiffs and members of the class." FAC ¶ 83. Thus, the Court should deny Frito-Lay's motion to strike since it is clear, at a minimum, that a Rule 23(b)(2) class is viable.

In any event, following from the knowingly false premise that no class may be certified unless common issues "predominate," the great bulk of Frito-Lay's brief is directed only at the supposed "individual issues" that supposedly "permeate" resolution of the RPA and section 17045 claims. Mot. at 4; 5-13. But even as to this narrow challenge to Plaintiffs' class allegations, *every one* of the supposed individual issues that Frito-Lay hypothesizes stems either from its misunderstanding of RPA law, or its willful misreading of the FAC.

---

[1] Without explanation or evidence, Frito-Lay switches Plaintiffs' "hundreds" allegation to "***thousands.***" Mot. at 1, 2, 4, 7.

## II. INDIVIDUAL ISSUES WOULD NOT PREDOMINATE IN TRYING PLAINTIFFS' CLAIMS AS A CLASS.

### A. Frito-Lay Mischaracterizes *Every* RPA Principle That It Claims Will Require Individualized Inquiry.

The bulk of Frito-Lay's brief is directed at inventorying the individual inquiries that will supposedly be required to resolve the bulleted issues listed at pages 5-6 of its brief. As noted, these supposed "individual issues" would be relevant only to (b)(3) certification, not (b)(2). *Supra* at 5. But on a proper understanding of the RPA and the FAC's allegations, *none* of those issues will require an individualized inquiry even for (b)(3) certification. We address them in turn.

#### 1. All sales to class members are reasonably contemporaneous to all sales to the Chain Groceries.

Frito-Lay first contends that an individual inquiry will be required to determine whether each class member purchased snack chips reasonably contemporaneously with purchases by a favored Chain Grocery. Mot. at 5. "'To be subject to the Act, the disadvantaged recipients (or non-recipients) must be customers of the [supplier] within approximately the same period of time'" as the favored customer. *Mathew Enter., Inc. v. Chrysler Grp., LLC*, 738 F. App'x 569, 570 (9th Cir. 2018) (quoting *England v. Chrysler Corp.*, 493 F.2d 269, 272 (9th Cir. 1974)). While there is no fixed outside limit as to how proximate in time the sales must be to be "reasonably contemporaneous," the Ninth Circuit has held that "a 16-month difference" is "too distant," *id.*, but that, for example, sales in the same month, or "sufficiently close to" being in the same month suffice as a matter of law. *Tri-Valley Packing Association v. FTC*, 329 F.2d 694, 709 (9th Cir. 1964).

Here, the FAC accurately alleges that Frito-Lay stocks snack chips on the class members' shelves at least once per week, and typically stocks the Chain Groceries on a daily basis. FAC ¶ 44. And it accurately alleges that Frito-Lay

conducts "weekly or monthly invoicing to both the class members and the Chain Groceries." FAC ¶ 68. By mathematical necessity then, *every* sale that Frito-Lay made to a class member will be within at most one month of *every* sale that it made to the Chain Groceries. Once Frito-Lay is forced in discovery to admit the truth of these allegations, this issue will be resolved on a classwide basis "in one fell swoop." *Scott v. Dart*, 99 F.4th 1076, 1092 (7th Cir. 2024) (reversing order denying (b)(3) certification).

### 2. All class members are alleged to have paid higher net prices than the Chain Groceries.

Frito-Lay next contends that the Court will "need to determine, for each identified pair of contemporaneous sales," whether the price charged to the class member was higher than the price charged to a competing Chain Grocery. Mot. at 5. As an initial matter, the FAC alleges that the class members *always* paid a higher price than the Chain Groceries, FAC ¶¶ 29, 72—an allegation which must be accepted as true at this stage. *Garcia*, 2024 WL 3811267, at *3. Even then, establishing a defendant's liability under the RPA does not require review of *every* individual transaction between the supplier and the disfavored purchaser to confirm that it was discriminatory. As the jury instruction recommended by the Ninth Circuit explains: "If you find that defendant has charged plaintiff and other purchasers different net prices, then you must find that plaintiff has established the element that defendant has discriminated in price." *See* ABA, Model Jury Inst. in Civil Antitrust Cases, at 250 (2016 ed.).

Once that element is established, any variations in the *degree* of the discrimination are just a matter of damages, and it is well-established that the need for individualized damages calculations "does not defeat class action treatment." *Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1086 (9th Cir. 2020). Moreover, as in all antitrust class actions, damages calculations may permissibly be based on "averaging assumptions" and "econometric technique[s] to control for the effects of

the differences among class members and isolate the impact of the alleged antitrust violations on the prices paid." *Olean*, 31 F.4th at 677.

In the highly unlikely event that discovery shows that some members of the proposed class *always* received the same pricing and promotions that Frito-Lay gives to the Chain Groceries—not something that Frito-Lay's motion even hints at being true—(b)(3) certification might be thwarted. Or perhaps the class definition would need to be narrowed, or perhaps class certification would be appropriate only as to certain "issues" under Rule 23(c)(4)—as the Complaint alternatively alleges. FAC ¶ 62. But without discovery, at this stage the allegation that Frito-Lay charged higher net prices to all class members controls.

**3. The interstate commerce requirement is readily resolved on a class basis.**

Third, Frito-Lay contends that the factfinder will need to review every transaction by every class member over the last four years to determine whether that specific transaction took place in interstate commerce. Mot. at 5. But Frito-Lay is flat wrong that this issue requires a transaction-by-transaction inquiry. For starters, the statutory text provides that section 2(a) applies to "any person engaged in commerce" where "*any* of the purchases involved in such discrimination are in commerce." 15 U.S.C. § 13(a) (emphasis added). Statutory interpretation "starts 'as always, with the language of the statute,' and considers the natural reading of the language using 'ordinary English grammar.'" *United States v. Collazo*, 984 F.3d 1308, 1322 (9th Cir. 2020) (citations omitted). Where Congress said that suppliers are subject to the provisions of 2(a) where "any" of the relevant purchases were in commerce, Frito-Lay is poorly positioned to contend that where Congress actually meant to say "every."

The Ninth Circuit describes the "in commerce" test as a "jurisdictional requirement," and unsurprisingly holds that so long as some portion (*i.e.*, "any") of the defendant's challenged sales involved products that crossed state lines, "these

transactions [are] sufficient 'to bring the whole panoply of alleged intrastate price discriminations within the subject matter jurisdiction requirements of Robinson-Patman § 2(a).'" *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014, 1044 (9th Cir. 1981) (quoting district court). In *William Inglis* as here, "[t]his is not a case in which jurisdiction is being asserted over essentially local transactions, involving purely local businesses," and thereby outside the reach of the Act. *Id.* Rather, this is a suit against the nation's largest snack chip maker, alleging that it discriminates in favor of the national corporate Goliaths with whom local businesses compete for chip sales to end consumers. Accordingly, because this "jurisdictional requirement," *id.*, is satisfied as to the "person engaged in commerce," 15 U.S.C. § 13(a), it does not present an inquiry that will need to be resolved as to each member of the class.

**4. Competition can be proven on a classwide basis.**

Frito-Lay's argument that an individual inquiry will be necessary to determine whether each class member competes with one or more outlets of the Chain Groceries is supported only by district court opinions that are no longer valid following the Ninth Circuit's opinion in *U.S. Wholesale Outlet & Distribution, Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126 (9th Cir. 2023). *See* Mot. at 7 (citing *Bel Air Markets v. Foremost Dairies, Inc.*, 55 F.R.D. 538 (N.D. Cal.1972) and *ABC Distrib., Inc. v. Living Essentials LLC*, 2017 WL 3838443 (N.D. Cal. Sept. 1, 2017)). Those district court cases had held that the proposed classes could not be certified because "none of the disfavored customers can be assumed to have competed with a Lucky store," *Bel Air*, 55 F.R.D. at 541, and "geographic proximity does not necessarily mean purchasers compete for sales." *ABC*, 2017 WL 3838443, *8.

*U.S. Wholesale*—brought by Plaintiffs' counsel—wholly abrogated the supposed individualized nature of proving actual competition. There, the Ninth Circuit held that "actual competition" is "establish[ed]" between a favored and

disfavored customer so long as "(1) one customer has outlets in geographical proximity to those of the other; (2) the two customers purchased goods of the same grade and quality from the seller within approximately the same period of time; and (3) the two customers are operating on a particular functional level such as wholesaling or retailing." 89 F.4th at 1142. While *U.S. Wholesale* did not specify an outer limit for "geographical proximity," it adopted its "actual competition" standard from its earlier *Tri-Valley* opinion, where it found sufficient geographical proximity by reference to purchasers who had outlets in the same metropolitan area: "the Denver area," "the Boston area," and "the Portland area." 329 F.2d at 702, 709.

Here, the FAC notes that the Ninth Circuit evaluates proximity by reference to metropolitan area, and alleges that "Plaintiffs and all members of the class are within the same geographic area as one or more outlets of one or more of the Chain Groceries." FAC ¶ 53. Even if discovery reveals that there are one or more class members in some far-flung locale that does not face competition from any Chain Grocery, courts routinely allow class plaintiffs to more precisely tailor their proposed class definition as it becomes informed by the discovery process. *See, e.g.*, *Gold v. Lumber Liquidators Inc.*, 2017 WL 2688077, at *3 (N.D. Cal. June 22, 2017) (collecting cases). Equally important, Rule 23(b)(3) does not require 100% uniformity among class members; it requires only that common issues "predominate" over individual issues. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.").

As for the other two prongs to demonstrate the existence of "actual competition" under *U.S. Wholesale*, Frito-Lay does not dispute that the FAC alleges that all class members and the Chain Groceries purchased identical snack chips from

it, nor does it dispute that the FAC alleges that class members and the Chain Groceries all operate at the retail level. Mot. at 1-15.

Finally on this point, Frito-Lay had contended in its motion to dismiss that the *U.S. Wholesale* test for competition applies only to section 2(d) claims, not 2(a). *See* ECF No. 23 at 18. To the extent Frito-Lay tries to revive that argument in its reply here, it is easily shown wrong. For one thing, *U.S. Wholesale* drew on section 2*(a)* cases from the Fifth and Third Circuits as confirmation for the competition standard it reiterated. 89 F.4th at 1142-43 (quoting *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 692-93 (5th Cir. 2003) and *Feesers, Inc. v. Michael Foods, Inc.*, 498 F.3d 206, 214 (3d Cir. 2007)). Furthermore, the main point of *U.S. Wholesale* was to explain that the competitive standard described in *Volvo Trucks North America, Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164 (2006)—a section 2(a) case—does not apply to "'chainstore paradigm' cases" like this. 89 F.4th at 1144. Had the Ninth Circuit believed that both Congress and the Supreme Court meant the word "competition" to mean something different in section 2(d) than it means in 2(a), it would have distinguished *Volvo* simply by declaring that *Volvo* concerned '2(a) competition,' while *U.S. Wholesale* concerned '2(d) competition.' But of course it did not do that. Unsurprisingly, in a post-*U.S. Wholesale* case where both 2(a) and 2(d) were at issue, the court rejected the same argument Frito-Lay will likely make, holding that "*U.S. Wholesale*–not *Volvo*–applie[s] to this action" in determining whether the favored and disfavored buyers are in competition with each other under section 2(a). *L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*, No. 18-6809-MWF-MRWX, 2024 WL 2272384, at *8 (C.D. Cal. May 20, 2024).

**5. Competitive injury can be proven on a classwide basis.**

Frito-Lay next argues that if the class is certified, "[t]he Court would need to determine whether, for each class member, the alleged price difference in favor of the allegedly competing Chain Grocery was significant and sustained over a substantial period of time," to satisfy the "*Morton Salt* inference" of competitive

harm. Mot. at 5, 7. But that inference will be easily resolved on a classwide basis. As described in the FAC, the price that Frito-Lay charged class members for Doritos, for example, was 84% higher than the price at which Albertsons and Ralphs *sold* identical bags. FAC ¶¶ 30-31. In *Morton Salt* itself, the Supreme Court found the eponymous inference satisfied as a matter of law where the supplier's price to the disfavored purchasers was just 6.7% higher than its price to the favored purchasers.[2] If the allegations are true, and discovery shows the *Morton Salt* inference satisfied here, then competitive injury will be established classwide as a matter of law.

Apparently recognizing this fact, Frito-Lay asserts that the *Morton Salt* inference is "rebuttable." Mot. at 7. But the possibility that a class defendant might try to rebut a presumption as to particular class members does not bar certification of (b)(3) classes. *DZ Reserve*, 96 F.4th at 1237. And to the extent that Frito-Lay might seek to rebut the presumption as to *all* class members, that would be (by definition) a classwide issue.

**6. Injury can likewise be proven on a classwide basis.**

In a wholly undeveloped argument, Frito-Lay contends that if the class were certified, "[t]he Court would need to determine, for each class member, whether it lost sales to a competing Chain Grocery ***because of*** the allegedly discriminatory pricing." Mot. at 6. But the injury element will be easily proven by expert opinion as to the law of demand—that higher prices reduce sales volume. As Justice Scalia observed, "[t]he Act focuses . . . upon predicable commercial motivation," and courts should "assume that Congress focused upon . . . the damage caused by the almost universal rule." *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 578 (1990) (Scalia,

---

[2] *FTC v. Morton Salt Co.*, 334 U.S. 37, 41 (1948) (chart of prices); 47-48 (basing the inference of competitive injury on the $.10/case difference between "carload purchases" and "less-than-carload purchases;" $1.50x = $1.60; x = 1.066).

J., concurring). Frito-Lay will of course be free to seek an expert to opine that the laws of supply and demand do not apply to snack chips, but even that testimony would present a *classwide* issue, not an individualized issue.

**7. Frito-Lay's hypothesized defenses are unpled, but are likewise susceptible to classwide proof.**

Finally, Frito-Lay argues that the RPA's two statutory defenses to liability will present individual issues. Mot. at 6. But Frito-Lay has not yet answered the complaint, so those hypothetical defenses should not be allowed to form the basis of a motion to strike at this stage.

Even then, the FAC explains why the cost-justification defense will fall short, on a classwide basis. FAC ¶ 73. As for "meeting competition," Frito-Lay will not have a good-faith factual basis to even plead this defense. Per the Supreme Court, the "proviso legitimatizing discriminations made to 'meet competition' was limited to protect only discriminations made 'to meet an equally low price of a competitor.'" *FTC v. Sun Oil Co.*, 371 U.S. 505, 517 (1963) (quoting 15 U.S.C. § 13(b)). Given that Frito-Lay owns essentially every national brand of snack chips other than Takis and Pringles, to make this defense, it will need to plead that it gave the Chain Groceries the discriminatory pricing alleged herein in order to keep the Chain Groceries from replacing their entire chip selection with Takis/Pringles, or another (unidentified) competitor to the Frito-Lay brands of Lays, Ruffles, Doritos, Cheetos, etc. Assuming that Frito-Lay's counsel undertake the requisite legal and factual investigation before alleging this potential defense in their Answer, the "meeting competition" defense is unlikely to even appear in that future pleading.

**B. The Existence of *Some* Individualized Issues Does Not Bar Certification of a (b)(3) Class.**

For now, let us suppose that one or two of the seven issues Frito-Lay has identified as presenting individual issues would in fact require separate inquiries. Even if that were the case, it would not preclude the Court from certifying the

proposed (b)(3) class. That is because "[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are *more prevalent* or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (emphasis added). In other words, "predominance does not require that all questions be common." *DZ Reserve*, 96 F.4th at 1238 (citing *Tyson Foods*). Here, the common questions as to whether Frito-Lay has violated the RPA by giving favorable pricing and promotions to the Chain Groceries, and the nature and degree of the resulting economic harm, will undoubtedly "predominate" over whatever minor individualized questions might differentiate the class members themselves.

### C. ***Every One* of Frito-Lay's Cases Denying Class Certification Is Easily Distinguishable.**

Frito-Lay claims that a "legion" of cases hold that RPA cases are uncertifiable. Mot. at 1; *see also* Mot. at 9-10. As exemplary, it quotes a statement from a 40-year-old Massachusetts case that "'[t]he overwhelming weight of authority is that [RPA] price discrimination cases are not suitable for class certification.'" *Clark v. H.P. Hood Inc.*, 1985 WL 6263, at *1 (D. Mass. Sept. 5, 1985); Mot. at 10. But as shown below, every case that Frito-Lay cites is easily distinguishable, either because it concerned very different facts, or because it followed an "actual competition" standard contrary to this Circuit's precedent from *U.S. Wholesale*. 89 F.4th at 1142. In all events, a platitude from various district courts that RPA cases should not be certified is not a substitute for the "rigorous analysis" that Frito-Lay acknowledges courts must undertake before ruling on class certification. Mot. at 4; *Dukes*, 564 U.S. at 351.

In addition to the district court cases inventoried below, Frito-Lay tells the Court that "the *Ninth Circuit has found* class treatment unworkable for RPA claims solely on the basis of the competitive harm element, *which the circuit said* presents too many individualized factual issues to be adjudicated on a class-wide basis."

Mot. at 8 (emphasis added, citing *Chicken Delight, Inc. v. Harris*, 412 F.2d 830, 831 (9th Cir. 1969)). If this were an accurate description of *Chicken Delight*, then Frito-Lay might win this motion, at least as to the proposed (b)(3) classes.

But Frito-Lay's description of *Chicken Delight* is inexcusable. If the Court reviews that opinion, it will see that it says literally *nothing* about the RPA, nor about "competitive harm." *Id.* Rather, *Chicken Delight* discussed the propriety of class notice as to two "issues." 412 F.2d. at 831. The first was "relative to certain provisions in Petitioners' standard forms of franchise agreements," which was not disputed on appeal. *Id.* The second issue was "the so-called 'pricing issue,' and this relates to the allegation . . . that the Petitioners have unlawfully exercised *control over the retail prices* of all members of the class." *Id.* (emphasis added). Contrary to Frito-Lay's false description, neither of the issues in *Chicken Delight* had anything to do with the RPA. 412 F.2d at 831.

A tendency to falsely describe authority is habitual. Just as Frito-Lay falsely tells the Court that a predominance of individual issues would preclude any form of class certification, Mot. at 4, it falsely describes *Chicken Delight*. Mot. at 8. As this case goes forward, we anticipate that Frito-Lay's counsel will struggle to break this bad habit.

Moving to the (non-precedential) district-court cases that Frito-Lay invokes, they are all easily distinguishable:

- *ABC Distribution, Inc. v. Living Essentials LLC*, 2017 WL 3838443 (N.D. Cal. Sept. 1, 2017) denied certification upon the belief that *Volvo* controls the test for "actual competition" in all RPA cases, and that individualized issues would accordingly predominate. *Id.* at *8. That view of *Volvo* was squarely overruled by *U.S. Wholesale*, which adopted a mechanical test for actual competition. 89 F.4th at 1144.
- *Mad Rhino, Inc. v. Best Buy Co.*, 2008 WL 8760854 (C.D. Cal. Jan. 14, 2008): Without describing the evidence at issue, the court held that the

*Morton Salt* inference could not apply, because whether the defendant had discriminated in price "may vary from one customer to another, and from one location to another." *Id.* at *8. That is not the case here, where Frito-Lay discriminates against *all* members of the class, compared to the Chain Groceries. FAC ¶¶ 29,72.

- *Clark v. H.P. Hood Inc.*, 1985 WL 6263 (D. Mass. Sept. 5, 1985) denied (b)(3) certification upon concluding that the case would require "proof by each plaintiff to establish that a grocery store in the plaintiff's area bought Hood products at a lower price, and that competition existed between the two," as well as proof of "competitive pressure in each relevant geographical area." *Id.* at *2. Here, in contrast, *all* class members paid higher prices than the Chain Groceries, FAC ¶¶ 29, 72, and the existence of "competition" is a mechanical issue under *U.S. Wholesale*, 89 F.4th at 1142.
- *Bel Air Markets v. Foremost Dairies, Inc.*, 55 F.R.D. 538 (N.D. Cal. 1972) denied class certification on the ground that "whether a disfavored Foremost purchaser competed with a Lucky store will have to be individually proved since none of the disfavored customers can be assumed to have competed with a Lucky store." *Id.* at 145. But that holding is squarely contrary to *U.S. Wholesale*, which holds that actual competition is not only 'assumed,' but "establish[ed]" where the three prongs are satisfied. 89 F.4th at 1142. As the FAC alleges, all three prongs are satisfied for all class members. ¶¶ 53, 75-76.
- *Boro Hall v. Metro. Tobacco Co.*, 74 F.R.D. 142 (E.D.N.Y. 1977) denied certification on the same ground as *Bel Air*, describing it as "a case very similar to this one." *Id.* at 145. As shown, *Bel Air*'s ground for denial is no longer valid after *U.S. Wholesale*.

- *Mekani v. Miller Brewing Co.*, 93 F.R.D. 506 (E.D. Mich. 1982) likewise cited *Bel Air* for the notion that the existence of competition requires an individualized inquiry, and further held that "each of the plaintiff-retailers involved in the price discrimination claim will have to prove that he lost business to an Ohio or Indiana retailer." *Id.* at 511-12. On this latter point, the opinion overlooked that competitive injury can be established collectively by the *Morton Salt* inference. *Supra* at 12-13. And it failed to recognize that injury can be quantified by expert econometric analysis as to the price elasticity in demand for snack chips. *Supra* at 8-9.[3]
- *Genesee Vending, Inc. v. Lorillard Tobacco Co.*, 2004 WL 3168777 (E.D. Mich. Nov. 2, 2004) cited *Mekani* for the proposition that the case "must be dismissed" because it was filed as a class action. *Id.* at *3. That is an exceedingly strange interpretation of Rule 12, which Frito-Lay itself avoids arguing.
- *Abernathy v. Bausch & Lomb Inc.*, 97 F.R.D. 470, 474-75 (N.D. Tex. 1983) relied on the rationale of *Bel Air* and *Mekani*, which is no longer valid after *U.S. Wholesale*.
- *O'Connell v. Citrus Bowl, Inc.*, 99 F.R.D. 117, 122-23 (E.D.N.Y. 1983), like the others, held that proof of competition was individualized, and ignored (1) proof of classwide competitive injury via the *Morton Salt* inference, and (2) econometric methods of proving classwide damages. *Olean*, 31 F.4th at 677.

In sum, none of these old cases bars certification of this action, or is even persuasive after *U.S. Wholesale*. More importantly in this posture, all except

[3] As with all antitrust claims, the source of private RPA damages is Section 4 of the Clayton Act, with its attendant "relaxed damages rules." *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 565-67 (1981).

*Genesee Vending* were decided upon a motion for class certification (after the evidence had come in), not upon the pleadings.

## III. THE CLASS ALLEGED IN THE COMPLAINT IS NOT "FAILSAFE."

Frito-Lay next argues that the class allegations should be stricken because Plaintiffs allege a "failsafe class," by defining class members as those who paid "'***discriminatorily*** higher net price[s],'" which, according to Frito-Lay, improperly "requires the Court to make a substantive merits determination." Mot. at 12 (quoting FAC ¶ 61).

Frito-Lay's argument misapprehends fundamental RPA caselaw. As the Supreme Court has repeatedly explained, "discrimination within the meaning of § 2(a) 'is merely a price difference.'" *Texaco*, 496 U.S. at 559 (quoting *FTC v. Anheuser–Busch, Inc.*, 363 U.S. 536, 549 (1960)). As Frito-Lay will undoubtedly argue when the evidence shows that all class members were charged a higher price than their Chain Grocery competitors (*i.e.*, a "discriminatorily higher net price," FAC ¶ 61), that fact alone will not establish Frito-Lay's liability. Admittedly, paying a discriminatorily higher price is an *element* of a § 2(a) claim, but it no more renders this class "failsafe" than a breach of contract class action, where the class is defined in part by reference to the class members having satisfied one element of a breach of contract claim: All individuals who "entered a contract with" the Defendant.

## IV. THE STATE-LAW CLAIMS ARE JUST AS CERTIFIABLE AS THE RPA CLAIMS.

By its own description, Frito-Lay's argument against Plaintiffs' section 17045 claim rises and falls with its RPA argument. Mot. at 13. And as with its arguments about the RPA claims, Frito-Lay makes no argument as to the viability of a (b)(2) class—as to which the supposed predominance of individual issues is irrelevant. *Supra* at 5. The only wrinkle Frito-Lay adds for the state-law claim is its contention that a section 17045 plaintiff "must show that the discounts at issue

were 'secret' and 'unearned.'" Mot. at 13 n.5. Accordingly, it supposes that "for each of the thousands of purported class members, the Court will need to make unique findings on whether a particular discount at some point in time was secret and that the particular favored grocery store did not 'earn' the discount." *Id.*

This is wrong in many ways. For one, the pricing and promotional benefits prohibited by section 17045 "are 'secret' if they are concealed from or *not disclosed to* other buyers." Jud. Council of Cal., Civil Jury Instructions, No. 3321 (2025 ed.) (emphasis added). *See also Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc.*, 16 Cal. App. 4th 202, 212 (1993) ("the nondisclosure of Marco's receipt of maximum discounts to which it was not entitled certainly could be construed as a "secret" allowance."). So the individualized inquiry that Frito-Lay hypothesizes would only become relevant if discovery shows that Frito-Lay in fact "disclosed" the terms it gave to the Chain Groceries to certain class members. But for now the allegation that "Frito-Lay does not share with any of its 'UDS' customers the various terms at which it sells its snack chips to the Chain Groceries" must be accepted as true. FAC ¶ 86.

Another way Frito-Lay's contention is wrong is its sweeping assertion that a 17045 plaintiff must show that every manner of prohibited favoritism was "unearned." Mot. at 13 n.5. In fact, the statute reads: "The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, . . . where such payment or allowance tends to destroy competition, is unlawful." Cal. Bus. & Prof. Code § 17045. The "unearned" qualifier pertains only to secret "discounts." Had the Legislature meant "unearned" to apply to all of the listed forms of favoritism, the word "unearned" would have appeared at the start of that list. But even for "discounts," neither the FAC nor Frito-Lay's motion anywhere hypothesize a scenario by which a Chain Grocery "earned" any discount. Mot. at 1-15. So at this stage, it can hardly be said that "it is clear

from the complaint that the class claims cannot be maintained." *In re Kia*, 2024 WL 2104571, at *9.[4]

## V. REMEDYING FRITO-LAY'S LONGSTANDING AND WIDESPREAD ANTITRUST VIOLATIONS IS NOT A "WASTE" OF RESOURCES.

Frito-Lay's final contention is that the class allegations should be stricken because allowing them to move forward would "unnecessarily burden third parties, waste judicial resources, and unduly burden and prejudice Defendants." Mot. at 14. This argument is especially unconvincing, given that it is what 100% of defendants who recognize their vulnerability to class certification would say. In reality, the potential for injustice would stem from allowing Frito-Lay to continue to violate this nation's antitrust laws as against (by Frito-Lay's description) "thousands" of family-owned businesses, where the injury to any individual store would be too small to justify individual litigation.

As the Fourth Circuit put it:

> [C]lass certification will provide access to the courts for those with claims that would be uneconomical if brought in an individual action. As the Supreme Court put the matter, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 426 (4th Cir. 2003) (quoting *Amchem Prod. v. Windsor*, 521 U.S. 591, 617 (1997)); *see also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[T]he realistic alternative

---

[4] An example of a "secret," "unearned discount" is a volume discount that the favored buyer "did not properly 'earn' [ ] by ordering the requisite volume of [ ] products," yet the manufacturer secretly provided to that favored buyer anyway. *Diesel*, 16 Cal. App. 4th at 212-13.

to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.”).

In any event, Frito-Lay’s supposed concern for third parties is grossly overstated. It supposes that: “Dozens of non-parties, including businesses of all sizes, will be forced to produce thousands of confidential business documents and potentially sit for deposition. This discovery will cost both non-parties and Defendants, together, millions of dollars and hundreds of hours of work.” Mot. at 14. But why should discovery need to be taken from “dozens” of third parties? Frito-Lay itself knows its sales history to the class members and the Chain Groceries, and also knows all of the terms of those sales, as well as the discriminatory promotions it extended to the Chains. FAC ¶ 67. While documents or deposition testimony may be necessary from a handful of third parties, that is typical of any complex case. And of course the Court is well-equipped to rein-in runaway third-party discovery, should either side pursue it.

Frito-Lay’s professed concern for the burden on the Court is equally ill-founded, not to mention self-serving. It laments that the parties will “need to engage experts to weigh-in on class-specific issues,” and that the parties will burden the Court with “extensive briefing on class certification issues.” Mot. at 15. But the parties in *every* antitrust case need to engage experts, and there is no reason why those same experts could not address the class issues as well.

A passage from the Fifth Circuit’s decision in *Roper v. Consurve, Inc.* is particularly apt in this posture:

> Of course, the easiest way for any court to handle complex class litigation is simply to deny certification; this may have the real effect of permitting a defendant to violate a federal statute either with impunity or minor expense. In the present case few of the individual claimants would have the resources necessary to litigate against a well-financed defendant.

578 F.2d 1106, 1116 (5th Cir. 1978).

If Frito-Lay were truly concerned about burdening the Court with unnecessary motions, it would not have filed this one.

## CONCLUSION

For all of the foregoing reasons, Frito-Lay's motion should be denied.

Dated: May 30, 2025

GAW | POE LLP

By: s/ *Mark Poe*
Mark Poe
Attorneys for Plaintiffs

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 6,973 words, which complies with the word limit set by forth by Local Rule 11-6.1.

Dated: May 30, 2025

GAW | POE LLP

By: s/ *Mark Poe*
Mark Poe