UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING

ALQUOSH ENTERPRISES, INC.,           )
                                     )
                                     )
                                     )
                    Plaintiffs,      )
                                     )
                                     )
                                     )
         Vs.                         )   No. CV25-01327-MRA
                                     )
                                     )
                                     )
PEPSICO, INC., ET AL,                )
                                     )
                                     )
                                     )
                                     )
                    Defendants.      )
                                     )
_____

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTION HEARING

SANTA ANA, CALIFORNIA

MONDAY, SEPTEMBER 22, 2025

MIRIAM V. BAIRD, CSR 11893, CCRA
OFFICIAL U.S. DISTRICT COURT REPORTER
411 WEST FOURTH STREET, SUITE 1-053
SANTA ANA, CALIFORNIA 97201
VELIZBAIRDMIRIAM@GMAIL.COM

**A P P E A R A N C E S**

**IN BEHALF OF THE PLAINTIFF,**       MARK W. POE
**ALQUOSH ENTERPRISES, INC.:**       RANDOLPH GAW
                                      GAW POE LLP
                                      ONE EMBARCADERO, SUITE 1200
                                      SAN FRANCISCO, CA 94111


**IN BEHALF OF THE DEFENDANT,**      JAGANNATHAN P. SRINIVASAN
**PEPSICO, INC., ET AL:**            BRIANNA BANKS
                                      GIBSON DUNN AND CRUTCHER
                                      LLP
                                      333 SOUTH GRAND AVENUE 51ST
                                      FLOOR
                                      LOS ANGELES, CA 90071-3197

SANTA ANA, CALIFORNIA; MONDAY, SEPTEMBER 22, 2025; 1:33 P.M.

---

THE CLERK:  Calling CV25-01327-MRA:  Alquosh Enterprises, Inc., v. PepsiCo, Inc.

Counsel, please state your appearance for the record for the record beginning with the plaintiff.

MR. POE:  Mark Poe for the plaintiffs.  With my partner Randolph Gaw.

THE COURT:  Good afternoon.

MR. SRINIVASAN:  Good afternoon, Your Honor.  J. Srinivasan for defendants along with my colleague Bri Banks.

THE COURT:  Good afternoon.  Do we have someone on the phone?  Before the Court is the defendant's motion to strike class allegations.  I've read and considered the moving, opposing, and reply papers.  I am not yet certain how I intend to rule.  I have questions for both sides.

So why don't we start actually with plaintiffs.

MR. POE:  Thank you, Your Honor.  Just a couple of points.  The first is that, of course, there's a wealth of district court authority saying that motions to strike class allegations should typically not be granted because discovery will reveal that, for example, a predominance of common issues or lack thereof.  Second, I would say although,

Friot-Lay has cited a bunch of old district court cases where class certification has been denied, all of those except for one, Genesee, were granted at the class certification stage or decided at the class certification stage.

Here, I think it's well laid out in our opposition brief not only if we're talking about 23(b)(3), not only is it not certain that common issues will not predominate.  It's more than likely that common issues will predominate on each of the elements of 2(a) and a 2(d) claim.  Secondly, I would draw the Court's attention to --

THE COURT:  What are those common questions that you expect would be capable of classwide resolution?  What do you believe discovery will reveal?

MR. POE:  It will reveal that our clients and the class all pay always a higher price for the identical bags of snack chips compared to what the chain groceries pay.  It will also show -- this is on the 23(d) issue that all members of the -- that all of the chain groceries receive grossly larger promotional support from Frito-Lay in terms of rebates and advertising funding and stuff like that compared --

THE COURT:  Does the RPA require Frito-Lay to provide the same benefits?

MR. POE:  Yes.

THE COURT:  It does.

MR. POE:  Yes, reasonably proportional.  Under

2(a), yes they are prohibited from discriminating in price. They are required to charge small businesses the same price that they charge large businesses unless the lower price to the large business is cost justified. So that would be if, for example, a large business buys in such quantity that their actual cost savings to Frito-Lay from manufacturing and delivering those chips, the favored purchasers can get a better price but only to that extent. They can't simply get, say, a 20 percent better price because they buy in volume. It has to be quantified.

THE COURT: Would that be a store-by-store determination?

MR. POE: It would not be because it will be -- well, the extent of the discrimination may be individualized, but that would go at most only to individual damages, which does not prohibit even a (b)(3) certification. It's very clear. But it would -- as for the fact of the discrimination, that is going to be a common issue.

I would -- the other thing that I would point out there is that Frito-Lay itself treats these classes as separate. Our plaintiffs and all of the members of the class are classified by Frito-Lay as UDS in their UDS channel. That stands for it up and down the street. So Frito-Lay gives them an annual contract that is identical for every -- these are things where learning in discovery, as I'm speaking

of some things now that have come out in the early stages of discovery.  They're all treated the same.

The chain groceries, on the other hand, get customer merchandising agreements, they call them, that are laden with promotional support and other things and -- well, it's covered by the protective order.  We've already, for example, learned some degree of the discrimination that the Albertsons chain receives, for example, that is grossly beyond anything that is set forth in the single contract that governs all members of this class.

I would further say -- so -- well, to get to the 23(b)(2) issue, there is no predominance requirement. Frito-Lay talks about some old district court cases that suggest that predominance inquiry also applies to 23(b)(2). All of those predate a case we cited, Senne vs. Kansas City Royals.  This is the Ninth Circuit 2019, which reversed the district court's denial of -- well, both a (b)(2) and (b)(3) class.  The reversal of the (b)(2) class was based on that district court having misperceived that (b)(2) imposes what that Court referred to as a cohesiveness requirement. Essentially, the common issues predominate.  The Ninth Circuit 2019 said no, that is not a requirement under (b)(2).

So everything that they have raised, Your Honor, all of these supposed individual issues none of them applies to our (b)(2) class.  It --

THE COURT:  I think what I'm struggling with is that I don't believe you cited to any RPA cases where a class has been certified.  I understand your argument that it may be premature to decide this at this stage on a motion to strike class allegations, but it's also hard for me to see where this case is going if there aren't any cases where a court has certified a class under these -- you know, in a similar situation.

MR. POE:  Well, so there are two.  Frito-Lay mention Gold Strike the case out of the Tenth Circuit where it's the only Circuit Court of Appeals to precisely address that issue, affirm certification.  The Chicken Delight case, Your Honor may have seen some back and forth in the briefing about Chicken Delight.  That district court -- to the extent there was an RPA issue involved in that case at all, that district court had certified the class.  It had gone up on appeal to the Ninth Circuit -- this is an old case -- gone up on appeal.  There were some issues relating only to notice not to predominance and not -- the Ninth Circuit didn't actually mention the RPA claim.  That was certified evidently by the district court.  There's also one from the Seventh Circuit called -- I'm forgetting the entire name.  State Wholesales Grocers Association -- I'm forgetting -- another old case where the district court had certified the RPA class.

What I would respectfully suggest, Your Honor, then is that Your Honor's hesitation should be resolved at the class certification stage upon full briefing and with all of the facts in front of Your Honor rather than the assertions that we make, and Frito-Lay saying well, perhaps some of the class members actually got the same price as Albertsons.  We don't know.  Well, that's what discovery will show or not show.  Here, since we're dealing with the allegations of the complaint on a Rule 12 motion where we allege that all of the plaintiffs were charged a higher price, that should control at this stage.

THE COURT:  Sorry.  You mentioned Chicken Delight. I was trying to go back and look at the decision, but am I right that the Ninth Circuit denied class certification on the RPA claim there?

MR. POE:  No.  It's -- well, the Ninth Circuit decision is very inscrutable.  It has only to do with class notice.  It's not apparent that it reversed class certification and said -- I mean, it certainly didn't say what Frito-Lay describes it as holding that RPA cases cannot be certified because competitive injury is an individualized issue.  It says nothing of that sort.  It's rather ambiguous, I think, both from reading the district court opinion that Frito-Lay cites and the Ninth Circuit opinion.

Again, one further point that I would make is

virtually every district court case that they have cited where class certification has been denied, one of the arguments there -- one of the basis that the district court gave was that whether or not the disfavored purchasers competed with the favored purchasers was an individualized issue.  Here after U.S. Wholesale, that is no longer the case.  U.S. Wholesale holds -- this is at 1142 of the opinion -- we have held that to establish that two customers are in general competition, those three factors must be shown.  They purchased -- they're in geographical proximity.  They purchased goods at the same time.  They're both operating at a -- that in the Ninth Circuit establishes competition.

So every district court case --

THE COURT:  How would you prove competitive injury on a classwide basis here?

MR. POE:  Well, certainly as an initial starting point without yet having the discovery of the prices that were charged, we would be looking at the Morton Salt inference.  The Morton Salt inference -- in that case it arose from just a six percent price discrimination.  Here -- again, we're getting into some stuff that has been produced on a protective order.  We're going to be talking about 30 percent price discrimination between the favored chains and the disfavored independents.  So that the Morton Salt

inference will be established on a classwide basis.  There's no doubt.

Frito suggests that well, the Morton Salt inference can be rebutted, but the Supreme Court is very clear this is in -- Fall City v. Vanco Beverages.  That it can be rebutted only in a very particular way.  The only way that it can be rebutted is as to causation.  That is whether or not the -- the higher price charged caused injury to the disfavored purchaser.  Even then, you know, the Ninth Circuit is very clear, DZ Reserve being one of the cases, the fact that a defendant might come up with rebuttals of legal inferences, that does not cause a predominance of individual issues.  And even then, we would have to wait to see, Your Honor, if there were any evidentiary basis for them to make such rebuttal.

At this stage when they're talking about the pleadings, and them saying well, we'll rebut that.  Based on what facts will you rebut that?  We don't have any of that discovery.  So they have no basis at this time certainly asserts any factual basis for their hypothesized rebuttal.

THE COURT:  Thank you, Counsel.  Let me just ask you a final question if the Court were to grant the motion with leave to amend, would you be able to amend the class allegations, or do you propose -- do you have a proposal for how you would amend them?

MR. POE:  No.  We certainly could amend them at

this point given just the very limited discovery that we have received to date.  So we could -- I mean, I suppose parts of it would have to be -- we would request filing under seal because we'd be referring to Frito-Lay documents, contracts with the chain groceries.  But no, certainly, we could.

THE COURT:  Thank you, Counsel.  Let me hear from defendants.

MR. POE:  Thank you, Your Honor.

THE COURT:  Plaintiffs' counsel made the point that the standard for striking class allegations is exceptionally high.  So why is this case and exception to that?  Why not allow this to proceed?  I know you've made the argument about this being a burden on the parties, but why is this case exceptional?

MR. SRINIVASAN:  Your Honor, the burden does play into it, but the reason that we brought this motion to strike class allegations, which we almost never do, is because of what you focused on which is an RPA case.  RPA claims are truly never certified with one exception in 1970 that has been consistently distinguished and otherwise disregarded by courts.  It is clearly an exception that in many ways proves the rule that unless you have two price lists and other narrow circumstances, including an intent to monopolize the market, all of which were true in Gold Strike, there has never been an RPA claim certified anywhere in country

certainly not in this district ever.

In that context, given that we believe that result is not going to be -- there's this -- this case is not going to be an exception to that.  In fact, this case falls into a typical RPA case in so many ways.  I'm happy to elaborate on that.  That is what motivated us to bring this case -- excuse me, this motion.  Coupling with that, Your Honor, you're a hundred percent right that for us it is a burden.  In this case, it is a staggering burden.

I'll just -- I don't -- I know you've read our briefing.  Something we didn't put in our briefs in the Bell Atlantic versus Twombley, you know, famous pleading standard case, has a passage about antitrust discovery in particular.  This is Twombley 550 U.S. 544558.  The Court said, the cost of modern federal antitrust litigation and the increasing case load of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.

Now, that was in the context of a motion to dismiss.  The Court was saying it's important to avoid discovery in that context.  We're, of course, going to proceed as a non-class here.  We haven't filed the motion to dismiss.  That logic, that sentiment is absolutely true when it comes to discovery.  Just quickly, we are into discovery.

We are already producing millions of cells of data just for these two plaintiffs.

Plaintiffs have asked for 22 custodians just for these two plaintiffs.  They have insisted on plaintiff-specific custodians.  They have said in discovery for us to prove competitive injury, Your Honor, the issue that you asked about, we need communications with the people at Pepsi and our clients to show diversion, to show competitive injury, to show that the pricing has an effect, which, of course, in an antitrust case, a private plaintiff has to show antitrust injury.

So it is a necessary element that cannot be escaped.  Plaintiffs know they have to do it for these plaintiffs.  There's no get-out-of-jail-free card in the class context.  In other words, every one of those 10,000 small retailers that they allege were subject to Robinson-Patman violations, we, the defendant, have the right to say in this case, even if there's a price difference, there was no competitive injury here.  That price difference was not the reason you lost any sales.  That is an every single one of these RPA cases.  RPA cases that counsel on the other side has tried always on an individual basis.  That is critical evidence.  That type of evidence, Your Honor, cannot be scaled across a class.  It is inherently individualistic.

That's where -- when opposing counsel says well,

discovery may show X or discovery may show Y, it's actually independent of that, Your Honor, because what it -- what we're talking about is discovery is necessary for each of the of these individual store -- small retailers who they number in the thousands or tens of thousands.  There's no getting around it.

Now, Your Honor, we have some slides that I'm happy to walk -- one of the things that, you know, maybe our brief what we wanted to marry in all of the arguments we made in our briefing was to explain how each one of these elements cannot be scaled.  I'm happy to pass those around if Your Honor is willing to indulge that and just to walk you through some of these elements, and why this can't be done on a classwide basis.  Even if they found fantastic discovery that showed that there was an RPA violation with respect to one plaintiff, it cannot be imputed to another.

I think my colleague --

THE COURT:  How many slides do you have?

MR. SRINIVASAN:  I have like 15.  I won't go through them all.  I'll flip -- I'll get to a couple of them.

THE COURT:  That's fine.  You can present those.

Let me ask you something about price discrimination.  I believe you cited the Mad Rhino case.

MR. SRINIVASAN:  Yes, Your Honor.

THE COURT:  I think in that case the district court

recognized one exception to the general rule where the defendant maintains two price lists which are discriminatory on their face and demonstrate that the defendant sold its products on better terms to the allegedly favored group.

Can you explain why that exception would not apply here if, I believe, plaintiffs are arguing that there may be two lists or different lists?  So why wouldn't this exception apply?

MR. SRINIVASAN:  Sure, Your Honor.  In -- you know, without conceding that there are only two lists, because we're on a motion to strike, just looking at their complaint, Your Honor -- I think there's actually a slide that excerpts one of their paragraphs from the complaint, the amended complaint at slide seven.  You know, they lay out in slide seven what the alleged pricing is for the disfavored purchasers for their clients and others.  It's not a number.  It's not a specific price.

I am sorry.  I should answer your question directly.  What Mad Rhino -- Judge Schiavelli was referring to in that case was where you get $5 for all of the defendants and $7 for all of the plaintiffs.  In other words, it's two prices.  It's two price lists.  That was exactly what the Gold Strike was where they said one of the reasons that they could find the exception to the RPA was it was just one price or the other.

UNITED STATES DISTRICT COURT

If you look at, for instance, paragraph 36 of their operative complaint, it's not a price that is offered to even their clients.  There are a range of different rebates and discounts that are available that for each separate store on the plaintiff's side, there can be a discount up to -- I added it up -- up to 17 percent.  For others, it could be as low as two percent.  There isn't a single price on the plaintiffs' side for any of the plaintiffs, even under this UDS agreement which, by the way, you know, it's in the complaint.  So I'm not going take issue with it.  There is no such formalized agreement like that where it's called the UDS agreement.

If you -- the next slide, slide eight is a -- is just an excerpt of their paragraph 34 where they say chain groceries are allowed to negotiate prices that are a discount to the list price that are offered to plaintiffs.  So again, a particular Vons or Albertsons in -- whether it's Chula Vista or Santa Cruz, according to their own allegations, will not be a sole price for that defendant.  It will be some negotiated number that will be different from every case -- every store to store or potentially every chain to chain.  So it's not comparing X and Y in every case.  I think Judge Schiavelli just said if that's what you had, I would think about this some more.

Your Honor, I want to turn you to just a few

examples.  If you go to slide three, for instance, this -- these -- by the way, this is a jury instruction from a recent RPA jury trial that opposing counsel had before Judge Marshall in the central district.  So we thought we would just use the jury instructions to show you just logistically how this can't proceed as a class.  This is the instruction for reasonably -- excuse me.  Contemporaneous sales of two products.  Just to determine if two products -- the two like products were sold contemporaneously in time.  It's a multi-factored consideration in terms of what does it mean to be contemporaneous, whether the product is seasonal, the length of time between sales, and market conditions.  Those last two, the market conditions, the length of time between sales will vary from store to store.  That's just -- that's just one element to determine are two pairs of sales contemporaneous.

I'll get to the next slide, Your Honor, which is the issue of like quality and grade.  This might be one of the biggest issues that maybe our brief under sells, which is in the case, for instance, before Judge Marshall, that was about one product something called Clear Eyes.  In the Living Essentials case, that was about 5-hour Energy.  These are all cases, by the way, that there wasn't a class that was certified.  In 5-hour Energy there was one product.  In this case there is one product.  Here there are dozens if not

hundreds of products at issue. They are trying to cram into one RPA case dozens if not hundreds of products. A bag of Cheetos is not the same as a bag of Dorritos, as my kids will tell me for sure.

That's the issue, Your Honor. There's no getting around it. In fact, their complaint acknowledges that. When they start talking about like sales in their complaint, they're not comparing a bag of Dorritos to a bag of Lays. They do like for like. There are many, many, many products at issue. If I -- I'll, you know -- I will -- I appreciate the indulgence. I'll wrap up quickly on this point.

If you turn to slide nine -- excuse me five. It's an excellent illustration of what we're talking about. This table shows what happened at U.S. Wholesale which was the trial before Judge Marshall. In that case there were seven disfavored plaintiffs. There was one product, Clear Eyes. There was one favored customer. That was Costco. Now, there were multiple Costco locations at issue, somewhere between 10 and 20. I can't remember. It was one chain store.

In trying to prove contemporaneous -- the -- the first row is the U.S. Wholesale case with seven disfavored plaintiffs. One favored defendant with multiple stores. One product. In describing that trial, what it took to show paired sales in a fairly simple situation, you can see what we've excerpted there was that the Ninth Circuit said there

were hundreds of thousands of sales that were almost inscrutable for any jury to figure out.

Without judging what happened in that case, this case is exponentially -- well, it's linearly more complex, just as a two-plaintiff case. That's what we're trying to show in the second row. We have two plaintiffs. We have roughly eight favored customers. That's the Albertsons, the Vons, the Safeways. Their view, by the way, Your Honor is that that the competition here for just one of the named plaintiffs, take Alquosh is all of L.A. County. Every store, every chain grocer in L.A. County, that is their position in a single case -- this is not even a class basis -- is the favored store. You're matrixing one store against hundreds. By the way, as I mentioned, it's -- we said 25 products. It's way more than 25 products. Each one of those paired sales have to be separately broken down.

Now, imagine doing that on a classwide basis. The point is you cannot possibly just logistically administer a case of that complexity. And the last slide I'll show you for now, Your Honor, the next page. We tried to show this visually the -- the picture on the far left is what U.S. Wholesale was in terms of complexity. The middle one is what this case will be as a two-plaintiff case. The last one is what -- by the way, I will say this. I don't know if I'm supposed to say. We've not used ChatGPT on any of our

briefs.  We did have ChatGPT manufacture that picture for us.

In any event, that underscores why, Your Honor, we feel like this case is a prime example -- I don't even think it's that rare, but to the extent it's not common that a motion to strike the class claims is appropriate.

A few things that Mr. Poe said --

THE COURT:  Let me ask you this:  What is your best authority or analogous case where a court has granted a motion to strike under these circumstances as opposed to denying a motion for class certification?

MR. SRINIVASAN:  Sure, Your Honor.  We -- we cited -- in terms of the RPA context, Abernathy v. Bausch & Lomb struck class allegations in the RPA context solely on the basis of pleadings and the briefs of counsel.

THE COURT:  What year was that?

MR. SRINIVASAN:  That was 1983, Your Honor.  Then I think Mr. Poe also mentioned the Genesee case which may be -- which was another example of this happening.

I will say, Your Honor, because we did look at this closely, there is not a single case we could find -- we assume opposing counsel would have found it -- where a motion to strike was denied in an RPA context.  There's no example of this ever being brought to a court and saying, it's an RPA claim; these are class claims; you should deny them where the court said no, I'm not.  Let's wait until class

certification.  I would submit, Your Honor, that the dearth of case law going either way is because these cases simply aren't brought as a class action very often anymore given the overwhelming weight of case law.

So what I would say is the only cases I could find that granted the motion to strike in the RPA context.  We could find none that denied it.  It doesn't happen very often because class case are not brought very often.  In fact, opposing counsel quite frequently brings them in the individual context.

I don't know, Your Honor, if you have other questions for me.  I would just hit on a couple of things on U.S. Wholesale because you asked Mr. Poe about whether or not you need competitive injury.  All of U.S. Wholesale said was that the actual competition element, which is just the first step in competitive injury, can be solved by contemporaneous sales, geographic proximity, and being in the same sort of channel of commerce.  That's a rebuttal inference that now can be used.

I would just submit as we kind of walked through this just now, even showing proximity and contemporaneous sales are intensely factual questions that will vary from location to location, but regardless, that's just the first step.  The second step is competitive injury.  The related cousin of competitive injury, antitrust injury.  Mr. Poe had

mentioned well, we'll just do Morton Salt which requires substantial price change over an extended period of time. Again, even assuming they could do that, that's a rebuttable inference where Pepsi defendants should be allowed to rebut in the instance of every store. Every store may have a different story as to why their sales are lagging having nothing to nothing to do with the price difference.

Most importantly, where I wind up on this, Your Honor, antitrust injury is not the same as damages. It's part of the liability determination. It's a standing requirement. Every store has to say -- all these RPA cases say this. It's not enough that there was a price difference. That's -- you can -- they can show price difference everywhere. You have to show that price difference was the reason you lost sales. That is impossible to do on a mass basis. You cannot infer -- it's like a breach of contract case. I could have 25 contracts. I could've breached with five people. That says nothing about the other 20. You can't infer that because you breached with these five, you did about the other 20. This is even more complicated in the sense of you have to have a diversion of sales.

I promise this will be my last point, Your Honor. A point that we didn't emphasize enough in our brief is the fail safe class issue and that comes up in Mad Rhino and also in Living Essentials, which is their class definition is a

fail safe class in that it builds into it the actual liability requirements, right.

If you -- if you give me a moment, I will pull up their definition. It's -- I don't have the paragraph in the complaint, Your Honor, but it's -- it's all California retail businesses that Frito-Lay categorizes in its UDS channel that purchased Frito-Lay snack chips for resale from Frito-Lay at discriminatorily higher net prices than Frito-Lay contemporaneously charged to one or more competing chain groceries.

Judge Schiavelli goes into this as well as Judge Cousins in the N.D. Cal in Living Essentials, which they say how could anybody even know? Even if there was such a thing as a UDS channel customer where they knew that they were a UDS channel -- there is no such thing, but we will accept that allegation. How would they know if they received a discriminatorily high price at about the same time from a favored chain who is somewhere in the metro region. Both of those decisions the judges talk about there is now way -- it's almost an ascertainability issue as much as a fail safe issue that they would know.

That's an equal problem for them. Related to that -- we -- we failed to put this in our brief. We only noticed it as we were preparing for the hearing. The other problem with this class definition is it is defined in terms

of the 2(a) claim.  It's almost a recitation of the 2(a) claim.  Well, they're bringing 2(d) claims.  If you're a 2(d) plaintiff, you wouldn't fall into this.  It wouldn't cover a 2(d) plaintiff's claim here or the California state claim.  They have fashioned a class definition that is addressed to just one of three claims.  That will necessarily exclude and injure those class members who don't have a 2(a) claim but might have a 2(d) or the state claim.  So that's another problem.

THE COURT:  Thank you, counsel.

MR. SRINIVASAN:  Thank you, Your Honor.

THE COURT:  This was the defendants' motion, but I will give plaintiffs an opportunity to quickly respond.

MR. POE:  Thank you, Your Honor.  I want to underline that you're hearing today a lot of assertions of fact.  Your Honor has no idea which set of facts is being asserted as true.  That's why this should be a motion that is decided on the evidence that comes in through discovery by the class certification stage.

Your Honor mentioned the case --

THE COURT:  But I think the issue here is that the case law emphasizes that RPA claims deal with specific sales transactions, correct?  That these are individualized determinations?

MR. POE:  No, Your Honor.  That's inaccurate.  Not

certainly in this -- what the Supreme Court in Volvo refers to as the chain store paradigm case.  It is not, as defendants say, that we are going to need to evaluate every sale that was made to Albertsons for four years compared to every sale that was made to each of the plaintiffs over four years.  That is -- there's no case that says anything like that.  This is just like in the Olean v. Bumble Bee en banc from the Ninth Circuit.  In antitrust cases class actions, the two side proffer econometrics experts who analyze the data.  They made predictions.  That is sufficient even for a 23(b)(3) class.  We didn't hear one word about why a 23(b)(2) class would be improper here.

I'll further say, Your Honor raised the issue of Mad Rhino.  If you look at Mad Rhino -- this is at pages 6 and 7 of the opinion -- if we look at the Mad Rhino, pages 6 and 7, it denied class certification under this cohesiveness requirement.  As I just went through in Senne v. Kansas City Royals, the Ninth Circuit has now clarified there is no such thing.

So we can't say Mad Rhino shouldn't even be persuasive at this point as far as denying class certification, because it denied it on a basis that is not valid in the Ninth Circuit.

All of the other cases, the Abernathy case that counsel just mentioned, that was a follow-on from the Bel-Air

case which held that proof of competition is individualized. Under U.S. Wholesale in the Ninth Circuit, it just is not. When those three factors of actual competition are demonstrated, actual competition is established.  The Ninth Circuit says it's established at two different points. Frito-Lay has suggested it's rebuttable.  It is not rebuttal. It established.  It was Judge Miller's dissent in U.S. Wholesale that suggested that actual competition can be rebutted.  That's the reason why he was in the dissent.

We'll find -- again, if we need to make -- I would prefer all this -- that we get started through discovery and go through this at class certification.  If we need to, we can allege, for example, Frito-Lay provides annual uniform contracts to every member of our class.  These are uniform. Those all set forth the promotional -- prospective promotional payments that plaintiff can earn.  Those are categorically always far below the promotional payments that Frito-Lay offers to all of the chain groceries, at least for those -- those for which they have provided that contractual detail.

One other thing, when you asked about the injury to competition, again, I wish we were on full briefing at class certification, but there is a Supreme Court case called FTC v. Simplicity Pattern.  In fact this is repeated in U.S. Wholesale.  A plaintiff in a 2(d) case need not make any

showing of competitive injury.  The prohibition in 2(d) is absolute.  If a supplier gives promotional support to the favored purchaser that is not reasonably proportional to what it gives to the disfavored purchaser, it is liable for 2(d).  You will see this in U.S. Wholesale.

Last thing I would say, contrary to what counsel just said, antitrust injury is not an element either of a 2(a) or a 2(d) claim.  We can see this with 2(a).  It's right in J. Truett Payne, which they cite, liability is established by proof that the price discrimination may injure competition.  J. Truett Payne accurately says antitrust injury need only be shown to obtain damages under Section 4 of the Clayton Act.  The same is true of 2(d), of course, I defer to U.S. Wholesale and its citation to Simplicity Pattern that I was mentioning.

Finally, Your Honor, we've also asserted class certification of issues classes under (c)4.  Frito-Lay has not made the assertion that there is no single issue that can be certified.  If we certify only, for example, the fact of discriminatory prices -- if that were certified as a (c)4 issue, that would greatly streamline follow-on cases from absent class members who wanted to come in and just prove their antitrust liability.  None of these cases they've cited anywhere certainly about striking class allegations says -- deals with that (c)4 issue of certification of class issues.

So I would just suggest that this should wait until class certification when we can see whether -- I mean, this looks like a picture.  Draw me something that looks very complex.  You get that result.

THE COURT:  Thank you.  Thank you to both sides. The Court will take the motion under submission and issue a written ruling in due course.  Thank you.

MR. SRINIVASAN:  Thank you, Your Honor.

THE COURT:  Anything further?

MR. POE:  No, Your Honor.

THE COURT:  Thank you.  My courtroom deputy also just reminded me that we also have a scheduling conference today, but I think it may make more sense to reschedule that or continue that until the Court decides the motion to strike class allegations.

MR. SRINIVASAN:  That makes sense to us.

MR. POE:  Likewise.

THE COURT:  Thank you.

(Proceedings concluded at 2:13 p.m.)

CERTIFICATE

I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

UNITED STATES DISTRICT COURT

THE ABOVE MATTER.

FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.


/s/ Miriam V. Baird                11/26/2025

MIRIAM V. BAIRD                          DATE
OFFICIAL REPORTER

| / | 6 | analogous [1] - 20:8 |
|---|---|---|

**/**

/s [1] - 29:6

**6**

6 [2] - 25:14, 25:15

**analogous** [1] - 20:8
**analyze** [1] - 25:9
**AND** [2] - 2:10, 28:24
**AND/OR** [1] - 29:3
**ANDREW** [1] - 1:3
**ANGELES** [1] - 2:12
**annual** [2] - 5:24, 26:13
**answer** [1] - 15:18
**antitrust** [10] - 12:13, 12:15, 13:10, 13:11, 21:25, 22:9, 25:8, 27:7, 27:11, 27:23
**ANY** [1] - 29:2
**apparent** [1] - 8:18
**appeal** [2] - 7:17, 7:18
**Appeals** [1] - 7:11
**appearance** [1] - 3:7
**applies** [2] - 6:14, 6:24
**apply** [2] - 15:5, 15:8
**appreciate** [1] - 18:10
**appropriate** [1] - 20:5
**ARE** [1] - 29:3
**arguing** [1] - 15:6
**argument** [2] - 7:3, 11:12
**arguments** [2] - 9:3, 14:9
**arose** [1] - 9:21
**ascertainability** [1] - 23:20
**asserted** [2] - 24:17, 27:16
**assertion** [1] - 27:18
**assertions** [2] - 8:4, 24:15
**asserts** [1] - 10:19
**Association** [1] - 7:23
**assume** [1] - 20:21
**assuming** [1] - 22:3
**Atlantic** [1] - 12:12
**attention** [1] - 4:10
**authority** [2] - 3:22, 20:8
**available** [1] - 16:4
**AVENUE** [1] - 2:11
**avoid** [1] - 12:21

**1**

1-053 [1] - 1:24
10 [1] - 18:18
10,000 [1] - 13:15
11/26/2025 [1] - 29:6
1142 [1] - 9:7
11893 [1] - 1:23
12 [1] - 8:9
1200 [1] - 2:4
15 [1] - 14:19
17 [1] - 16:6
1970 [1] - 11:19
1983 [1] - 20:16
1:33 [1] - 3:1

**7**

7 [3] - 15:21, 25:15, 25:16

**9**

90071-3197 [1] - 2:12
94111 [1] - 2:5
97201 [1] - 1:24

**A**

Abernathy [2] - 20:12, 25:24
able [1] - 10:22
ABOVE [1] - 29:1
absent [1] - 27:22
absolute [1] - 27:2
absolutely [1] - 12:24
accept [1] - 23:15
according [1] - 16:18
accurately [1] - 27:11
acknowledges [1] - 18:6
Act [1] - 27:13
action [1] - 21:3
actions [1] - 25:8
actual [6] - 5:6, 21:15, 23:1, 26:3, 26:4, 26:8
added [1] - 16:6
address [1] - 7:11
addressed [1] - 24:5
administer [1] - 19:18
advertising [1] - 4:20
affirm [1] - 7:12
afternoon [3] - 3:11, 3:12, 3:14
agreement [3] - 16:9, 16:11, 16:12
agreements [1] - 6:4
Air [1] - 25:25
AL [2] - 1:10, 2:10
Albertsons [5] - 6:8, 8:6, 16:17, 19:7, 25:4
allegation [1] - 23:16
allegations [11] - 3:16, 3:23, 7:5, 8:8, 10:23, 11:10, 11:17, 16:18, 20:13, 27:24, 28:15
allege [3] - 8:9, 13:16, 26:13
alleged [1] - 15:15
allegedly [1] - 15:4
allow [1] - 11:12
allowed [2] - 16:15, 22:4
almost [4] - 11:17, 19:1, 23:20, 24:1
ALQUOSH [2] - 1:4, 2:3
Alquosh [2] - 3:5, 19:10
ambiguous [1] - 8:22
amend [4] - 10:22, 10:24, 10:25
amended [1] - 15:13
ANA [3] - 1:18, 1:24, 3:1

**2**

2(a [6] - 4:9, 5:1, 24:1, 24:7, 27:8
2(a) [1] - 27:8
2(d [9] - 4:9, 24:2, 24:4, 24:8, 26:25, 27:1, 27:8, 27:13
2(d) [1] - 27:4
20 [4] - 5:9, 18:19, 22:18, 22:20
2019 [2] - 6:16, 6:22
2025 [2] - 1:19, 3:1
22 [3] - 1:19, 3:1, 13:3
23(b)(2 [2] - 6:12, 25:11
23(b)(2) [1] - 6:14
23(b)(3 [2] - 4:6, 25:11
23(d [1] - 4:17
25 [3] - 19:14, 19:15, 22:17
2:13 [1] - 28:19

**3**

30 [1] - 9:24
333 [1] - 2:11
34 [1] - 16:14
36 [1] - 16:1

**4**

4 [1] - 27:12
411 [1] - 1:24

**5**

5 [1] - 15:20
5-hour [2] - 17:22, 17:24
51ST [1] - 2:11
544558 [1] - 12:14
550 [1] - 12:14

**B**

b)(2 [4] - 6:17, 6:18, 6:19, 6:25
b)(2) [1] - 6:22
b)(3 [2] - 5:16, 6:17
bag [4] - 18:2, 18:3, 18:8
bags [1] - 4:15
Baird [1] - 29:6
BAIRD [2] - 1:23, 29:7
banc [1] - 25:7
BANKS [1] - 2:10
Banks [1] - 3:13
based [2] - 6:18, 10:16
basis [13] - 9:3, 9:16, 10:1, 10:14, 10:18, 10:19, 13:22, 14:14, 19:12, 19:17, 20:14, 22:16, 25:22
Bausch [1] - 20:12
Bee [1] - 25:7
beginning [1] - 3:8

**BEHALF** [2] - 2:3, 2:9
**Bel** [1] - 25:25
**Bel-Air** [1] - 25:25
**Bell** [1] - 12:11
**below** [1] - 26:17
**benefits** [1] - 4:22
**best** [1] - 20:7
**better** [3] - 5:8, 5:9, 15:4
**between** [4] - 9:24, 17:12, 17:13, 18:18
**Beverages** [1] - 10:5
**beyond** [1] - 6:9
**biggest** [1] - 17:19
**breach** [1] - 22:16
**breached** [2] - 22:17, 22:19
**Bri** [1] - 3:13
**BRIANNA** [1] - 2:10
**brief** [5] - 4:6, 14:8, 17:19, 22:23, 23:23
**briefing** [5] - 7:13, 8:3, 12:11, 14:10, 26:22
**briefs** [3] - 12:11, 20:1, 20:14
**bring** [1] - 12:6
**bringing** [1] - 24:2
**brings** [1] - 21:9
**broken** [1] - 19:16
**brought** [4] - 11:16, 20:23, 21:3, 21:8
**builds** [1] - 23:1
**bumble** [1] - 25:7
**bunch** [1] - 4:1
**burden** [4] - 11:13, 11:15, 12:8, 12:9
**business** [2] - 5:4, 5:5
**businesses** [3] - 5:2, 5:3, 23:6
**buy** [1] - 5:9
**buys** [1] - 5:5

## C

**c)4** [3] - 27:17, 27:20, 27:25
**CA** [2] - 2:5, 2:12
**Cal** [1] - 23:12
**CALIFORNIA** [4] - 1:2, 1:18, 1:24, 3:1
**California** [2] - 23:5, 24:4
**cannot** [7] - 8:20, 13:12, 13:23, 14:11, 14:16, 19:18, 22:16
**capable** [1] - 4:12
**card** [1] - 13:14
**case** [57] - 6:15, 7:6, 7:10, 7:12, 7:15, 7:17, 7:24, 9:1, 9:7, 9:14, 9:20, 11:11, 11:13, 11:18, 12:3, 12:4, 12:5, 12:6, 12:9, 12:13, 12:16, 13:10, 13:18, 14:23, 14:25, 15:20, 16:20, 16:22, 17:20, 17:22, 17:25, 18:2, 18:15, 18:21, 19:3, 19:4, 19:5, 19:12, 19:19, 19:23, 20:3, 20:8, 20:17, 20:20, 21:2, 21:4, 21:8, 22:17, 24:20, 24:22, 25:2, 25:6, 25:24, 26:1, 26:23, 26:25
**cases** [16] - 4:1, 6:13, 7:2, 7:6, 8:20, 10:10, 13:21, 17:23, 21:2, 21:5, 22:11, 25:8, 25:24, 27:21, 27:23
**categorically** [1] - 26:17

**categorizes** [1] - 23:6
**causation** [1] - 10:7
**caused** [1] - 10:8
**CCRA** [1] - 1:23
**cells** [1] - 13:1
**central** [1] - 17:4
**CENTRAL** [1] - 1:2
**certain** [2] - 3:17, 4:7
**certainly** [8] - 8:19, 9:17, 10:18, 10:25, 11:5, 12:1, 25:1, 27:24
**CERTIFICATE** [1] - 28:23
**certification** [19] - 4:2, 4:3, 4:4, 5:16, 7:12, 8:3, 8:14, 8:19, 9:2, 20:10, 21:1, 24:19, 25:16, 25:22, 26:12, 26:23, 27:17, 27:25, 28:2
**certified** [11] - 7:3, 7:7, 7:16, 7:20, 7:24, 8:21, 11:19, 11:25, 17:24, 27:19, 27:20
**certify** [1] - 27:19
**CERTIFY** [1] - 28:24
**chain** [14] - 4:16, 4:18, 6:3, 6:8, 11:5, 16:14, 16:21, 18:19, 19:11, 23:9, 23:18, 25:2, 26:18
**chains** [1] - 9:24
**change** [1] - 22:2
**channel** [5] - 5:22, 21:18, 23:6, 23:14, 23:15
**charge** [2] - 5:2, 5:3
**CHARGED** [1] - 29:2
**charged** [4] - 8:10, 9:19, 10:8, 23:9
**ChatGPT** [2] - 19:25, 20:1
**Cheetos** [1] - 18:3
**Chicken** [3] - 7:12, 7:14, 8:12
**chips** [3] - 4:16, 5:7, 23:7
**Chula** [1] - 16:17
**Circuit** [18] - 6:16, 6:22, 7:10, 7:11, 7:17, 7:19, 7:22, 8:14, 8:16, 8:24, 9:12, 10:9, 18:25, 25:8, 25:18, 25:23, 26:2, 26:5
**CIRCUIT** [1] - 29:2
**circumstances** [2] - 11:23, 20:9
**citation** [1] - 27:14
**cite** [1] - 27:9
**cited** [7] - 4:1, 6:15, 7:2, 9:1, 14:23, 20:12, 27:23
**cites** [1] - 8:24
**City** [3] - 6:15, 10:5, 25:17
**claim** [13] - 4:9, 7:20, 8:15, 11:25, 12:18, 20:24, 24:1, 24:2, 24:4, 24:7, 24:8, 27:8
**claims** [6] - 11:18, 20:5, 20:24, 24:2, 24:6, 24:22
**clarified** [1] - 25:18
**class** [59] - 3:16, 3:22, 4:2, 4:3, 4:4, 4:15, 5:21, 6:10, 6:18, 6:25, 7:2, 7:5, 7:7, 7:16, 7:25, 8:3, 8:6, 8:14, 8:17, 8:18, 9:2, 10:22, 11:10, 11:17, 12:23, 13:15, 13:24, 17:6, 17:23, 19:12, 20:5, 20:10, 20:13, 20:24, 20:25, 21:3, 21:8, 22:24, 22:25, 23:1, 23:25, 24:5, 24:7,

24:19, 25:8, 25:11, 25:12, 25:16, 25:21, 26:12, 26:14, 26:22, 27:16, 27:22, 27:24, 27:25, 28:2, 28:15
**classes** [2] - 5:20, 27:17
**classified** [1] - 5:22
**classwide** [5] - 4:12, 9:16, 10:1, 14:14, 19:17
**Clayton** [1] - 27:13
**Clear** [2] - 17:21, 18:16
**clear** [3] - 5:17, 10:4, 10:10
**clearly** [1] - 11:21
**CLERK** [1] - 3:5
**clients** [4] - 4:14, 13:8, 15:16, 16:3
**closely** [1] - 20:20
**cohesiveness** [2] - 6:20, 25:16
**colleague** [2] - 3:13, 14:17
**commerce** [1] - 21:18
**common** [7] - 3:24, 4:7, 4:8, 4:11, 5:18, 6:21, 20:4
**communications** [1] - 13:7
**compared** [3] - 4:16, 4:20, 25:4
**comparing** [2] - 16:22, 18:8
**competed** [1] - 9:5
**competing** [1] - 23:9
**competition** [10] - 9:9, 9:13, 19:9, 21:15, 26:1, 26:3, 26:4, 26:8, 26:22, 27:11
**competitive** [10] - 8:21, 9:15, 13:6, 13:9, 13:19, 21:14, 21:16, 21:24, 21:25, 27:1
**complaint** [10] - 8:9, 12:19, 15:11, 15:13, 15:14, 16:2, 16:10, 18:6, 18:7, 23:5
**complex** [2] - 19:4, 28:4
**complexity** [2] - 19:19, 19:22
**complicated** [1] - 22:20
**conceding** [1] - 15:10
**concluded** [1] - 28:19
**conditions** [2] - 17:12, 17:13
**CONFERENCE** [1] - 29:4
**conference** [1] - 28:12
**CONFORMANCE** [1] - 29:3
**consideration** [1] - 17:10
**considered** [1] - 3:16
**consistently** [1] - 11:20
**construct** [1] - 12:18
**contemporaneous** [6] - 17:7, 17:11, 17:16, 18:20, 21:16, 21:21
**contemporaneously** [2] - 17:9, 23:9
**context** [9] - 12:2, 12:20, 12:22, 13:15, 20:12, 20:13, 20:22, 21:6, 21:10
**continue** [1] - 28:14
**contract** [3] - 5:24, 6:9, 22:16
**contracts** [3] - 11:4, 22:17, 26:14
**contractual** [1] - 26:19
**contrary** [1] - 27:6
**control** [1] - 8:10
**CORRECT** [1] - 28:24
**correct** [1] - 24:23

**cost** [3] - 5:4, 5:6, 12:14
**Costco** [2] - 18:17, 18:18
**could've** [1] - 22:17
**Counsel** [2] - 10:20, 11:6
**counsel** [12] - 3:7, 11:9, 12:16, 13:21, 13:25, 17:3, 20:14, 20:21, 21:9, 24:10, 25:25, 27:6
**country** [1] - 11:25
**County** [2] - 19:10, 19:11
**couple** [3] - 3:20, 14:20, 21:12
**coupling** [1] - 12:7
**course** [5] - 3:21, 12:22, 13:10, 27:13, 28:7
**COURT** [26] - 1:1, 1:23, 3:11, 3:14, 4:11, 4:21, 4:24, 5:11, 7:1, 8:12, 9:15, 10:20, 11:6, 11:9, 14:18, 14:21, 14:25, 20:7, 20:15, 24:10, 24:12, 24:21, 28:5, 28:9, 28:11, 28:18
**court** [17] - 3:22, 4:1, 6:13, 6:19, 7:7, 7:14, 7:16, 7:21, 7:24, 8:23, 9:1, 9:3, 9:14, 14:25, 20:8, 20:23, 20:25
**Court** [11] - 3:15, 6:20, 7:11, 10:4, 10:21, 12:14, 12:21, 25:1, 26:23, 28:6, 28:14
**court's** [1] - 6:17
**Court's** [1] - 4:10
**courtroom** [1] - 28:11
**courts** [2] - 11:21, 12:16
**cousin** [1] - 21:25
**Cousins** [1] - 23:12
**cover** [1] - 24:3
**covered** [1] - 6:6
**cram** [1] - 18:1
**critical** [1] - 13:23
**CRUTCHER** [1] - 2:10
**Cruz** [1] - 16:18
**CSR** [1] - 1:23
**custodians** [2] - 13:3, 13:5
**customer** [3] - 6:4, 18:17, 23:14
**customers** [2] - 9:8, 19:7
**CV25-01327-MRA** [2] - 1:8, 3:5

### D

**damages** [3] - 5:15, 22:9, 27:12
**data** [2] - 13:1, 25:10
**date** [1] - 11:2
**DATE** [1] - 29:7
**deal** [1] - 24:22
**dealing** [1] - 8:8
**deals** [1] - 27:25
**dearth** [1] - 21:1
**decide** [1] - 7:4
**decided** [2] - 4:4, 24:18
**decides** [1] - 28:14
**decision** [2] - 8:13, 8:17
**decisions** [1] - 23:19
**DEFENDANT** [1] - 2:9
**defendant** [6] - 10:11, 13:17, 15:2, 15:3,

16:19, 18:22
**defendant's** [1] - 3:15
**Defendants** [1] - 1:12
**defendants** [5] - 3:13, 11:7, 15:21, 22:4, 25:3
**defendants'** [1] - 24:12
**defer** [1] - 27:14
**defined** [1] - 23:25
**definition** [4] - 22:25, 23:4, 23:25, 24:5
**degree** [1] - 6:7
**Delight** [3] - 7:12, 7:14, 8:12
**delivering** [1] - 5:7
**demonstrate** [1] - 15:3
**demonstrated** [1] - 26:4
**denial** [1] - 6:17
**denied** [7] - 4:2, 8:14, 9:2, 20:22, 21:7, 25:16, 25:22
**deny** [1] - 20:24
**denying** [2] - 20:10, 25:21
**DEPOSIT** [1] - 29:3
**deputy** [1] - 28:11
**describes** [1] - 8:20
**describing** [1] - 18:23
**detail** [1] - 26:20
**determination** [2] - 5:12, 22:10
**determinations** [1] - 24:24
**determine** [2] - 17:8, 17:15
**difference** [6] - 13:18, 13:19, 22:7, 22:12, 22:13, 22:14
**different** [5] - 15:7, 16:3, 16:20, 22:6, 26:5
**directly** [1] - 15:19
**discount** [2] - 16:5, 16:15
**discounts** [1] - 16:4
**discovery** [20] - 3:23, 4:13, 5:25, 6:2, 8:7, 9:18, 10:18, 11:1, 12:13, 12:17, 12:22, 12:25, 13:5, 14:1, 14:3, 14:14, 24:18, 26:11
**discriminating** [1] - 5:1
**discrimination** [7] - 5:14, 5:18, 6:7, 9:21, 9:24, 14:23, 27:10
**discriminatorily** [2] - 23:8, 23:17
**discriminatory** [2] - 15:2, 27:20
**disfavored** [7] - 9:4, 9:25, 10:8, 15:15, 18:16, 18:21, 27:4
**dismiss** [2] - 12:21, 12:24
**disregarded** [1] - 11:20
**dissent** [2] - 26:7, 26:9
**distinguished** [1] - 11:20
**DISTRICT** [3] - 1:1, 1:2, 1:23
**district** [16] - 3:22, 4:1, 6:13, 6:17, 6:19, 7:14, 7:16, 7:21, 7:24, 8:23, 9:1, 9:3, 9:14, 12:1, 14:25, 17:4
**diversion** [2] - 13:8, 22:21
**documents** [1] - 11:4
**done** [1] - 14:13
**Dorritos** [2] - 18:3, 18:8
**doubt** [1] - 10:2
**down** [2] - 5:23, 19:16

**dozens** [2] - 17:25, 18:2
**draw** [2] - 4:10, 28:3
**due** [1] - 28:7
**DUNN** [1] - 2:10
**DZ** [1] - 10:10

### E

**early** [1] - 6:1
**earn** [1] - 26:16
**econometrics** [1] - 25:9
**effect** [1] - 13:9
**eight** [2] - 16:13, 19:7
**either** [2] - 21:2, 27:7
**elaborate** [1] - 12:5
**element** [4] - 13:12, 17:15, 21:15, 27:7
**elements** [3] - 4:9, 14:10, 14:13
**EMBARCADERO** [1] - 2:4
**emphasize** [1] - 22:23
**emphasizes** [1] - 24:22
**en** [1] - 25:7
**Energy** [2] - 17:22, 17:24
**Enterprises** [1] - 3:6
**ENTERPRISES** [2] - 1:4, 2:3
**entire** [1] - 7:22
**equal** [1] - 23:22
**escaped** [1] - 13:13
**essentially** [1] - 6:21
**Essentials** [3] - 17:22, 22:25, 23:12
**establish** [1] - 9:8
**established** [5] - 10:1, 26:4, 26:5, 26:7, 27:9
**establishes** [1] - 9:12
**ET** [2] - 1:10, 2:10
**evaluate** [1] - 25:3
**event** [1] - 20:2
**events** [1] - 12:18
**everywhere** [1] - 22:14
**evidence** [3] - 13:23, 24:18
**evidentiary** [1] - 10:14
**evidently** [1] - 7:20
**exactly** [1] - 15:22
**example** [9] - 3:24, 5:5, 6:7, 6:8, 20:3, 20:18, 20:22, 26:13, 27:19
**examples** [1] - 17:1
**excellent** [1] - 18:13
**except** [1] - 4:2
**exception** [8] - 11:11, 11:19, 11:21, 12:4, 15:1, 15:5, 15:7, 15:24
**exceptional** [1] - 11:14
**exceptionally** [1] - 11:10
**excerpt** [1] - 16:14
**excerpted** [1] - 18:25
**excerpts** [1] - 15:12
**exclude** [1] - 24:6
**excuse** [3] - 12:6, 17:7, 18:12
**expect** [1] - 4:12
**experts** [1] - 25:9
**explain** [2] - 14:10, 15:5

**exponentially** [1] - 19:4
**extended** [1] - 22:2
**extent** [4] - 5:8, 5:14, 7:14, 20:4
**Eyes** [2] - 17:21, 18:16

**F**

**face** [1] - 15:3
**fact** [8] - 5:17, 10:10, 12:4, 18:6, 21:8, 24:16, 26:24, 27:19
**factored** [1] - 17:10
**factors** [2] - 9:9, 26:3
**facts** [3] - 8:4, 10:17, 24:16
**factual** [2] - 10:19, 21:22
**fail** [3] - 22:24, 23:1, 23:20
**failed** [1] - 23:23
**fairly** [1] - 18:24
**fall** [1] - 24:3
**Fall** [1] - 10:5
**falls** [1] - 12:4
**famous** [1] - 12:12
**fantastic** [1] - 14:14
**far** [3] - 19:21, 25:21, 26:17
**fashioned** [1] - 24:5
**favored** [10] - 5:7, 9:5, 9:24, 15:4, 18:17, 18:22, 19:7, 19:13, 23:18, 27:3
**federal** [2] - 12:15, 12:16
**FEE** [1] - 29:2
**FEES** [1] - 29:2
**few** [2] - 16:25, 20:6
**figure** [1] - 19:2
**filed** [1] - 12:23
**filing** [1] - 11:3
**final** [1] - 10:21
**finally** [1] - 27:16
**fine** [1] - 14:21
**first** [4] - 3:21, 18:21, 21:15, 21:23
**five** [3] - 18:12, 22:18, 22:19
**flip** [1] - 14:20
**FLOOR** [1] - 2:12
**focused** [1] - 11:18
**follow** [2] - 25:25, 27:21
**follow-on** [2] - 25:25, 27:21
**FOR** [1] - 29:2
**FOREGOING** [1] - 28:24
**forgetting** [2] - 7:22, 7:23
**formalized** [1] - 16:11
**forth** [3] - 6:9, 7:13, 26:15
**four** [2] - 25:4, 25:5
**FOURTH** [1] - 1:24
**FRANCISCO** [1] - 2:5
**free** [1] - 13:14
**frequently** [1] - 21:9
**Friot** [1] - 4:1
**Friot-Lay** [1] - 4:1
**Frito** [21] - 4:19, 4:21, 5:6, 5:20, 5:22, 5:23, 6:13, 7:9, 8:5, 8:20, 8:24, 10:3, 11:4, 23:6, 23:7, 23:8, 26:6, 26:13, 26:18, 27:17

**Frito-Lay** [20] - 4:19, 4:21, 5:6, 5:20, 5:22, 5:23, 6:13, 7:9, 8:5, 8:20, 8:24, 11:4, 23:6, 23:7, 23:8, 26:6, 26:13, 26:18, 27:17
**front** [1] - 8:4
**FTC** [1] - 26:23
**full** [2] - 8:3, 26:22
**funding** [1] - 4:20

**G**

**Gaw** [1] - 3:10
**GAW** [2] - 2:3, 2:4
**general** [2] - 9:9, 15:1
**Genesee** [2] - 4:3, 20:17
**geographic** [1] - 21:17
**geographical** [1] - 9:10
**get-out-of-jail-free** [1] - 13:14
**GIBSON** [1] - 2:10
**given** [3] - 11:1, 12:2, 21:3
**Gold** [3] - 7:10, 11:24, 15:23
**goods** [1] - 9:11
**governs** [1] - 6:10
**grade** [1] - 17:18
**GRAND** [1] - 2:11
**grant** [1] - 10:21
**granted** [4] - 3:23, 4:3, 20:8, 21:6
**greatly** [1] - 27:21
**grocer** [1] - 19:11
**groceries** [7] - 4:16, 4:18, 6:3, 11:5, 16:15, 23:10, 26:18
**Grocers** [1] - 7:23
**grossly** [2] - 4:18, 6:8
**group** [1] - 15:4
**GUILFORD** [1] - 1:3

**H**

**hand** [1] - 6:3
**happy** [3] - 12:5, 14:7, 14:11
**hard** [1] - 7:5
**hear** [2] - 11:6, 25:11
**HEARING** [1] - 1:17
**hearing** [2] - 23:24, 24:15
**held** [2] - 9:8, 26:1
**HEREBY** [1] - 28:24
**hesitation** [1] - 8:2
**high** [2] - 11:11, 23:17
**higher** [4] - 4:15, 8:10, 10:8, 23:8
**hit** [1] - 21:12
**holding** [1] - 8:20
**holds** [1] - 9:7
**Honor** [41] - 3:12, 3:20, 6:23, 7:13, 8:1, 8:4, 10:13, 11:8, 11:15, 12:7, 13:6, 13:23, 14:2, 14:7, 14:12, 14:24, 15:9, 15:12, 16:25, 17:17, 18:5, 19:8, 19:20, 20:2, 20:11, 20:16, 20:19, 21:1, 21:11, 22:9, 22:22, 23:5, 24:11, 24:14, 24:16, 24:20, 24:25, 25:13, 27:16, 28:8, 28:10

**Honor's** [1] - 8:2
**HONORABLE** [1] - 1:3
**hundred** [1] - 12:8
**hundreds** [4] - 18:1, 18:2, 19:1, 19:13
**hypothesized** [1] - 10:19

**I**

**idea** [1] - 24:16
**identical** [2] - 4:15, 5:24
**illustration** [1] - 18:13
**imagine** [1] - 19:17
**important** [1] - 12:21
**importantly** [1] - 22:8
**imposes** [1] - 6:19
**impossible** [1] - 22:15
**improper** [1] - 25:12
**imputed** [1] - 14:16
**IN** [4] - 2:3, 2:9, 28:25, 29:3
**inaccurate** [1] - 24:25
**Inc** [2] - 3:6
**INC** [4] - 1:4, 1:10, 2:3, 2:10
**including** [1] - 11:23
**increasing** [1] - 12:15
**independent** [1] - 14:2
**independents** [1] - 9:25
**individual** [6] - 5:15, 6:24, 10:12, 13:22, 14:4, 21:10
**individualistic** [1] - 13:24
**individualized** [5] - 5:14, 8:21, 9:5, 24:23, 26:1
**indulge** [1] - 14:12
**indulgence** [1] - 18:11
**infer** [2] - 22:16, 22:19
**inference** [6] - 9:20, 10:1, 10:3, 21:18, 22:4
**inferences** [1] - 10:11
**inherently** [1] - 13:24
**initial** [1] - 9:17
**injure** [2] - 24:7, 27:10
**injury** [17] - 8:21, 9:15, 10:8, 13:6, 13:9, 13:11, 13:19, 21:14, 21:16, 21:24, 21:25, 22:9, 26:21, 27:1, 27:7, 27:12
**inquiry** [1] - 6:14
**inscrutable** [2] - 8:17, 19:2
**insisted** [1] - 13:4
**instance** [4] - 16:1, 17:1, 17:20, 22:5
**instruction** [2] - 17:2, 17:6
**instructions** [1] - 17:5
**intend** [1] - 3:18
**intensely** [1] - 21:22
**intent** [1] - 11:23
**involved** [1] - 7:15
**IS** [1] - 28:24
**issue** [23] - 4:17, 5:18, 6:12, 7:12, 7:15, 8:22, 9:6, 13:6, 16:10, 17:18, 18:1, 18:5, 18:10, 18:18, 22:24, 23:20, 23:21, 24:21, 25:13, 27:18, 27:21, 27:25, 28:6

**issues** [10] - 3:25, 4:7, 4:8, 6:21, 6:24, 7:18, 10:12, 17:19, 27:17, 27:25
**itself** [1] - 5:20

**J**

**JAGANNATHAN** [1] - 2:9
**jail** [1] - 13:14
**JUDGE** [1] - 1:3
**Judge** [8] - 15:19, 16:22, 17:3, 17:20, 18:15, 23:11, 26:7
**judges** [1] - 23:19
**judging** [1] - 19:3
**JUDICIAL** [1] - 29:4
**jury** [4] - 17:2, 17:3, 17:5, 19:2
**justified** [1] - 5:4

**K**

**Kansas** [2] - 6:15, 25:17
**kids** [1] - 18:3
**kind** [1] - 21:20

**L**

**L.A** [2] - 19:10, 19:11
**lack** [1] - 3:25
**laden** [1] - 6:5
**lagging** [1] - 22:6
**laid** [1] - 4:5
**large** [3] - 5:3, 5:4, 5:5
**larger** [1] - 4:19
**last** [5] - 17:13, 19:19, 19:23, 22:22, 27:6
**law** [3] - 21:2, 21:4, 24:22
**lay** [1] - 15:14
**Lay** [21] - 4:1, 4:19, 4:21, 5:6, 5:20, 5:22, 5:23, 6:13, 7:9, 8:5, 8:20, 8:24, 11:4, 23:6, 23:7, 23:8, 26:6, 26:13, 26:18, 27:17
**Lays** [1] - 18:8
**learned** [1] - 6:7
**learning** [1] - 5:25
**least** [1] - 26:18
**leave** [1] - 10:22
**left** [1] - 19:21
**legal** [1] - 10:11
**length** [2] - 17:12, 17:13
**LESS** [1] - 29:2
**liability** [4] - 22:10, 23:2, 27:9, 27:23
**liable** [1] - 27:4
**likelihood** [1] - 12:17
**likely** [1] - 4:8
**likewise** [1] - 28:17
**limited** [1] - 11:1
**linearly** [1] - 19:4
**list** [1] - 16:16
**lists** [6] - 11:22, 15:2, 15:7, 15:10, 15:22
**litigation** [1] - 12:15
**Living** [3] - 17:21, 22:25, 23:12

**LLP** [2] - 2:4, 2:11
**load** [1] - 12:16
**location** [2] - 21:23
**locations** [1] - 18:18
**logic** [1] - 12:24
**logistically** [2] - 17:5, 19:18
**Lomb** [1] - 20:13
**look** [5] - 8:13, 16:1, 20:19, 25:14, 25:15
**looking** [2] - 9:19, 15:11
**looks** [2] - 28:3
**LOS** [1] - 2:12
**lost** [2] - 13:20, 22:15
**low** [1] - 16:7
**lower** [1] - 5:3

**M**

**Mad** [7] - 14:23, 15:19, 22:24, 25:14, 25:15, 25:20
**maintains** [1] - 15:2
**manufacture** [1] - 20:1
**manufacturing** [1] - 5:6
**MARK** [1] - 2:3
**Mark** [1] - 3:9
**market** [3] - 11:24, 17:12, 17:13
**marry** [1] - 14:9
**Marshall** [3] - 17:4, 17:20, 18:15
**mass** [1] - 22:15
**matrixing** [1] - 19:13
**MATTER** [1] - 29:1
**mean** [4] - 8:19, 11:2, 17:10, 28:2
**member** [1] - 26:14
**members** [6] - 4:17, 5:21, 6:10, 8:6, 24:7, 27:22
**mention** [2] - 7:10, 7:20
**mentioned** [6] - 8:12, 19:14, 20:17, 22:1, 24:20, 25:25
**mentioning** [1] - 27:15
**merchandising** [1] - 6:4
**metro** [1] - 23:18
**middle** [1] - 19:22
**might** [3] - 10:11, 17:18, 24:8
**Miller's** [1] - 26:7
**millions** [1] - 13:1
**Miriam** [1] - 29:6
**MIRIAM** [2] - 1:23, 29:7
**misperceived** [1] - 6:19
**modern** [1] - 12:15
**moment** [1] - 23:3
**MONDAY** [2] - 1:19, 3:1
**monopolize** [1] - 11:23
**Morton** [5] - 9:19, 9:20, 9:25, 10:3, 22:1
**most** [2] - 5:15, 22:8
**MOTION** [1] - 1:17
**motion** [18] - 3:15, 7:4, 8:9, 10:21, 11:16, 12:7, 12:20, 12:23, 15:11, 20:5, 20:9, 20:10, 20:21, 21:6, 24:12, 24:17, 28:6, 28:14
**motions** [1] - 3:22

**motivated** [1] - 12:6
**moving** [1] - 3:17
**MR** [25] - 3:9, 3:12, 3:20, 4:14, 4:23, 4:25, 5:13, 7:9, 8:16, 9:17, 10:25, 11:8, 11:15, 14:19, 14:24, 15:9, 20:11, 20:16, 24:11, 24:14, 24:25, 28:8, 28:10, 28:16, 28:17
**multi** [1] - 17:10
**multi-factored** [1] - 17:10
**multiple** [2] - 18:18, 18:22
**must** [1] - 9:9

**N**

**N.D** [1] - 23:12
**name** [1] - 7:22
**named** [1] - 19:9
**narrow** [1] - 11:23
**necessarily** [1] - 24:6
**necessary** [2] - 13:12, 14:3
**need** [7] - 13:7, 21:14, 25:3, 26:10, 26:12, 26:25, 27:12
**negotiate** [1] - 16:15
**negotiated** [1] - 16:20
**net** [1] - 23:8
**never** [3] - 11:17, 11:19, 11:25
**next** [3] - 16:13, 17:17, 19:20
**nine** [1] - 18:12
**Ninth** [15] - 6:16, 6:21, 7:17, 7:19, 8:14, 8:16, 8:24, 9:12, 10:9, 18:25, 25:8, 25:18, 25:23, 26:2, 26:4
**non** [1] - 12:23
**non-class** [1] - 12:23
**none** [3] - 6:24, 21:7, 27:23
**nothing** [4] - 8:22, 22:7, 22:18
**notice** [2] - 7:18, 8:18
**noticed** [1] - 23:24
**number** [3] - 14:4, 15:16, 16:20

**O**

**obtain** [1] - 27:12
**OF** [7] - 1:2, 1:16, 2:3, 2:9, 28:25, 29:4
**offered** [2] - 16:2, 16:16
**offers** [1] - 26:18
**OFFICIAL** [2] - 1:23, 29:7
**often** [3] - 21:3, 21:7, 21:8
**old** [4] - 4:1, 6:13, 7:17, 7:24
**Olean** [1] - 25:7
**ONE** [1] - 2:4
**one** [36] - 4:3, 7:21, 8:25, 9:2, 9:3, 10:10, 11:19, 13:15, 13:21, 14:8, 14:10, 14:16, 15:1, 15:13, 15:23, 15:25, 17:15, 17:18, 17:21, 17:24, 17:25, 18:2, 18:16, 18:17, 18:19, 18:22, 19:9, 19:13, 19:15, 19:22, 19:23, 23:9, 24:6, 25:11, 26:21
**operating** [1] - 9:12
**operative** [1] - 16:2
**opinion** [4] - 8:23, 8:24, 9:8, 25:15

opportunity [1] - 24:13
opposed [1] - 20:9
opposing [5] - 3:17, 13:25, 17:3, 20:21, 21:9
opposition [1] - 4:5
order [2] - 6:6, 9:23
otherwise [1] - 11:20
overwhelming [1] - 21:4
own [1] - 16:18

**P**

p.m [1] - 28:19
P.M [1] - 3:1
page [1] - 19:20
pages [2] - 25:14, 25:15
paired [2] - 18:24, 19:15
pairs [1] - 17:15
papers [1] - 3:17
paradigm [1] - 25:2
paragraph [3] - 16:1, 16:14, 23:4
paragraphs [1] - 15:13
part [1] - 22:10
particular [3] - 10:6, 12:13, 16:17
parties [2] - 11:13, 12:17
partner [1] - 3:10
parts [1] - 11:2
pass [1] - 14:11
passage [1] - 12:13
Patman [1] - 13:17
Pattern [2] - 26:24, 27:15
pay [2] - 4:15, 4:16
payments [2] - 26:16, 26:17
Payne [2] - 27:9, 27:11
people [2] - 13:7, 22:18
Pepsi [2] - 13:8, 22:4
PEPSICO [2] - 1:10, 2:10
PepsiCo [1] - 3:6
percent [6] - 5:9, 9:21, 9:24, 12:8, 16:6, 16:7
perhaps [1] - 8:5
period [1] - 22:2
persuasive [1] - 25:21
phone [1] - 3:15
picture [3] - 19:21, 20:1, 28:3
PLAINTIFF [1] - 2:3
plaintiff [9] - 3:8, 13:5, 13:10, 14:16, 19:5, 19:23, 24:3, 26:16, 26:25
plaintiff's [2] - 16:5, 24:4
plaintiff-specific [1] - 13:5
plaintiffs [20] - 3:9, 3:19, 5:21, 8:10, 12:18, 13:2, 13:3, 13:4, 13:13, 13:14, 15:6, 15:21, 16:8, 16:16, 18:16, 18:22, 19:6, 19:10, 24:13, 25:5
Plaintiffs [1] - 1:6
plaintiffs' [2] - 11:9, 16:8
play [1] - 11:15
pleading [1] - 12:12
pleadings [2] - 10:16, 20:14

POE [17] - 2:3, 2:4, 3:9, 3:20, 4:14, 4:23, 4:25, 5:13, 7:9, 8:16, 9:17, 10:25, 11:8, 24:14, 24:25, 28:10, 28:17
Poe [5] - 3:9, 20:6, 20:17, 21:13, 21:25
point [10] - 5:19, 8:25, 9:18, 11:1, 11:9, 18:11, 19:18, 22:22, 22:23, 25:21
points [2] - 3:21, 26:5
position [1] - 19:11
possibly [1] - 19:18
potentially [1] - 16:21
precisely [1] - 7:11
predate [1] - 6:15
predictions [1] - 25:10
predominance [5] - 3:24, 6:12, 6:14, 7:19, 10:12
predominate [3] - 4:7, 4:8, 6:21
prefer [1] - 26:11
premature [1] - 7:4
preparing [1] - 23:24
present [1] - 14:21
PRESIDING [1] - 1:3
price [30] - 4:15, 5:1, 5:2, 5:3, 5:8, 5:9, 8:6, 8:10, 9:21, 9:24, 10:8, 11:22, 13:18, 13:19, 14:22, 15:2, 15:17, 15:22, 15:25, 16:2, 16:7, 16:16, 16:19, 22:2, 22:7, 22:12, 22:13, 22:14, 23:17, 27:10
prices [5] - 9:18, 15:22, 16:15, 23:8, 27:20
pricing [2] - 13:9, 15:15
prime [1] - 20:3
private [1] - 13:10
problem [3] - 23:22, 23:25, 24:9
proceed [3] - 11:12, 12:23, 17:6
proceedings [1] - 28:19
PROCEEDINGS [2] - 1:16, 28:25
produced [1] - 9:22
producing [1] - 13:1
product [6] - 17:11, 17:21, 17:24, 17:25, 18:16, 18:23
products [9] - 15:4, 17:8, 17:9, 18:1, 18:2, 18:9, 19:14, 19:15
proffer [1] - 25:9
prohibit [1] - 5:16
prohibited [1] - 5:1
prohibition [1] - 27:1
promise [1] - 22:22
promotional [6] - 4:19, 6:5, 26:15, 26:16, 26:17, 27:2
proof [2] - 26:1, 27:10
proportional [2] - 4:25, 27:3
proposal [1] - 10:23
propose [1] - 10:23
prospective [1] - 26:15
protective [2] - 6:6, 9:23
prove [4] - 9:15, 13:6, 18:20, 27:22
proves [1] - 11:21
provide [1] - 4:22
provided [1] - 26:19

provides [1] - 26:13
proximity [3] - 9:10, 21:17, 21:21
pull [1] - 23:3
purchased [3] - 9:10, 9:11, 23:7
purchaser [3] - 10:9, 27:3, 27:4
purchasers [4] - 5:7, 9:4, 9:5, 15:16
put [2] - 12:11, 23:23

**Q**

quality [1] - 17:18
quantified [1] - 5:10
quantity [1] - 5:5
questions [4] - 3:18, 4:11, 21:12, 21:22
quickly [3] - 12:25, 18:11, 24:13
quite [1] - 21:9

**R**

raised [2] - 6:23, 25:13
RANDOLPH [1] - 2:3
Randolph [1] - 3:10
range [1] - 16:3
rare [1] - 20:4
rather [2] - 8:4, 8:22
read [2] - 3:16, 12:10
reading [1] - 8:23
reason [4] - 11:16, 13:20, 22:15, 26:9
reasonable [1] - 12:17
reasonably [3] - 4:25, 17:7, 27:3
reasons [1] - 15:23
rebates [2] - 4:19, 16:3
rebut [3] - 10:16, 10:17, 22:4
rebuttable [2] - 22:3, 26:6
rebuttal [4] - 10:14, 10:19, 21:18, 26:6
rebuttals [1] - 10:11
rebutted [4] - 10:4, 10:5, 10:7, 26:9
receive [1] - 4:18
received [2] - 11:2, 23:16
receives [1] - 6:8
recent [1] - 17:2
recitation [1] - 24:1
recognized [1] - 15:1
record [2] - 3:8
RECORDED [1] - 28:25
REDUCTION [1] - 29:3
referred [1] - 6:20
referring [2] - 11:4, 15:19
refers [1] - 25:1
regardless [1] - 21:23
region [1] - 23:18
REGULATIONS [1] - 29:4
related [3] - 12:19, 21:24, 23:22
relating [1] - 7:18
remember [1] - 18:19
reminded [1] - 28:12
repeated [1] - 26:24
reply [1] - 3:17
REPORTER [2] - 1:23, 29:7

**REPORTER'S** [1] - 1:16
**request** [1] - 11:3
**require** [1] - 4:21
**required** [1] - 5:2
**requirement** [5] - 6:12, 6:20, 6:22, 22:11, 25:17
**requirements** [1] - 23:2
**requires** [1] - 22:1
**resale** [1] - 23:7
**reschedule** [1] - 28:13
**Reserve** [1] - 10:10
**resolution** [1] - 4:12
**resolved** [1] - 8:2
**respect** [1] - 14:15
**respectfully** [1] - 8:1
**respond** [1] - 24:13
**result** [2] - 12:2, 28:4
**retail** [1] - 23:5
**retailers** [2] - 13:16, 14:4
**reveal** [3] - 3:24, 4:13, 4:14
**reversal** [1] - 6:18
**reversed** [2] - 6:16, 8:18
**Rhino** [7] - 14:23, 15:19, 22:24, 25:14, 25:15, 25:20
**Robinson** [1] - 13:17
**Robinson-Patman** [1] - 13:17
**roughly** [1] - 19:7
**row** [2] - 18:21, 19:6
**Royals** [2] - 6:16, 25:18
**RPA** [24] - 4:21, 7:2, 7:15, 7:20, 7:24, 8:15, 8:20, 11:18, 11:25, 12:5, 13:21, 14:15, 15:24, 17:3, 18:2, 20:12, 20:13, 20:22, 20:23, 21:6, 22:11, 24:22
**Rule** [1] - 8:9
**rule** [3] - 3:18, 11:22, 15:1
**ruling** [1] - 28:7

## S

**safe** [3] - 22:24, 23:1, 23:20
**Safeways** [1] - 19:8
**sale** [2] - 25:4, 25:5
**sales** [15] - 13:20, 17:7, 17:12, 17:14, 17:15, 18:7, 18:24, 19:1, 19:16, 21:17, 21:22, 22:6, 22:15, 22:21, 24:22
**Salt** [5] - 9:19, 9:20, 9:25, 10:3, 22:1
**SAN** [1] - 2:5
**Santa** [1] - 16:18
**SANTA** [3] - 1:18, 1:24, 3:1
**savings** [1] - 5:6
**scaled** [2] - 13:24, 14:11
**scheduling** [1] - 28:12
**Schiavelli** [3] - 15:19, 16:23, 23:11
**seal** [1] - 11:3
**seasonal** [1] - 17:11
**second** [3] - 3:25, 19:6, 21:24
**secondly** [1] - 4:9
**Section** [1] - 27:12
**see** [6] - 7:5, 10:13, 18:24, 27:5, 27:8,

28:2
**sells** [1] - 17:19
**sending** [1] - 12:16
**Senne** [2] - 6:15, 25:17
**sense** [3] - 22:21, 28:13, 28:16
**sentiment** [1] - 12:24
**separate** [2] - 5:21, 16:4
**separately** [1] - 19:16
**SEPTEMBER** [2] - 1:19, 3:1
**set** [3] - 6:9, 24:16, 26:15
**seven** [4] - 15:14, 15:15, 18:15, 18:21
**Seventh** [1] - 7:21
**show** [16] - 4:17, 8:7, 8:8, 13:8, 13:9, 13:11, 14:1, 17:5, 18:23, 19:6, 19:19, 19:20, 22:13, 22:14
**showed** [1] - 14:15
**showing** [2] - 21:21, 27:1
**shown** [2] - 9:10, 27:12
**shows** [1] - 18:14
**side** [4] - 13:22, 16:5, 16:8, 25:9
**sides** [2] - 3:18, 28:5
**similar** [1] - 7:8
**simple** [1] - 18:24
**Simplicity** [1] - 27:14
**simplicity** [1] - 26:24
**simply** [2] - 5:8, 21:2
**single** [6] - 6:9, 13:21, 16:7, 19:12, 20:20, 27:18
**situation** [2] - 7:8, 18:24
**six** [1] - 9:21
**slide** [9] - 15:12, 15:14, 16:13, 17:1, 17:17, 18:12, 19:19
**slides** [2] - 14:7, 14:18
**small** [3] - 5:2, 13:16, 14:4
**snack** [2] - 4:16, 23:7
**sold** [2] - 15:3, 17:9
**sole** [1] - 16:19
**solely** [1] - 20:13
**solved** [1] - 21:16
**someone** [1] - 3:14
**somewhere** [2] - 18:18, 23:18
**sorry** [2] - 8:12, 15:18
**sort** [2] - 8:22, 21:17
**SOUTH** [1] - 2:11
**speaking** [1] - 5:25
**specific** [3] - 13:5, 15:17, 24:22
**SRINIVASAN** [11] - 2:9, 3:12, 11:15, 14:19, 14:24, 15:9, 20:11, 20:16, 24:11, 28:8, 28:16
**Srinivasan** [1] - 3:13
**stage** [7] - 4:3, 4:4, 7:4, 8:3, 8:11, 10:15, 24:19
**stages** [1] - 6:1
**staggering** [1] - 12:9
**standard** [2] - 11:10, 12:12
**standing** [1] - 22:10
**stands** [1] - 5:23
**start** [2] - 3:19, 18:7
**started** [1] - 26:11

**starting** [1] - 9:17
**state** [4] - 3:7, 7:22, 24:4, 24:8
**STATES** [2] - 1:1, 29:4
**STENOGRAPHICALLY** [1] - 28:25
**step** [3] - 21:16, 21:24
**store** [16] - 5:11, 14:4, 16:4, 16:21, 17:14, 18:19, 19:10, 19:13, 22:5, 22:11, 25:2
**store-by-store** [1] - 5:11
**stores** [1] - 18:22
**story** [1] - 22:6
**streamline** [1] - 27:21
**street** [1] - 5:23
**STREET** [1] - 1:24
**strike** [10] - 3:16, 3:22, 7:5, 11:16, 15:11, 20:5, 20:9, 20:22, 21:6, 28:14
**Strike** [3] - 7:10, 11:24, 15:23
**striking** [2] - 11:10, 27:24
**struck** [1] - 20:13
**struggling** [1] - 7:1
**stuff** [2] - 4:20, 9:22
**subject** [1] - 13:16
**submission** [1] - 28:6
**submit** [2] - 21:1, 21:20
**substantial** [1] - 22:2
**sufficient** [1] - 25:10
**suggest** [3] - 6:14, 8:1, 28:1
**suggested** [2] - 26:6, 26:8
**suggests** [1] - 10:3
**SUITE** [2] - 1:24, 2:4
**supplier** [1] - 27:2
**support** [3] - 4:19, 6:5, 27:2
**suppose** [1] - 11:2
**supposed** [2] - 6:24, 19:25
**Supreme** [3] - 10:4, 25:1, 26:23

## T

**table** [1] - 18:14
**talks** [1] - 6:13
**tens** [1] - 14:5
**Tenth** [1] - 7:10
**terms** [6] - 4:19, 15:4, 17:10, 19:22, 20:12, 23:25
**THAT** [1] - 28:24
**THE** [33] - 2:3, 2:9, 3:5, 3:11, 3:14, 4:11, 4:21, 4:24, 5:11, 7:1, 8:12, 9:15, 10:20, 11:6, 11:9, 14:18, 14:21, 14:25, 20:7, 20:15, 24:10, 24:12, 24:21, 28:5, 28:9, 28:11, 28:18, 28:24, 28:25, 29:1, 29:3, 29:4
**thereof** [1] - 3:25
**they've** [1] - 27:23
**THIS** [1] - 29:2
**thousands** [3] - 14:5, 19:1
**three** [4] - 9:9, 17:1, 24:6, 26:3
**today** [2] - 24:15, 28:13
**took** [1] - 18:23
**transactions** [1] - 24:23

**TRANSCRIPT** [3] - 1:16, 28:25, 29:2
**treated** [1] - 6:2
**treats** [1] - 5:20
**trial** [3] - 17:3, 18:15, 18:23
**tried** [2] - 13:22, 19:20
**TRUE** [1] - 28:24
**true** [4] - 11:24, 12:24, 24:17, 27:13
**Truett** [2] - 27:9, 27:11
**truly** [1] - 11:19
**trying** [4] - 8:13, 18:1, 18:20, 19:5
**turn** [2] - 16:25, 18:12
**two** [21] - 7:9, 9:8, 11:22, 13:2, 13:4, 15:2, 15:7, 15:10, 15:22, 16:7, 17:7, 17:8, 17:13, 17:15, 19:5, 19:6, 19:23, 25:9, 26:5
**two-plaintiff** [2] - 19:5, 19:23
**Twombley** [2] - 12:12, 12:14
**type** [1] - 13:23
**typical** [1] - 12:5
**typically** [1] - 3:23

## U

**U.S** [14] - 1:23, 9:6, 9:7, 12:14, 18:14, 18:21, 19:21, 21:13, 21:14, 26:2, 26:7, 26:24, 27:5, 27:14
**UDS** [7] - 5:22, 16:9, 16:11, 23:6, 23:14, 23:15
**under** [12] - 4:25, 6:22, 7:7, 11:3, 16:8, 17:19, 20:9, 25:16, 26:2, 27:12, 27:17, 28:6
**underline** [1] - 24:15
**underscores** [1] - 20:2
**uniform** [2] - 26:13, 26:14
**UNITED** [2] - 1:1, 29:4
**unless** [2] - 5:3, 11:22
**up** [11] - 5:23, 7:16, 7:17, 10:11, 16:5, 16:6, 18:11, 22:8, 22:24, 23:3

## V

**valid** [1] - 25:23
**vanco** [1] - 10:5
**vary** [2] - 17:14, 21:22
**VELIZBAIRDMIRIAM@GMAIL.COM** [1] - 1:25
**versus** [1] - 12:12
**view** [1] - 19:8
**violation** [1] - 14:15
**violations** [1] - 13:17
**virtually** [1] - 9:1
**Vista** [1] - 16:18
**visually** [1] - 19:21
**volume** [1] - 5:9
**Volvo** [1] - 25:1
**Vons** [2] - 16:17, 19:8
**Vs** [1] - 1:8
**vs** [1] - 6:15

## W

**wait** [3] - 10:13, 20:25, 28:1
**walk** [2] - 14:8, 14:12
**walked** [1] - 21:20
**ways** [2] - 11:21, 12:5
**wealth** [1] - 3:21
**weight** [1] - 21:4
**WEST** [1] - 1:24
**Wholesale** [12] - 9:6, 9:7, 18:14, 18:21, 19:22, 21:13, 21:14, 26:2, 26:8, 26:25, 27:5, 27:14
**Wholesales** [1] - 7:23
**willing** [1] - 14:12
**wind** [1] - 22:8
**wish** [1] - 26:22
**WITH** [1] - 29:3
**word** [1] - 25:11
**words** [2] - 13:15, 15:21
**wrap** [1] - 18:11
**written** [1] - 28:7

## Y

**year** [1] - 20:15
**years** [2] - 25:4, 25:6