UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS [30]**

Before the Court is Defendant's Motion to Strike Class Allegations. ECF 30. The Court read and considered the moving, opposing, and reply papers and held a hearing on September 22, 2025. ECF 45. For the reasons stated herein, the Court **GRANTS** the Motion with leave to amend the First Amended Complaint.

I.  **BACKGROUND**

On February 17, 2025, Plaintiffs Alqosh Enterprises, Inc., doing business as Whiskey Well ("Whiskey Well"), and NMRM, Inc., doing business as Sunset Market & Liquor ("Sunset Market") (collectively, "Plaintiffs"), filed a putative class action against PepsiCo, Inc. and Frito-Lay North America, Inc. (collectively, "Defendants" or "Frito-Lay"). ECF 1. On April 7, 2025, Defendants filed a Motion to Dismiss the Complaint and a Motion to Strike Class Allegations. ECF 23, 24. On April 21, 2025, Plaintiffs filed the operative First Amended Complaint ("FAC"). ECF 26. In light of the FAC, the Court denied Defendants' Motion to Dismiss and Motion to Strike as moot. ECF 29.

In the FAC, Plaintiffs generally allege that Defendants, suppliers of popular brands of snack chips, have charged independent convenience stores far higher net prices for snack chips than they charge chain grocery stores in violation of Sections 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), and California's Unfair Practices Act, Cal. Bus. & Prof. Code § 17045, and Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. ECF 26. The FAC identifies several discrete instances of this alleged price discrimination. *Id.* ¶¶ 29–37. For example, in January 2025, Frito-Lay purportedly sold 8.5-ounce bags of Ruffles potato chips to Sunset Market for $4.41 per bag, whereas it sold the same item to Albertson's, a chain grocery store, in nearby El Cajon, California for $2.49 (43% below Sunset Market's acquisition cost). *Id.* ¶ 30. Plaintiffs further allege that Frito-Lay contracted with chain groceries to make promotional payments that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

it does not offer on proportionally equal terms to Plaintiffs in violation of Section 2(d) of the Robinson-Patman Act, 15 U.S.C. § 15(d). *Id.* ¶ 58. For instance, on April 15, 2025, the Albertsons located 1.5 miles away from Sunset Market featured an "endcap" (space at the end of an aisle) for Lays brand potato chips and other Frito-Lay products, for which Frito-Lay made a monetary payment to Albertsons. *Id.* That same day, Sunset Market also featured an endcap with Frito-Lay products, but it did not receive any payment from Frito-Lay for that favorable placement. *Id.*

Plaintiffs seek to represent the following class:

All California retail businesses that Frito Lay categorizes in its UDS channel that purchased Frito-Lay snack chips for re-sale from Frito-Lay at a discriminatorily higher net price than Frito Lay contemporaneously charged to one or more competing Chain Groceries during the applicable limitations period.

*Id.* ¶ 61. Plaintiffs further define "UDS" customers as all "convenience stores and small grocery stores to whom Frito-Lay makes direct sales." *Id.* ¶ 31. Plaintiffs seek to certify a class under subsections (b)(2) and (b)(3) of Federal Rule of Civil Procedure 23. *Id.* ¶¶ 66, 70. Plaintiffs seek, *inter alia*, compensatory and treble damages, restitution, and "permanent injunctive relief against the price and promotional discrimination alleged herein." *Id.* at 27–28.

On May 5, 2025, Defendants filed the instant Motion to Strike. ECF 30. Plaintiffs oppose. ECF 33. Defendants filed a Reply. ECF 37. Defendants did not renew their Motion to Dismiss and have yet to file an Answer.

II.     **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those prior to trial[.]" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* 510 U.S. 517 (1994)). In ruling on a motion to strike, the court "takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) (citation omitted). "[L]eave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment." *Id.* "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

"Generally, although it is not *per se* improper for a defendant to move to strike class allegations before the motion for class certification, most courts decline to grant such motions because the shape and form of a class action evolves only through the process of discovery." *Fernandez v. CoreLogic Credco, LLC*, 593 F. Supp. 3d 974, 995 (S.D. Cal. 2022) (citation and alterations omitted); *see also Ott v. Mortg. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1062 (D. Or. 2014) ("[M]otions to strike class allegations are generally disfavored because 'a motion for class certification is a more appropriate vehicle' for testing the validity of class claims.") (quoting *Thorpe v. Abbott Lab., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008)); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted."). "Courts that have stricken class allegations at the pleading stage have recognized that the 'granting of motions to strike class allegations before discovery and in advance of a motion for class certification is rare' and have only done so in rare occasions where the class definition is obviously defective in some way." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d. 1190, 1221 (N.D. Cal. 2014) (quoting *Lyons v. Bank of Am., NA*, No. 11–1232, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011)). In other words, "a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained." *Fernandez*, 593 F. Supp. 3d at 995.

### III. DISCUSSION

"Before certifying a class, the district court must ensure the plaintiffs have made two showings, one under Rule 23(a) and one under Rule 23(b)." *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1232 (9th Cir. 2024) (citation omitted). Under Rule 23(a), the proposed class action must satisfy four prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The district court "must perform a 'rigorous analysis' of these prerequisites, which frequently 'will entail some overlap with the merits of the plaintiff's underlying claim.'" *DZ Reserve*, 96 F.4th at 1232 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

Once the Rule 23(a) prerequisites are met, "the class must fit into at least one of three categories outlined in Rule 23(b)," namely, as is relevant here, subsections (b)(2) and (b)(3). *Id.* (citation omitted). A class may be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Under Rule 23(b)(3), a class may be certified only if the district court "finds

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Defendants argue that Plaintiffs' class definition is "unworkable on its face" because it "would conservatively require *tens of thousands* of individual inquiries" as to each class member that are inherent in Plaintiffs' claims under the Robinson-Patman Act. ECF 30 at 11–19. Plaintiffs respond that Defendants' motion proceeds from the false premise that common issues must predominate in order for a class to be certified under Rule 23(b)(2), and that even if predominance is required, as is the case under Rule 23(b)(3), resolving the individualized issues identified by Defendants are not required to certify a class. ECF 33 at 11–21. Defendants reply that although predominance is not found in the language of Rule 23(b)(2), predominance still must be "self-evident" to certify a Rule 23(b)(2) class. ECF 37 at 7–9.

The Court understands Defendants' argument to be two-fold: (1) that Plaintiffs cannot satisfy the commonality requirement under Rule 23(a)(2), *and* (2) that Plaintiffs cannot satisfy the predominance requirement under Rule 23(b)(3). Because the Court finds that it is clear from the FAC that Plaintiffs' claims cannot possibly satisfy the commonality requirement under Rule 23(a)(2), the Court need not reach the predominance inquiry.[1]

---

[1] The Court agrees with Plaintiffs that Defendants partially misconstrue the inquiry required to certify a class under Rule 23(b)(2). The Ninth Circuit has made clear that "[a]lthough common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under Rule 23(b)(2)." *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 938 (9th Cir. 2019) (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)). At the same time, Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant[.]" *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 360). "When a class seeks an indivisible injunction benefiting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate" because predominance should be "self-evident." *Wal-Mart*, 564 U.S. at 362; *see also Kihn v. Bill Graham Archives LLC*, No. 20-17397, 2022 WL 18935, at *3 (9th Cir. Jan. 3, 2022) ("Rule 23(b)(2)'s inquiry into predominance is less searching not because it is less stringent, but because no inquiry should even be needed."). In other words, the inquiry under Rule 23(b)(2) "does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

Commonality under Rule 23(a)(2) "requires plaintiffs to 'demonstrate that the class members have suffered the same injury,' not merely violations of 'the same provision of law.'" *Parsons*, 754 F.3d at 675 (quoting *Wal-Mart*, 564 U.S. at 350). In other words, the putative class claims "'must depend upon a common contention' such that 'determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Walmart*, 564 U.S. at 350). "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quoting *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008)). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (citation omitted). "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Wal-Mart*, 564 U.S. at 359).

A. **Section 2(a) Claim**

Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, "bars a seller from discriminating in price between competing purchasers of commodities of like grade and quality."[2] *U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126,

---

a finding that all members of the class have suffered identical injuries." *Parsons*, 754 F.3d at 688. Instead, "as the text of the rule makes clear, this inquiry asks only whether 'the party opposing the class has acted or refused to act on grounds that apply generally to the class.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(2)). Although the inquiry under Rule 23(b)(2) is distinct from the predominance inquiry under Rule 23(b)(3), Plaintiffs' allegations, taken as true, do not plausibly satisfy either test because Plaintiffs have not shown that Defendants acted "on grounds that apply generally to the class" or that "questions of law or fact common to the class members predominate over any questions affecting only individual members." *See* Fed. R. Civ. P. 23(b)(2), (b)(3).

[2] "Section 2, 'when originally enacted as part of the Clayton Act in 1914, was born of a desire by Congress to curb the use by financially powerful corporations of localized price-cutting tactics which had gravely impaired the competitive position of other sellers.'" *Volvo Trucks N.A., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 175 (2006) (quoting *FTC v. Anheuser-Busch, Inc.*, 363 U.S. 536, 543 & n.6 (1960)). "Augmenting that provision in 1936 with the Robinson-Patman Act, Congress sought to target the perceived harm to competition occasioned by powerful buyers, rather than sellers; specifically, Congress responded to the advent of large chainstores, enterprises with the clout to obtain lower prices for goods than smaller buyers could demand." *Id.* "In short,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

1134 (9th Cir. 2023), *cert. denied*, 145 S. Ct. 141 (2024). The Supreme Court has described three categories of competitive injury that may give rise to a claim under Section 2(a): primary line, secondary line, and tertiary line. *See Volvo Trucks N.A.*, 546 U.S. at 175. This case falls in the secondary-line category, where "a seller gives one purchaser a more favorable price than another." *U.S. Wholesale*, 89 F.4th at 1134 (quoting *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1187 (9th Cir. 2016)); *see also Volvo*, 546 U.S. at 176 (describing secondary-line cases as those involving "price discrimination that injures competition among the discriminating seller's customers"). "To establish secondary-line discrimination, a plaintiff must show that (1) the challenged sales were made in interstate commerce; (2) the items sold were of like grade and quality; (3) the seller discriminated in price between the disfavored and the favored buyer; and (4) 'the effect of such discrimination may be . . . to injure, destroy, or prevent competition to the advantage of a favored purchaser.'" *Id.* (quoting *Volvo*, 546 U.S. at 176–77).

The FAC alleges that the following questions of law and fact arising from Plaintiffs' Section 2(a) claim are common to the putative class members:

> (a) whether Frito-Lay charged higher net prices to its "UDS" customers than to its Chain Grocery customers; (b) whether Frito-Lay offered payments to the Chain Groceries in connection with their handling, sale, or offering for sale of Frito-Lay snack chips that were disproportional to the payments it offered to Plaintiffs and members of the class; (c) which snack chip products were subject to the discriminatory pricing; (d) whether Frito-Lay attempted to keep its favored pricing to the Chain Groceries secret from Plaintiffs and members of the class; (e) whether the discrimination against Plaintiffs and the class was sufficient to raise the *Morton Salt* inference of harm to competition; and (g) whether Plaintiffs and the class are entitled to damages, restitution and injunctive relief for these violations.

FAC ¶ 65.

The Court makes several overarching observations. The Ninth Circuit has long stressed that "Section 2(a) deals with *specific* sales transactions, and provides that such transactions are unlawful only if [certain] elements are met." *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 677 (9th Cir. 1975) (emphasis added). The transaction-specific nature of Section 2(a) claims is evident from the FAC. In alleging price discrimination, Plaintiffs frequently cite *specific*

---

Congress intended to assure, to the extent reasonably practicable, that business[es] at the same functional level would start on equal competitive footing so far as price is concerned." *F.T.C. v. Sun Oil Co.*, 371 U.S. 505, 520 (1963).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

examples of particular purchases of the same products made contemporaneously by particular disfavored purchasers and their favored competitors at different prices. *See, e.g.*, FAC ¶¶ 30–31, 33–34, 44–46, 49–51, 53. Given the individualized, transaction-specific nature of Robinson-Patman claims, Plaintiffs' list of "common" questions does not in fact contain any "common contention . . . of such a nature that it is capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350. That is, while these questions must be answered as to each putative class member, determination of the truth or falsity of any single issue will not resolve "an issue that is central to the validity of each one of the claims in one stroke." *Id.* To reference the examples identified in the complaint, whether Frito-Lay charged Sunset Market a price 84% higher than the price it charged Albertson for the same bag of Doritos will have no bearing on whether Frito-Lay charged Whiskey Well a price 60% higher than the price it charged a Vons outlet for the same product. FAC ¶¶ 30, 33.

Tellingly, Plaintiffs do not cite a single case of price discrimination under the Robinson-Patman Act that has been certified as a class action. To the contrary, courts have consistently determined that claims under the Robinson-Patman Act are not suitable for class certification because they require individualized proof at every step. *See, e.g., Bel Air Markets v. Foremost Dairies, Inc.*, 55 F.R.D. 538, 541 (N.D. Cal. 1972) (denying class certification because numerous elements require individualized proof); *Kelly v. Gen. Motors Corp.*, 425 F. Supp. 13, 20 (E.D. Penn. 1975) (describing price discrimination claims under Robinson-Patman Act as "manifestly ill-suited to class action treatment"); *Perry v. Amerada Hess Corp.*, 427 F. Supp. 667, 676 (N.D. Ga. 1977) (denying conditional class certification because "as to all of the issues presented for certification, individual questions predominate over common questions"); *Boro Hall v. Metro. Tobacco Co.*, 74 F.R.D. 142, 146 (E.D.N.Y. 1977) (denying plaintiff's motion for class determination of price discrimination claim because "it is clear that that proof will be largely individualistic as to each member of the class"); *Mekani v. Miller Brewing Co.*, 93 F.R.D. 506, 511 (E.D. Mich. 1982) (denying motion for class certification because "[e]ach class member's proof as to competitive injury and thus to liability will be highly individualistic"); *Abernathy v. Bausch & Lomb Inc.*, 97 F.R.D. 470, 475 (N.D. Tex. 1983) (observing that because "plaintiffs must show some actual anticompetitive injury to themselves," "courts have consistently found section 2(a) claims ill-suited for maintenance as class actions").

At the same time, Defendants do not cite any cases where a court has decided the suitability of class-wide certification under the Robinson-Patman Act on a motion to strike. Yet, consistent with this line of cases, Defendants argue that Plaintiffs' price discrimination claim, as alleged in the FAC, is fundamentally unsuitable for class certification because it requires individualized inquiries into whether: (1) each pair of sales involve at least one sale that occurred in interstate commerce; (2) each pair of sales was contemporaneous and of like grade and quality; (3) each

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

class member paid a higher price relative to a favored purchaser; and (4) each class member was in actual competition with a favored purchaser. ECF 30 at 14–16. The Court considers each issue in turn.

    1.    ***Interstate Commerce***

Defendants argue that the interstate commerce element is incapable of resolution on a class-wide basis because it "requires each class member to show that at least one of the paired sales that constitute the allegedly discriminatory transaction crossed state lines." ECF 30 at 9. Plaintiffs respond that Defendants are "flat wrong that this issue requires a transaction-by-transaction inquiry," and that the interstate commerce requirement is satisfied because Frito-Lay is a "person engaged in commerce." ECF 33 at 16-17.

The plain language of the statutory text provides that Section 2(a) applies to "any person engaged in commerce . . . where either or any of *the purchases involved* in such discrimination are in commerce." 15 U.S.C. § 13(a) (emphasis added). "To be engaged 'in commerce' within the meaning of [the Clayton Act], a corporation must itself be directly engaged in the production, distribution, or acquisition of goods or services in interstate commerce." *United States v. Am. Bldg. Maint. Indus.*, 422 U.S. 271, 283 (1975). But "it is not enough . . . that the defendant be engaged in interstate commerce." *Willard Dairy Corp. v. Nat'l Dairy Prods. Corp.*, 309 F.2d 943, 946 (6th Cir. 1962). Rather, "it must also be shown that *the sale complained* of was one occurring in interstate commerce." *Id.* (emphasis added). Stated another way, the "purchases . . . in commerce" requirement is satisfied "only where 'at least one of the two transactions which, when compared, generate a discrimination . . . cross(es) a state line." *Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186, 200 (1974); *see also McCallum v. City of Athens, Ga.*, 976 F.2d 649, 656 (11th Cir. 1992) ("Claims under the Robinson-Patman Act must be predicated on the occurrence of an interstate sale of the relevant commodity."); *cf. William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 668 F.2d 1014, 1043 (9th Cir. 1981) ("[M]erely showing adverse effects on commerce will not satisfy th[is] jurisdictional requirement[.]"). "It is immaterial which one crossed a state line. As long as one or both did so, the jurisdictional requirement is satisfied." *William Inglis*, 668 F.2d at 1043–44. Plaintiffs are therefore mistaken that the jurisdictional requirement is satisfied merely because Frito-Lay is generally "engaged in commerce," *i.e.*, that some of Frito-Lay's products purchased in California crossed state lines. *See* ECF 33 at 17.

The interstate commerce requirement is not a common question capable of resolution on a class-wide basis because the question must be answered as to each of the several thousand or hundred thousand pairs of purportedly discriminatory transactions at issue here. The FAC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

alleges that "[t]he Frito-Lay snack chips at issue in this lawsuit include many items in various brands and flavors that have been manufactured outside of California and have crossed state lines in the course of their sale to outlets of the Chain Groceries located in California," and that "[e]ven for the chip brands and flavors that are often manufactured in California, Defendants routinely send 'support loads' from out-of-state plants to supply the California market." FAC ¶ 26; *see also id.* ¶ 48 (alleging that Frito-Lay operates three plants in California and approximately 33 plants in other states). It is apparent that, as alleged, "[t]his is not a case in which jurisdiction is being asserted over essentially local transactions, involving purely local businesses, wholly because a few incidental or unrelated interstate sales were made." *See William Inglis*, 668 F.2d at 1044.

The Court is not persuaded that the commerce requirement is susceptible to a common answer across all compared purchases made by each putative class member and/or their competitors. Indeed, it is clearly incapable of such treatment because the inquiry must be answered as to each class member individually. That is, to establish a violation of the Robinson-Patman Act, each plaintiff in a multi-plaintiff suit "must prove . . . that one or more of Defendants' sales of [the relevant product] in issue *as to that Plaintiff* was made in interstate commerce." *Chawla v. Shell Oil Co.*, 75 F. Supp. 2d 626, 645 (S.D. Tex. 1999) (citing *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 555 (1990)) (emphasis added).

The Ninth Circuit's decision in *William Inglis*, cited by Plaintiffs, is distinguishable. In that case, the plaintiff, a family-owned wholesale bakery, alleged that the defendant, one of the nation's largest wholesale bakeries, was charging below-cost prices for its "private label" bread (bread manufactured and sold directly to a particular retail customer under a label held exclusively by that customer) compared to "advertised label" bread (bread available nationally to all retail purchasers) to eliminate competition in the Northern California market. *William Inglis*, 668 F.2d at 1024. Thus, unlike this case, where the theory of injury is "secondary line" competitive injury, *William Inglis* involved primary-line discrimination, *i.e.*, "conduct . . . that injures competition at the level of the discriminating seller and its direct competitors." *Volvo*, 546 at 176. In the context of that case, the court affirmed the district court's holding that the "in commerce" requirement was satisfied because the defendant sold bread manufactured in California to accounts in Nevada, and the defendant's "advertised prices in Nevada were nearly always higher than private label prices in California, and its advertised prices in California were higher than its private label prices in Nevada." *Id.* at 1044. That is, "the price disparity between advertised and private label bread . . . was represented by some interstate sales." *Id.*

Here, Plaintiffs allege an entirely different theory of price discrimination—secondary-line discrimination between "'favored' and 'disfavored' purchasers." *Volvo*, 546 U.S. at 176. Under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

Plaintiffs' theory, the "purchases . . . involved in such discrimination" are purportedly made by "hundreds" of class members and their purportedly favored competitors across the state of California, and the products sold may or may not have crossed state lines. *See* FAC ¶ 64. Determining whether each set of purchases satisfies the "in commerce" requirement requires individualized proof.

### 2. *Contemporaneous Sales of Like Grade and Quality*

Defendants argue that Plaintiffs cannot establish contemporaneous sales of products of like grade and quality on a class-wide basis. ECF 30 at 16. Plaintiffs respond that "by mathematical necessity . . . , *every* sale that Frito-Lay made to a class member will be within at most one month of *every* sale that it made to the [favored purchaser]." ECF 30 at 14-15.

To establish a prima facie case of price discrimination under the Robinson-Patman Act, "a plaintiff must show that the discriminating seller made one sale to the disfavored purchaser and one sale to the favored purchaser 'within approximately the same period of time.'" *U.S. Wholesale*, 89 F.4th at 1136 (quoting *Tex. Gulf Sulphur Co. v. J.R. Simplot Co.*, 418 F.2d 793, 807 (9th Cir. 1969)); *see also Rutledge*, 511 F.2d at 677 (explaining that a plaintiff must establish "[t]wo or more contemporaneous sales by the same seller"). This requirement "ensures that the challenged price discrimination is not the result of a seller's lawful response to a change in economic conditions between the sales to the favored and disfavored purchasers." *U.S. Wholesale*, 89 F.4th at 1137 (citing *Tex. Gulf Sulphur*, 418 F.2d at 806); *see also Tex. Gulf Sulphur*, 418 F.2d at 806 ("A discrimination under the Robinson-Patman Act does not come about where differences in price terms or conditions between several transactions result from diverse market conditions rather than from an intent to discriminate.").

The Court agrees with Defendants that whether any two sales were made contemporaneously requires individualized proof and is not susceptible to a common answer. The FAC alleges that Defendants' discriminatory sales to class members are reasonably contemporaneous to their sales to chain groceries because chain groceries receive deliveries "often every day of the week" and named Plaintiffs receive deliveries at least once per week.[3] FAC ¶¶ 43-47, 68. Because Frito-Lay purportedly invoices class members and chain groceries

---

[3] Plaintiffs state "the FAC accurately alleges that Frito-Lay stocks snack chips on *the class members'* shelves at least once per week." ECF 33 at 14 (citing FAC ¶ 44). This is imprecise. The FAC specifically alleges that Frito-Lay delivers snack chips to Whiskey Well once a week and to Sunset Market twice a week. FAC ¶ 44. It does not allege how frequently snack chips are delivered to class members writ large.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

"weekly or monthly," *id.* ¶ 68, "by mathematical necessity" every sale to a disfavored purchaser is contemporaneous to a sale to a favored purchaser, *id.* ¶ 46.  But this is insufficient to satisfy the contemporaneousness requirement, because it does not follow that these "close-in-time" sales provide the relevant points of comparison for ascertaining discrimination.  For instance, a chain grocery could receive a delivery of Ruffles on January 1, a delivery of Cheetos on January 2, and a delivery of some combination of the two on January 3.  Plaintiffs could receive a delivery of Doritos on January 5, but due to differing consumer demands, it does not receive any Ruffles or Cheetos until several weeks later.  Thus, the frequency of the deliveries cannot, on its own, satisfy the contemporaneous requirement on a class-wide basis, because individualized inquiries will be necessary to determine whether those deliveries comprised the same products sold at allegedly discriminatory prices.

Moreover, as Plaintiffs tacitly recognize, there is no temporal window that *per se* qualifies as "contemporaneous."  *See* ECF 33 at 14 (acknowledging that "there is no fixed outside limit as to how approximate in time the sales must be to be 'reasonably contemporaneous'"); *see also U.S. Wholesale*, 89 F.4th at 1138 (observing that the district court properly rejected the plaintiff's challenge to the court's jury instruction, which stated that sales are not contemporaneous if they "are sufficiently isolated in time or circumstances that they cannot be said to have occurred at approximately the same time.").  Instead, whether a pair of sales are made contemporaneously depends on "a number of factors" such as "[w]hether market conditions changed during the time between the sales."  *Id.*  By its very nature, contemporaneousness is an individualized inquiry specific to the particular transactions at issue.  As the Ninth Circuit made clear in *U.S. Wholesale*, to prevail on a price discrimination claim, plaintiffs must show that "there were two or more sales between [the seller] and both [the favored purchaser] and *each* plaintiff that were reasonably contemporaneous such that changing market conditions or other factors did not affect the pricing."  *U.S. Wholesale*, 89 F.4th at 1138.  In other words, market conditions and other circumstances surrounding each set of sales may dictate whether those sales qualify as contemporaneous.  That every sale made to a class member is within at most one month of a sale to a chain competitor, even if true, does not resolve the contemporaneousness inquiry on an individual basis, much less on a class-wide basis.

Plaintiffs cite the Ninth Circuit's decision in *Tri-Valley Packaging Ass'n v. F.T.C.*, 329 F.2d 694 (9th Cir. 1964), for the proposition that "sales in the same month, or 'sufficiently close to' being in the same month suffice as a matter of law."  ECF 33 at 14 (quoting *Tri-Valley*, 329 F.2d at 709).  Plaintiffs overstate the conclusions to be drawn from *Tri-Valley*.  *Tri-Valley* concerned an alleged violation of Section 2(d), of which one of the challenged elements was whether "two or more customers of a particular seller compete with each other in the distribution of the products of that seller."  *Tri-Valley*, 329 F.2d at 707.  The court held that actual

Case 2:25-cv-01327-MRA-JDE   Document 63   Filed 02/18/26   Page 12 of 19   Page ID #:1263

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

competition can be inferred where it is shown that one customer of the seller "has outlets in such geographical proximity to those of the other as to establish that the two customers are in general competition, and that the two customers purchased goods of the same grade and quality from the seller within approximately the same period of time." *Id.* at 708. Based on the record presented, however, the court found that "no set of circumstances ha[d] been called to [its] attention which me[t]" that criteria. *Id.* It reasoned that the only pertinent exhibit showed one sale to one wholesaler in April 1957, but none to the other wholesaler at that time of year. Thus, "whether any such 1957 sale to [one wholesaler] was *in April, or sufficiently close to April,* so that this wholesaler and [the other wholesaler] could be said to be in competition, is not established by any part of the record called to our attention." *Id.* (emphasis added). Plaintiffs seize upon the italicized text as establishing a bright-line rule that sales within a month are contemporaneous. This is not a fair reading of the decision.

### 3. *Price Discrimination*

Defendants argue that whether each class member paid a higher price relative to one or more of the chain groceries as to each pair of purchases cannot be decided on a class-wide basis. ECF 30 at 12. Plaintiffs respond that the FAC alleges that class members always paid a higher price than the chain groceries and that even so, "establishing a defendant's liability under the [Robinson-Patman Act] does not require review of *every* individual transaction between the supplier and the disfavored purchaser to confirm that it was discriminatory." ECF 30 at 15.

Whether different prices were offered to the favored and disfavored customers "involves an individualized determination, which precludes class certification because price discrimination . . . may vary from one customer to another, and from one location to another." *Mad Rhino, Inc. v. Best Buy Co., Inc.*, No. CV 03-5604 GPS AJWX, 2008 WL 8760854, at *8 (C.D. Cal. Jan. 14, 2008). In *Mad Rhino*, the district court recognized one exception to this rule where the defendant "maintains two price lists, which are discriminatory on their face and demonstrate that the defendant sold its products on better terms to the allegedly favored group." *Id.* The FAC, however, does not allege that Defendants maintained two separate price lists, *i.e.*, one for chain groceries and another for convenience stores; rather, it alleges that each store was engaged with Frito-Lay on distinct pricing terms. Indeed, the FAC acknowledges that pricing and contractual terms may vary widely by agreement from one customer to another and from one location to another. For example, Plaintiffs allege that chain groceries are each "allowed to negotiate prices . . . that are a discount to the list prices that are offered to Plaintiffs," that chain groceries "receive a variety of promotional payments from Frito-Lay, which are commemorated in annual agreements[,]" and that "further discounts and promotional payments are extended . . . by Frito-Lay Key Account Managers responsible for a given chain's account." *Id.*

Case 2:25-cv-01327-MRA-JDE   Document 63   Filed 02/18/26   Page 13 of 19   Page ID #:1264

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

¶¶ 34–35.

Moreover, a single instance in which a class member is charged a higher net price than a chain grocery is not sufficient to establish the price difference element as to *all* sales involving that class member. *See Rutledge*, 511 F.2d at 677 78 (explaining that "specific sales transactions . . . are unlawful only if" the plaintiff can satisfy "the six necessary elements" of a Robinson-Patman claim, including the "different prices" element); *see also Hanson v. Pittsburgh Plate Glass Indus., Inc.*, 482 F.2d 220, 224 (5th Cir. 1973) (requiring "counsel for plaintiff to make a list . . . of *each transaction* supporting his allegations of price discrimination," and then allowing "[c]ounsel for defendant . . . to review each transaction and justify any price differences[.]" (emphasis added)).

### 4. Competitive Injury

Defendants argue that Plaintiffs cannot establish on a class-wide basis that "each purported class member was in actual competition with the allegedly favored Chain Grocery based on each store's unique location and commercial realities, itself a time-consuming and individualistic process," much less "prove—for each putative class member—that the alleged discrimination harmed competition." ECF 30 at 14-15. Plaintiffs respond that (a) the Ninth Circuit's decision in *U.S. Wholesale* "abrogated the individualized nature of proving actual competition," (b) that competitive harm can be reasonably inferred because the alleged price difference was "significant and sustained over a period of time," and (c) the resulting injury can be proved "by expert opinion as to the law of demand—that higher prices reduce sales volume." ECF 33 at 17–20.

The competitive injury element "ensures that section 2(a) 'does not ban all price differences,' but rather 'proscribes price discrimination only to the extent that it threatens to injure competition.'" *U.S. Wholesale*, 89 F.4th at 1134 (quoting *Volvo*, 546 U.S. at 176). Thus, "[a]bsent actual competition with a favored [purchaser], . . . [a plaintiff] cannot establish the competitive injury required under the [Robinson-Patman] Act." *Volvo*, 546 U.S. at 177. Actual competition is "based on a variety of factors." *Id.* at 179. "That [purchasers] may bid for sales in the same geographic area does not import that they in fact competed for the same customer-tailored sales." *Id.* "A hallmark of the requisite competitive injury . . . is the diversion of sales or profits from a disfavored purchaser to a favored purchaser." *Id.* at 177 (citing *Sun Oil*, 371 U.S. at 518–19).

The Court sees no viable path for establishing competitive injury on a class-wide basis because—like the other elements of a Section 2(a) claim—it is a highly individualized inquiry that is not susceptible to common proof. "[T]he 'direct proof of lost sales or profits' method of showing competitive injury is not applicable because it clearly cannot be demonstrated on a class-

Case 2:25-cv-01327-MRA-JDE   Document 63   Filed 02/18/26   Page 14 of 19   Page ID #:1265

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

wide basis." *Mad Rhino*, 2008 WL 8760854, at *8. Nor can competitive injury be proven on a class-wide basis by reasonable inference. The Supreme Court has recognized that "a permissible inference of competitive injury may arise from evidence that a favored competitor received a significant price reduction over a substantial period of time." *Volvo*, 546 U.S. at 177 (citing *Fed. Trade Comm'n v. Morton Salt Co.*, 334 U.S. 37, 49–51 (1948)). "When relying on a *Morton Salt* inference, though, it must be eminently clear that the favored and disfavored purchasers are in actual competition, because competition would not typically be harmed if non-competing purchasers received different prices for the same goods." *ABC Distrib., Inc. v. Living Essentials LLC*, No. 15-CV-02064-NC, 2017 WL 3838443, at *7 (N.D. Cal. Sept. 1, 2017) (citing *Volvo*, 546 U.S. at 179). In other words, the *Morton Salt* inference of *injury* presupposes a showing of actual *competition*. This makes logical sense because "there can be no injury to competition unless there is actual competition to be injured." *Id.* Plaintiffs assert that the *Morton Salt* inference can be "easily resolved on a classwide basis." ECF 33 at 20 (citing FAC ¶¶ 30-31). Yet the cited allegations at paragraphs 30–31 in the FAC merely set out "a simple comparison of Frito-Lay's net prices to Plaintiffs . . . , versus the prices at which the Chain Groceries sell the identical items." FAC ¶¶ 30. These allegations, taken as true, indicate that chain groceries received a significant price reduction compared to the named Plaintiffs; they do not demonstrate the threshold question of whether the named Plaintiffs were actually competing with the chain groceries for the same customers or that this price discrimination occurred over a substantial period of time.

Plaintiffs are mistaken that *U.S. Wholesale* abrogated precedent or set forth a new standard for establishing competitive injury under Section 2(a). *U.S. Wholesale* concerned a manufacturer's sale of an energy drink to two sets of purchasers: Costco and "stores geared toward 'Costo business members,'" on the one hand, and seven California wholesale businesses that buy the energy drink for resale at convenience stores and grocery stores, on the other hand. *U.S. Wholesale*, 89 F.4th at 1133. There, as here, the plaintiffs sought damages under Section 2(a) and injunctive relief under Section 2(d). *Id.* at 1134. The parties tried to the jury the fourth element of Section 2(a)—competitive injury—and tried to the court the Section 2(d) claim. *Id.* The district court instructed the jury that competitive injury under Section 2(a) required the wholesale businesses to show that the manufacturer made "reasonably contemporaneous" sales to them and to Costco at different prices. *Id.* at 1135. The instructions directed the jury to find for the manufacturer if it determined "that the sales compared are sufficiently isolated in time or circumstances that they cannot be said to have occurred at approximately the same time for a Plaintiff." *Id.* at 1135. The district court further instructed the jury that the wholesalers had to prove that "any difference in price could not be justified as 'functional discounts' to compensate Costco for marketing and promotional functions that it performed." *Id.* The Ninth Circuit held that the district court did not abuse its discretion in instructing the jury on reasonably

Case 2:25-cv-01327-MRA-JDE   Document 63   Filed 02/18/26   Page 15 of 19   Page ID #:1266

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

contemporaneous sales and functional discounts. *Id.* at 1136–41.

With respect to the Section 2(d) claim, the Ninth Circuit explained that "the key issue" is whether Costco and the wholesalers are "customers competing" with each other as to resales of the energy drink. The court cited its prior decision in *Tri-Valley*, which held that it is sufficient to establish that two customers are in general competition by proving that: "(1) one customer has outlets in 'geographical proximity' to those of the other; (2) the two customers 'purchased goods of the same grade and quality from the seller within approximately the same period of time'; and (3) the two customers are operating 'on a particular functional level such as wholesaling or retailing.'" *U.S. Wholesale*, 89 F.4th at 1142 (quoting *Tri-Valley*, 329 F.2d at 708). As the court observed, this interpretation of competition "was consistent with 'the underlying purpose of section 2(d).'" *Id.* (quoting *Tri-Valley*, 89 F.4th at 1142). The district court found that Costco and the wholesalers operated at different functional levels in part because in returning a verdict for the manufacturer on the Section 2(a) claim, the jury implicitly found no competition existed between the wholesalers and Costco. *Id.* at 1136, 1145. The Ninth Circuit reversed, finding in part that the district court erred in concluding that the jury had made such an implicit factual finding. The court explained:

> [T]o prevail on a section 2(a) claim, the Wholesalers had to show that the Wholesalers and Costco were in competition with each other, *and* that discriminatory price concessions or discounts caused a potential injury to competition. Therefore, in rejecting the Wholesalers' claim, the jury could have determined that the Wholesalers and Costco were competing, but there was no potential harm to competition. Because the jury did not necessarily find that the Wholesalers and Costco were not competing, the district court erred by holding that the jury had made an implicit finding of no competition.

*Id.* at 1145 (emphasis added).

In sum, *U.S. Wholesale* affirmed the standard for establishing competitive injury under Section 2(a) and distinguished between competition under Section 2(d) and competitive injury under Section 2(a). Tellingly, that case was not a class action and did not address whether either competitive injury under Section 2(a) or competition under Section 2(d) is susceptible to class-wide resolution. In fact, *U.S. Wholesale* began as a putative class action, in which the district court denied class certification because "the economic proof required to demonstrate that a class is typical and ascertainable in a price discrimination class creates a class definition that is impermissibly vague and confusing," and the Robinson-Patman Act and related state law claims "require particularized showings of injury, discrimination, and damages." *ABC Distrib., Inc. v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

*Living Essentials LLC*, No. 15-CV-02064 NC, 2017 WL 2603311, at *4 (N.D. Cal. Apr. 7, 2017).

Lastly, Plaintiffs contend that competitive injury can be "easily proven" through expert testimony establishing the law of demand—that higher prices reduce sales volume. In other words, competitive injury can be presumed from differences in price. As an initial matter, Plaintiffs' position impermissibly collapses the third and fourth elements of a Section 2(a) violation. The Supreme Court and Ninth Circuit have long rejected such an over-simplification of the standard. *See, e.g., J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562 (1981) ("[P]roof of a violation does not mean that a disfavored purchaser has been actually 'injured' within the meaning of § 4 [of the Clayton Act]."); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 737 (9th Cir. 1987) ("[T]he requisite injury and damages may not be presumed from a showing of discrimination alone."); *see also U.S. Wholesale Outlet & Distrib., Inc. v. Living Essentials* (*U.S. Wholesale II*), No. 2:18-CV-01077-CBM-E, 2025 WL 1513438, at *4 (C.D. Cal. May 28, 2025) (rejecting the argument that discrimination between favored and disfavored purchasers alone is sufficient to show antitrust injury). Instead, to establish competitive injury, a plaintiff must present evidence that the discrimination "enabled [the favored customer] to lower [its] prices and divert sales, or that [the plaintiff was] required to lower [its] prices to an unprofitable level in response to such low prices." *U.S. Wholesale II*, 2025 WL 1513438, at *5. Simply put, competitive injury cannot be inferred from price discrimination even on an individual basis, as Plaintiffs propose. Because proof depends on store-specific pricing decisions, the question of competitive injury is not susceptible to a class-wide answer.

### B.   Section 2(d) Claim

Section 2(d) "makes it unlawful for a manufacturer to discriminate in favor of one purchaser by making 'payment[s]' to that purchaser 'in connection with the . . . sale, or offering for sale of any product . . . unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products.'" *U.S. Wholesale*, 89 F.4th at 1134 (quoting 15 U.S.C. § 13(d)). The provision exists to "strengthen the prohibition against unfair price discrimination by prohibiting price discrimination disguised in the form of advertising or promotional services." *Purdy Mobile Homes, Inc. v. Champion Home Builders Co.*, 594 F.2d 1313, 1317 (9th Cir. 1979); *see also U.S. Wholesale*, 89 F.4th at 1141 ("Congress meant to prevent an economically powerful customer like a chain store from extracting a better deal from a seller at the expense of smaller businesses."). To prevail on a Section 2(d) claim, a plaintiff must show that (1) the favored customer and the plaintiff compete with each other in the distribution of a product; (2) the manufacturer paid or provided a benefit to the favored customer as compensation for promotional services in selling the product; and (3) the manufacturer failed to offer the promotional benefit to the plaintiff on proportionally equal terms.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

*See Tri-Valley*, 329 F.2d at 707–08.

In the FAC, Plaintiffs allege that Defendants violated Section 2(d) by "contracting to make promotional payments to the Chain Groceries that it does not offer on proportionally equal terms to Plaintiffs or other members of the class." FAC ¶ 57. Defendants argue that satisfying the third element—failure to offer a promotional benefit on proportionally equal terms—requires "a thorough and individualized analysis of each challenged promotion, whether Defendants made a similar promotion available to the allegedly disfavored class member(s), and whether that similar promotion was 'proportionally equal' under applicable law." ECF 30 at 13 n.2. Plaintiffs argue that "certification of an injunctive class on Plaintiffs' . . . section 2(d) claim will be appropriate once Plaintiffs have proven, for example, that 'Frito Lay offers payments to Chain Groceries for favorable product placement . . . , and for stocking new flavors and brands of snack chips, while failing to offer such payments to Plaintiffs and members of the class.'" ECF 33 at 13 (quoting FAC ¶ 83).

The Court finds that a Section 2(d) claim is not capable of class-wide resolution for many of the reasons discussed above. As to the third element in particular, Plaintiffs do not adequately respond to Defendants' argument that the question of promotional benefits on proportionally equal terms cannot be proven on a class-wide basis. Indeed, the allegations in the FAC only underscore this limitation. For instance, the FAC alleges that chain grocery stores received promotional payments through annual customer development agreements and customer marketing agreements, whereas the only promotional payments offered to the named Plaintiffs and putative class members are annual "UDS" agreements. *Id.* ¶¶ 35, 36. The "UDS" agreements provide for promotional payments based on (1) the percentage of a store's salty-snack shelf space that is devoted to Frito-Lay products, (2) a "growth hurdle" for stores that grow their quarterly sales of Frito-Lay products between 102% and 108%, and (3) a rebate on purchases of Frito-Lay's "Take Home Value Line" of products for stores that "meet[] varying levels of 'mix increases' for those products." *Id.* ¶ 36. In other words, even if the "UDS" promotional payments are offered on the same terms, the *value* of these promotional payments depends on the specific sales and composition of each individual store. Whether any given promotional payment is proportional to the payment given to an actual competitor further depends on individualized factors.

  **C.** **State Law Claims**

Defendants argue that Plaintiffs' state law claims are similarly unworkable on a class-wide basis because they closely parallel the Robinson-Patman Act claims and require similar proof. ECF 30 at 20-21. Plaintiffs do not dispute that their state law claims "rise[] and fall[]" with their claims under the Robinson-Patman Act. ECF 33 at 26. Indeed, courts have found that the same

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

issues precluding class treatment for claims under the Robinson-Patman Act apply equally to the state law claims brought here. *See, e.g., Mad Rhino*, 2008 WL 8760854, at *10 (denying class certification for UPA claim because "proving injury would require a fact-intensive analysis relative to each member of the class"); *ABC Distrib.*, 2017 WL 2603311, at *4 (denying class certification of UCL claim that was "dependent on the price discrimination claims").

\*\*\*

In conclusion, even if the FAC plausibly alleges that Plaintiffs and putative class members have suffered violations of the same provisions of law, Plaintiffs cannot demonstrate that the putative class members, as defined in the FAC, have suffered the same injury because individualized proof is required to prove a claim under the Robinson-Patman Act. This threshold limitation is fatal to certification of the class proposed by Plaintiffs. At the hearing, Plaintiffs stressed that discovery is needed to fairly evaluate the question of class certification. However, a party seeking class certification "is not always entitled to discovery on the class certification issue." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). Rather, a party seeking to conduct discovery must make a basic, prima facie showing that "discovery measures are likely to produce persuasive information substantiating the class action allegations." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 2009). Here, Plaintiffs have not made that prima facie showing.

### D. Leave to Amend

At the hearing, Plaintiffs represented that they may be able to amend their allegations based on the limited discovery that they have received to date. While the Court is skeptical that Plaintiffs can present a workable class definition given the individualized nature of their claims, the Court does not find at this time that leave to amend would be futile. Accordingly, Plaintiffs are **GRANTED** leave to amend consistent with this Order.

//

//

//

//

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-01327-MRA-JDE | Date | February 18, 2026 |
|---|---|---|---|
| Title | *Alqosh Enterprises, Inc., et al. v. PepsiCo, Inc., et al.* | | |

### IV.   CONCLUSION

Accordingly, Defendants' Motion is **GRANTED [30]**. Plaintiffs' class allegations and all other references to a putative class or class-wide relief are **STRICKEN** from Plaintiffs' FAC with leave to amend. Plaintiffs shall file an amended pleading within **21 days** of the date of this Order.

**IT IS SO ORDERED.**

                                                                                                                                \_\_\_ : \_\_\_

                                                     Initials of Deputy Clerk    mku